ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
DEC 12 2025
at 2 o'clock and 45 min. P M
Lucy H. Carrillo, Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAI'I**

STUDENTS FOR FAIR ADMISSIONS,

Plaintiff,

v.

TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP

d/b/a KAMEHAMEHA SCHOOLS,

Defendant.

Case No. 1:25-cv-00450-MWJ-RT

**SUPPLEMENTAL AMICUS CURIAE BRIEF**
**OF HIS ROYAL HIGHNESS PRINCE NI'I LOA ~ KAPU ~ MOE ~ KAMEHAMEHA**

**I. FEDERAL COURTS ARE COURTS OF LIMITED JURISDICTION**

Federal courts possess only the authority granted by the Constitution and by Congress. When jurisdiction is absent, a court may not take further action. Once a court recognizes it lacks jurisdiction, it must refrain from ruling on any matter.

1

## II. FSIA PROVIDES THE EXCLUSIVE BASIS FOR JURISDICTION

The Foreign Sovereign Immunities Act (FSIA) provides the sole basis for jurisdiction involving foreign sovereigns or their property. Crown Lands of the Hawaiian Kingdom were sovereign property. No FSIA exception applies, and therefore the Court may not assert jurisdiction.

The United States Department of Justice's Office of Legal Counsel has itself questioned the constitutional basis for the purported annexation of Hawaiʻi. In its October 4, 1988 memorandum, Assistant Attorney General Douglas Kmiec wrote that the joint resolution used to annex Hawaiʻi in 1898 was 'strenuously contested' and that 'whether this action demonstrates the constitutional power of Congress to acquire territory is certainly questionable.' The memorandum further concludes: 'It is therefore unclear which constitutional power Congress exercised when it acquired Hawaii by joint resolution.' This admission confirms that no treaty of cession was ever ratified and that the legal status of Hawaiian sovereign territory remains unresolved.

Under 28 U.S.C. § 1602, Congress declared that questions of foreign sovereign immunity must be determined exclusively under FSIA. Under

28 U.S.C. § 1330(a), federal jurisdiction exists only where a specific FSIA exception applies. Given the United States' own acknowledgment of constitutional uncertainty concerning Hawai'i's acquisition, no such exception can be presumed. Therefore, the Court must treat the property at issue as potentially foreign sovereign property and resolve the jurisdictional bar before reaching any civil claims.

### III. TRUMP v. CASA LIMITS COURT-MADE REMEDIES

The Supreme Court held that federal courts cannot create remedies without explicit authorization from Congress. There is no federal statute granting authority to restructure Hawaiian Crown property or related charitable trusts.

### IV. THE MOOTNESS DOCTRINE PROHIBITS JUDICIAL ACTION AFTER MOOTNESS

When a case becomes moot, Article III removes jurisdiction instantly. Once moot, a court may not issue summary judgment or quiet title rulings. If mootness arises during an appeal, prior rulings must be vacated under the Munsingwear doctrine.

### V. PRIOR DUE PROCESS VIOLATIONS, TRO ORDERS, AND UCC NOTICE OF OWNERSHIP

These jurisdictional and due-process concerns did not arise in isolation. In the earlier federal proceedings involving Algal Partners v. Santos

(2013–2014), a Temporary Restraining Order was issued without the hearing and procedural safeguards required by Rule 65, and although the matter was later declared moot, summary judgment and a quiet title ruling were still entered while appellate jurisdiction remained unsettled. A second TRO was later issued in Wailuku State Court at the request of Lorna Wilson, despite the absence of any violent conduct and without the protections required under Hawaiʻi law. When this second TRO was enforced, members of the Sheriff's Department informed me that, because of the prior TRO, any return to my own property at 1400 West Kuiaha would result in law enforcement arriving 'with deadly force.' This enforcement posture, created entirely upon a TRO that lacked jurisdiction and due process, resulted in the removal of a rightful heir from ancestral land.

The escalation of enforcement measures arose only because the Plaintiff and the courts failed to follow the commercial law that governs property interests in Hawaiʻi. My Notice of Ownership, recorded under the Uniform Commercial Code and unrebutted within the required ninety days, was legally binding in commerce. Had the required point-by-point affidavit been submitted, the dispute would have remained

within the commercial framework that UCC law requires. Instead, commercial process was bypassed, pushing the matter into emergency procedures never intended for land disputes. The improper TROs, the declaration of mootness followed by summary judgment, and ultimately the warning of deadly force were consequences of disregarding the commercial process that should have governed from the beginning. This history demonstrates why strict adherence to FSIA, Article III limits, and commercial law is essential in the present matter.

## VI. WOMAN IN GOLD (ALTMANN) PROVIDES HISTORICAL GUIDANCE

The Supreme Court held that FSIA applies retroactively to historical property claims involving sovereign takings. The Hawaiian Kingdom's unresolved Crown Land claims fall within this category and may not be dismissed as irrelevant or moot.

## VII. CONCLUSION

Repeated jurisdictional defects, due-process violations, and improper TRO and summary judgment rulings demonstrate that FSIA removes jurisdiction here. The UCC Notice of Ownership remains unrebutted. For these reasons, the Court must dismiss any action requiring adjudication over foreign sovereign property.

E kūpaʻa i ka ʻoiaʻiʻo, a e ola mau ka inoa o ko kākou kūpuna.

(Stand firm in truth, and may the names of our ancestors live forever.)

Imua me ka pono o ke Akua.

(Forward in the righteousness of God.)

Respectfully submitted,

HIS ROYAL HIGHNESS

PRINCE NIʻI LOA ~ KAPU ~ MOE ~ KAMEHAMEHA



## MOTION FOR LEAVE TO FILE SUPPLEMENTAL AMICUS CURIAE BRIEF

His Royal Highness respectfully moves for leave to file this Supplemental Amicus Curiae Brief to assist the Court in evaluating the jurisdictional limits imposed by FSIA, Trump v. CASA, Article III, and the Mootness Doctrine.