# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next friend and mother, B.P.; and B.P., *Plaintiffs*, <br><br> v. <br><br> TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, *Defendant*. | Case No. 1:25-cv-450-MWJS-RT <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO PROCEED USING INITIALS** <br><br> Judge Micah W.J. Smith |

## TABLE OF CONTENTS

Introduction ....................................................................................................1

Background ....................................................................................................2

   I.  The plaintiffs in *Doe I* proceed against Kamehameha Schools under Doe
      pseudonyms. ........................................................................................3

   II. After the plaintiffs in *Doe II* are denied leave to use Doe pseudonyms, the
      case is dismissed and the Ninth Circuit reluctantly affirms. ...........................4

   III.Two plaintiffs here, who are also members of SFFA, seek leave to
      continue proceeding under their real initials based on an extensive record
      of death threats and other harassment. ..........................................................6

Argument.....................................................................................................10

   I.  Because I.P. is a minor, B.P. and I.P. are entitled to proceed by initials. .....11

   II. Alternatively, B.P. and I.P. overcome the presumption against anonymity. 14

      A. B.P. and I.P. need anonymity. ...................................................................14

         1.  B.P. and I.P. reasonably fear physical harm, harassment, and
            economic harm. ..............................................................................14

         2.  Disclosure would impair associational rights. ...................................19

      B. Any interest in disclosure is minimal....................................................21

         1.  Kamehameha will suffer no prejudice. ...............................................21

         2.  The public interest favors anonymity...................................................23

   III.*Doe II* supports Plaintiffs.............................................................................24

Conclusion ...................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*AAER v. Fearless Fund Mgmt.*,
103 F.4th 765 (11th Cir. 2024) ............................................................... 10

*AFPF v. Bonta*,
594 U.S. 595 (2021) .................................................................... 6, 20, 25

*Bingham v. Wilson*,
2025 WL 782030 (D.S.C. Mar. 11) ........................................................ 17

*Black Panther Party v. Smith*,
661 F.2d 1243 (D.C. Cir. 1981) ............................................................. 20

*D.M. v. Cnty. of Berks*,
929 F. Supp. 2d 390 (E.D. Pa. 2013) ...................................................... 12

*Doe 1 v. GitHub*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ......................................... 15, 16, 22

*Doe v. Accenture LLP Health Care Plan*,
2025 WL 3712996 (N.D. Cal. Dec. 22) ..................................................... 11

*Doe v. Cnty. of El Dorado*,
2013 WL 6230342 (E.D. Cal. Dec. 2) ...................................................... 22

*Doe v. DNA Diagnostics Ctr. LLC*,
2025 WL 1725449 (S.D.N.Y. June 18) ..................................................... 16

*Doe v. FIT*,
2025 WL 384562 (S.D.N.Y. Feb. 4) .................................................. 16, 18

*Doe v. Kamehameha Schs.* (*Doe I*),
470 F.3d 827 (9th Cir. 2006) (en banc) ..................................................... 3

*Doe v. Kamehameha Schs.* (*Doe II*),
2008 WL 4755674 (D. Haw. Oct. 28) ............................................ 4, 5, 10, 24

*Doe v. Kamehameha Schs.* (*Doe II*),
596 F.3d 1036 (9th Cir. 2010) ....................................................... *passim*

*Doe v. Kamehameha Schs.* (*Doe II*),
625 F.3d 1182 (9th Cir. 2010) ....................................................... *passim*

*Doe v. Mechanicsburg Sch. BOE*,
518 F. Supp. 3d 1024 (S.D. Ohio 2021) ................................................... 12

*Doe v. Neverson*,
  820 F. App'x 984 (11th Cir. 2020)................................................................ 16, 17

*Doe v. Noem*,
  781 F. Supp. 3d 1055 (E.D. Cal. 2025)...............................................................21

*Doe v. Predator Catchers, Inc.*,
  343 F.R.D. 633 (M.D. Fla. 2023).........................................................................16

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981)........................................................................ 14, 17

*Doe v. Trump*,
  2019 WL 13248001 (N.D. Cal. Feb. 19)..............................................................15

*Doe v. USD No. 237 Smith Ctr. Sch. Dist.*,
  2017 WL 3839416 (D. Kan. Sept. 1)....................................................................19

*Does I-XXIII v. Advanced Textile*,
  214 F.3d 1058 (9th Cir. 2000)................................................................... *passim*

*EEOC v. Nat'l Children's Ctr.*,
  98 F.3d 1406 (D.C. Cir. 1996).............................................................................22

*Folts v. State Farm Mut. Auto. Ins.*,
  331 F.3d 1122 (9th Cir. 2003)..............................................................................12

*Free Speech Coal. v. Paxton*,
  606 U.S. 461 (2025).............................................................................................25

*G.D. v. Kannapolis City Schs. BOE*,
  2023 WL 2538927 (M.D.N.C. Mar. 16)...............................................................12

*J.I. v. United States*,
  2018 WL 1474355 (E.D. Cal. Mar. 26).................................................................18

*J.M. v. United Healthcare Ins.*,
  2025 WL 559890 (D. Utah Feb. 20)............................................................. 12, 13

*J.T. v. City of San Francisco*,
  2024 WL 4361579 (N.D. Cal. Oct. 1)....................................................................13

*J.W. v. District of Columbia*,
  318 F.R.D. 196 (D.D.C. 2016)..............................................................................11

*K.B. v. Conrad Weiser Area Sch. Dist.*,
  2022 WL 206176 (E.D. Pa. Jan. 24).....................................................................19

*K.G. v. Bd. of Educ*,
  2019 WL 4467638 (E.D. Ky. Sept. 18).................................................................13

*M.F. v. Magellan Healthcare*,
  2021 WL 1121042 (N.D. Ill. Mar. 24) .................................................................12

*Moore v. Black Panther Party*,
  458 U.S. 1118 (1982) ...........................................................................................20

*N.E. v. Blue Cross Blue Shield*,
  2023 WL 2696834 (M.D.N.C. Feb. 24) ...............................................................19

*N.S. v. Rockett*,
  2017 WL 1365223 (D. Or. Apr. 10) .....................................................................12

*NAACP v. Ala. ex rel. Patterson*,
  357 U.S. 449 (1958) ..............................................................................................20

*NAACP v. Button*,
  371 U.S. 415 (1963) ..............................................................................................20

*NAACP v. Clairborne Hardware Co.*,
  458 U.S. 886 (1982) ..............................................................................................20

*Okonowsky v. Garland*,
  109 F.4th 1166 (9th Cir. 2024)..............................................................................25

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ..............................................................................20

*S.F. v. Archer Daniels Midland Co.*,
  594 F. App'x 11 (2d Cir. 2014).............................................................................12

*SFFA v. Harvard*,
  2023 WL 3126414 (D. Mass. Apr. 27)..................................................................19

*Signature Mgmt. Team v. Doe*,
  323 F. Supp. 3d 954 (E.D. Mich. 2018) ........................................................ 15, 17

*T.T. v. Bellevue Sch. Dist.*,
  2010 WL 5146341 (W.D. Wash. Dec. 13) ...........................................................13

*United States v. Begay*,
  673 F.3d 1038 (9th Cir. 2011) (en banc)..............................................................13

*United States v. Lewis*,
  2017 WL 750456 (S.D. Ga. Feb. 27) ...................................................................13

*Z.M. v. Kern High Sch. Dist.*,
  2024 WL 4701035 (E.D. Cal. Oct. 30) .................................................................11

**Other Authorities**

18 U.S.C. §1461 .................................................................................17

18 U.S.C. §1716 .................................................................................17

18 U.S.C. §3509 .................................................................................13

18 U.S.C. §5038 .................................................................................13

116 Stat. 2914-15 (2002) ..................................................................11

Fed. R. Civ. P. 10 ...............................................................................9

Fed. R. Civ. P. 5.2 ....................................................................... *passim*

**Rules**

Wright & Miller, *Fed. Prac. & Proced.* (4th ed., Sept. 2025 update)....................16

## INTRODUCTION

After the complaint was amended, this case against Kamehameha Schools now involves two new plaintiffs and members of SFFA, B.P. and I.P., who are referred to only by their initials. As a minor, I.P. is entitled to proceed by initials under Rule 5.2; and because revealing B.P.'s identity would reveal I.P.'s, B.P. is entitled to proceed by initials too. Plaintiffs file this motion to clarify that B.P. can proceed by initials while I.P. is a minor and to get permission for both plaintiffs to proceed by initials even after I.P. turns 18. This relief is necessary to give effect to Rule 5.2's guarantee of privacy for minors and to protect them from harassment, injury, ridicule, personal embarrassment, and retaliation. *Does I-XXIII v. Advanced Textile*, 214 F.3d 1058, 1067-68 (9th Cir. 2000).

Though some plaintiffs in a prior case against Kamehameha were denied permission to proceed as "Does," that decision supports granting this motion. *Doe v. Kamehameha Schs.* (*Doe II*), 596 F.3d 1036 (9th Cir. 2010). The Ninth Circuit reluctantly affirmed the denial of anonymity in *Doe II* only under the abuse-of-discretion standard, where Judges Kozinski and Reinhardt supported reversing and all three members of the panel suggested they would have granted anonymity if they were making the decision themselves—as this Court will be. Unlike the plaintiffs in *Doe II*, moreover, B.P. and I.P. seek leave to use their initials, not to proceed as Does. And B.P. and I.P. are members of an association, which triggers extra First Amendment concerns. The evidence of threatened harm is also far greater here,

including a barrage of death threats and abuse against SFFA's affiliates, the doxing of Plaintiffs' Hawaii counsel, and a bag of feces sent in the mail. This case has barely started, yet Plaintiffs' counsel has already felt compelled to contact the FBI.

Kamehameha will not possibly be prejudiced by letting B.P. and I.P. use their initials. Kamehameha plans to resolve this case on a motion to dismiss; and even if discovery opens, the school already has (or will easily get) their names. In *Doe I*, Kamehameha *successfully* defeated a discrimination challenge to its admissions policy—even though the parent and child there proceeded as totally anonymous Does. This case, too, should be decided on the merits, not by training an angry mob onto a local mother and daughter until they drop their claims.

This Court should rule that B.P. and I.P. can proceed by their initials until further order of the Court and require all parties to refrain from revealing Plaintiffs' first or last names on the public docket. This motion is made following the conference of counsel pursuant to LR7.8 which took place on January 12, 2026. Kamehameha opposes this motion.

## BACKGROUND

Kamehameha's admissions policy has been challenged three times. In the first case—*Doe I*—the plaintiffs were allowed to proceed under Doe pseudonyms with Kamehameha's consent. In the second case—*Doe II*—that permission was denied and the Ninth Circuit affirmed, though it stressed that the district court *could have* granted that permission. This case is the third challenge involving quasi-anonymous

2

plaintiffs, but both the facts and the request for anonymity are different. One plaintiff (SFFA) is named. The other named plaintiffs (B.P. and I.P.) are also members of SFFA, with First Amendment associational privacy interests at stake. B.P. and I.P. are also trying to keep using their initials consistent with Rule 5.2, not seeking Doe status. And the evidence for why they need anonymity is more extensive than it was 16 years ago—before the growth of the internet, the ubiquity of social media, and the ease of doxing and harassment.

## I. The plaintiffs in *Doe I* proceed against Kamehameha Schools under Doe pseudonyms.

In *Doe I*, the plaintiffs proceeded under Doe pseudonyms at all times, from filing in 2003 to settlement in 2007. The parties agreed to this arrangement in a court-approved stipulation "largely drafted" by Kamehameha's own lawyers. App.330. Under the stipulation, the plaintiffs' names, their parents' names, and any "other information that would make the [plaintiffs'] identity easily traceable" were disclosed to Kamehameha's counsel but not to the public or Kamehameha itself. App.305-07, 330. These provisions remained in effect after the plaintiffs turned 18. App.316.

The en-banc Ninth Circuit upheld Kamehameha's race-based admissions program. 470 F.3d 827 (9th Cir. 2006). The case ended after Kamehameha, to avoid Supreme Court review, paid the plaintiff $7 million. *Doe II*, 625 F.3d 1182, 1185

(9th Cir. 2010) (Reinhardt, J., dissental). As part of the settlement, Kamehameha again agreed to keep the Does' names forever confidential. App.346.

## II. After the plaintiffs in *Doe II* are denied leave to use Doe pseudonyms, the case is dismissed and the Ninth Circuit reluctantly affirms.

Soon after Kamehameha settled *Doe I*, new individual plaintiffs sued Kamehameha. *Doe II*, 596 F.3d at 1040. They, too, sought Kamehameha's consent to proceed as Does. App.340.

This time, Kamehameha objected. App.340. The school did not gain a newfound respect for the public's right to open proceedings. And it was not worried about its ability to defend its policy on the merits; the plaintiffs *conceded* that their case had to be dismissed under the Ninth Circuit's en-banc decision, which only the Supreme Court could overrule. *Doe II*, 2008 WL 4755674, *1 (D. Haw. Oct. 28). Kamehameha instead objected to anonymity as a "tactic," banking that publicity would coerce the *Doe II* plaintiffs into dropping their suit. 625 F.3d at 1186 (Reinhardt, J., dissental). Turns out, Kamehameha was right.

The *Doe II* plaintiffs sought leave to proceed anonymously as Does. The motion assumed that the standard test for anonymity applied, rather than any special rule for minors. 2008 WL 4755674, *3. Under the general standard, the "presumption that parties' identities are public information" can be overcome if a "party's need for anonymity outweighs prejudice to the opposing party and [the] public's interest." *Advanced Textile*, 214 F.3d at 1068. The plaintiffs argued that they

4

overcame the presumption because of the risk of retaliation. To substantiate their fears, they mostly cited hostile comments made on online news articles. *See* 2008 WL 4755674, *3-*4. The magistrate judge denied their motion, concluding that plaintiffs' fears of retaliation were not reasonable because the commenters did not genuinely intend to harm the plaintiffs. *Id.*

After a district court affirmed the magistrate judge's ruling, the *Doe II* plaintiffs appealed to the Ninth Circuit, which reluctantly affirmed. The appellate panel admitted it was "difficult to see" how disclosure was necessary for the public to understand the case, and that any "prejudice" suffered by Kamehameha would be "minimal." 596 F.3d at 1043, 1045. The court also noted the prevalence of "random acts of racial violence against non-Native Hawaiian children." *Id.* at 1044. Nevertheless, it determined that "the district court did not abuse its discretion" in finding plaintiffs' fears "unreasonable," since anonymous commenters on the internet do not necessarily have the "intention of carrying out" their threats. *Id.* at 1045. The panel concluded by stressing that its decision turned solely on the abuse-of-discretion standard. Had the district court reached the opposite conclusion and "found that anonymity was appropriate," the Ninth Circuit "likely" would have affirmed. *Id.* at 1046. And were the Ninth Circuit reviewing the issue de novo, it "might have held that anonymity here was appropriate." *Id.*

The Ninth Circuit denied rehearing en banc, with dissents from Judges Kozinski and Reinhardt and a concurrence from the original panel. Both dissenters thought the district court abused its discretion based on the serious threats directed at the lawsuit's supporters. 625 F.3d at 1183-84 (Kozinski, C.J.); *id.* at 1190-91 (Reinhardt, J.). Both dissenters also emphasized that the panel had entirely over-looked Rule 5.2(a), a then-new rule that requires court filings to refer to minors by their initials only. *Id.* at 1184 (Kozinski, C.J.); *id.* at 1186-88 (Reinhardt, J.). In response, the panel agreed that no party had raised Rule 5.2, which "permits minors to proceed with their initials, not as 'Doe.'" *Id.* at 1194-95 (concurral).

## III.  Two plaintiffs here, who are also members of SFFA, seek leave to continue proceeding under their real initials based on an extensive record of death threats and other harassment.

Fast forward to today. In the intervening 16 years, the nation has seen the rise of social media and the "grow[ing]" use of the internet as a tool to personally target and harass, not merely vent in the comments of new articles. *AFPF v. Bonta*, 594 U.S. 595, 617 (2021). Meanwhile, anti-white racism has not dissipated in Hawaii, with hate crimes against whites continuing to be far and away the largest percentage of prosecutions. App.409; *see* App.403-04, 411-14. These dynamics have combined to create an unusually widespread, explosive wave of abuse against anyone publicly associated with this lawsuit.

Before this suit was filed, SFFA launched the website kamehamehanot-fair.org. News spread quickly in Hawaii. Blum-Decl. ¶12. The website alone triggered a barrage of overwhelmingly hostile emails, voicemails, and other conduct directed at SFFA; its president, Edward Blum; and any potential supporters of SFFA's challenge to Kamehameha's race-based admissions.

Blum, the only publicly identifiable figure at the time, received the brunt of the initial abuse. To take a few examples, an emailer threatened to "beat the shit out of [Blum]." ¶15(a). Social-media users sought to "[d]ox" Blum, said "we're coming fo[r] yo[u]," accused him of being a "Jewish white supremacist," and cheered that the lawsuit would end if Blum was "no more." ¶15. Two Hawaii legislators traveled to SFFA's address in Virginia to try to confront Blum in person. ¶23(c). And when one supporter made a rare post in favor of SFFA, a non-anonymous Hawaiian made specific, repeated, and graphic threats to assassinate him. ¶22.

Once the lawsuit was filed, the threats and abuse escalated and found another target: Plaintiffs' Hawaii counsel, Jesse Franklin-Murdock. And not just Jesse, but his parents, his wife, and their livelihoods. Franklin-Murdock-Decl. ¶5. Two days after the complaint, a former state legislator with nearly 70,000 followers posted a video with Jesse's picture and the title, "This is the face of the Kamehameha Schools lawsuit: Jesse Franklin-Murdock." ¶6. Multiple comments—including one liked by the former legislator—called for publicizing his address. ¶¶6, 12(a)(i)-(iii), 19(b).

Sure enough, the following day, Franklin-Murdock's home address was posted online, where he lives with his wife and infant son. ¶10. Another person posted a series of pictures of Franklin-Murdock and his parents, while also naming his mother's employer and other details to harm his family. ¶7. His promotional materials from work were bombarded with hateful comments from Kamehameha's supporters. ¶21. And after a poster on Instagram asked, "What's [Franklin-Murdock's] address I have @14lbs of dog shit I'd like to send them," Franklin-Murdock received a bag of feces in the mail. ¶11. The same poster advocated "slam[ming]" Franklin-Murdock's "head on the ground." App.121.

The number and severity of the threats and abuse that poured in against Franklin-Murdock is hard to understate. Some of the comments include, to list a few, "Execute this guy," "Target accepted," "Ask Mike Miske for help," "Someone gotta pull a Charlie [Kirk]," and "We going lick u, if u come Hawaii. Your friends, neighbors and even your cat going Get it too u monkey." ¶12. After the doxing, the feces, and the threats directed at him specifically, Franklin-Murdock contacted the FBI, which is investigating his case. ¶13. His law firm also bought a service that tries to scrub his information off the internet. ¶24. And federal authorities have advised Franklin-Murdock to contact the U.S. Marshals before any hearing in this case so they can increase security at the courthouse. ¶14.

8

I.P., a minor, and her mother, B.P., now request quasi-anonymity. B.P.-Decl. ¶11. Both are members of SFFA. ¶2. B.P. is an immigrant who lives with I.P. in a small town in Hawaii. ¶¶9, 12. Both she and her daughter are white. ¶9. I.P. is 17 years old. ¶6. When she applied to Kamehameha and was rejected, she was 15. ¶8. She is currently in high school and is planning to attend college in Hawaii. ¶¶15-16. She will soon turn 18—likely before this motion is briefed and decided.

B.P. and I.P. fear they will face violence, harassment, and economic devasta- tion if their identities are disclosed. B.P.-Decl. ¶¶14-15. The same people who are targeting Blum and Franklin-Murdock will have more incentive to target this Hawaii family, since I.P. and B.P. live nearby and forcing them to drop out directly affects the case. Many have already announced their plans, with comments like "leak the names of those families," "Identify the local families," "Put their name address please," and "We want to see the students who filed the lawsuit." Blum-Decl. ¶20. If their identities become public, community backlash will cause B.P. to lose her job, ¶12, and could prejudice her in ongoing litigation in state court, ¶17. But worst of all, B.P. and I.P. will be swarmed with press, protestors, and a steady stream of threats, harassment, and other abuse—for the rest of their lives. ¶¶18-19; *see* App.381-401, 416-19. Though B.P. feels strongly that her daughter suffered illegal discrimination, she does not want her young daughter to be subjected to that kind of fear, stress, and humiliation. B.P.-Decl. ¶20.

## ARGUMENT

Rule 10(a) generally requires the "complaint" to "name all the parties."[*] Because I.P. is a minor, the "normal presumption … that parties must use their real names" does not apply. *Doe II*, 596 F.3d at 1042. Under Rule 5.2(a), I.P. is entitled to proceed by initials while she's under 18, as she was when the amended complaint was filed. To effectuate Rule 5.2(a)'s guarantee that I.P.'s identity remain private, B.P. must also be permitted to proceed by initials. And because both could proceed by initials at the outset, both should keep using initials throughout this case.

Even if the normal presumption applied, I.P. and B.P. easily overcome it. Anonymity is allowed "when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest." *Advanced Textile*, 214 F.3d at 1068. B.P. and I.P. need anonymity to protect them from physical violence, harassment, and economic retaliation, and to protect their First Amendment right to anonymous association. Kamehameha, on the other hand, will suffer "minimal" "prejudice" from B.P. and I.P.'s anonymity. *Doe II*, 596 F.3d at 1045. And protecting B.P. and I.P.'s identities will not "obstruct public scrutiny" because there "is no reason to believe" their identities will have "any" significance to the merits. *Id.* at 1043.

---

[*] The only parties on the plaintiffs' side are B.P., I.P., and SFFA, which is not proceeding under a pseudonym. Rule 10(a) does not apply to SFFA's members, who are not "parties." *AAER v. Fearless Fund Mgmt.*, 103 F.4th 765, 773 n.2 (11th Cir. 2024).

Should the Court disagree and deny Plaintiffs' motion, Plaintiffs request that it stay its order for 10 days, as the court did in *Doe II*, so that B.P. and I.P. have "some time to decide whether to pursue" their claims as individual plaintiffs. 2008 WL 4755674, *8.

## I.    Because I.P. is a minor, B.P. and I.P. are entitled to proceed by initials.

Rule 5.2(a)(3) requires that filings referring to minors include "only … the minor's initials." Congress directed the Supreme Court to issue this rule to protect the "privacy" of children. 116 Stat. 2914-15 (2002); *see* Fed. R. Civ. P. 5.2 (titled "Privacy Protection"). It reflects a legislative "judgment that the interest of minors in privacy is greater than the public's interest in learning their names, even when there is no particular threat to the juvenile's physical safety or well-being." *Doe II*, 625 F.3d at 1187 (Reinhardt, J., dissental).

Because I.P. is under 18 now and when the amended complaint was filed, B.P.-Decl. ¶6, she is indisputably allowed to proceed by initials. And because I.P. can proceed by initials, B.P. can as well. For "good cause," the court can "require the redaction of additional information." Fed. R. Civ. P. 5.2(e)(1). Letting the parent use initials is classic good cause because it's necessary to prevent the "eviscerat[ion]" of I.P.'s "privacy interests" as a "minor." *J.W. v. District of Columbia*, 318 F.R.D. 196, 199 (D.D.C. 2016). Because B.P. and I.P. "share the same last name …, if [B.P's] nam[e is] publicly revealed, [I.P.'s] own identity will be readily

ascertainable." *Z.M. v. Kern High Sch. Dist.*, 2024 WL 4701035, *1 (E.D. Cal. Oct. 30); *see* B.P.-Decl. ¶5. Permitting B.P. to proceed by initials is therefore necessary "to comply with Rule 5.2's mandates." *Doe v. Accenture LLP Health Care Plan*, 2025 WL 3712996, *1 (N.D. Cal. Dec. 22). Legion courts agree. *E.g.*, *S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11, 12 n.1 (2d Cir. 2014); *J.M. v. United Healthcare Ins.*, 2025 WL 559890, *2 (D. Utah Feb. 20); *G.D. v. Kannapolis City Schs. BOE*, 2023 WL 2538927, *4 (M.D.N.C. Mar. 16); *Doe v. Mechanicsburg Sch. BOE*, 518 F. Supp. 3d 1024, 1027 (S.D. Ohio 2021); *M.F. v. Magellan Healthcare*, 2021 WL 1121042, *1 (N.D. Ill. Mar. 24); *D.M. v. Cnty. of Berks*, 929 F. Supp. 2d 390, 402 (E.D. Pa. 2013).

Although I.P. will soon turn 18, "Rule 5.2(a) requires [that she] be allowed to proceed under her initials" even after her birthday "because she was a minor when this lawsuit commenced." *N.S. v. Rockett*, 2017 WL 1365223, *3 (D. Or. Apr. 10). Rule 5.2 reflects a legislative judgment that documents referring to minors should never reveal those minors' identities. The Rule requires "redaction" through pseudonyms, not sealing. Fed. R. Civ. P. 5.2(a). What is sealed can be unsealed later, and the proponent of keeping material sealed usually bears the burden of justifying sealing on an ongoing basis. *Folts v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1136 (9th Cir. 2003). In contrast, Rule 5.2(a)(3) requires the "filing" itself to contain no more than "the minor's initials"; there is no full-name version of the document that

can be released later. *See* Fed. R. Civ. P. 5.2(d) (permitting parties to file a minor's name "under seal without redaction" only if the court so orders). The rule thus mirrors other statutes that govern minors' court records, which likewise protect the minor's privacy into adulthood. *Doe II*, 625 F.3d at 1193-94 (Reinhardt, J., dissental); *see, e.g.*, 18 U.S.C. §5038(a) (providing for indefinite confidentiality of juvenile delinquency records); *United States v. Begay*, 673 F.3d 1038, 1040 & n.4 (9th Cir. 2011) (en banc) (using initials to refer to minor crime victims under 18 U.S. §3509(d) years after they reached adulthood).

For this reason, when minor parties reach adulthood mid-suit, "most jurisdictions recognize the appropriateness of preventing the[ir] names … from disclosure past the date they reach majority." *J.M.*, 2025 WL 559890, *2; *accord, e.g.*, *J.T. v. S.F.*, 2024 WL 4361579, *4 n.6 (N.D. Cal. Oct. 1); *K.G. v. Bd. of Educ*, 2019 WL 4467638, *4 (E.D. Ky. Sept. 18); *T.T. v. Bellevue Sch. Dist.*, 2010 WL 5146341, *10 (W.D. Wash. Dec. 13); Wright & Miller, *Fed. Prac. & Proced.* §1155 n.8 (4th ed., Sept. 2025 update). "The protection of a minor's privacy will mean little if the cloak protecting that privacy disappears simply upon reaching the age of majority." *United States v. Lewis*, 2017 WL 750456, *5 (S.D. Ga. Feb. 27) (cleaned up). Just as revealing B.P.'s name would impermissibly reveal I.P.'s identity, revealing I.P.'s name in later filings would impermissibly reveal her identity in the filings made while she was a minor.

13

## II.    Alternatively, B.P. and I.P. overcome the presumption against anonymity.

Even if the presumption against anonymity applied to a parent and minor with the right to file under initials, B.P. and I.P. overcome it. B.P. and I.P. need anonymity to protect themselves against physical, mental, and economic harm, plus the loss of their First Amendment rights. Anonymity will not prejudice Kamehameha. And the public interest, if anything, favors anonymity.

### A.    B.P. and I.P. need anonymity.

B.P. and I.P. need anonymity to protect themselves from retaliation and to protect their constitutional rights. Those powerful interests outweigh any counter-vailing ones.

#### 1.  B.P. and I.P. reasonably fear physical harm, harassment, and economic harm.

Anonymity is appropriate when it "is necessary … to protect a person from harassment, injury, ridicule or personal embarrassment." *Advanced Textile*, 214 F.3d at 1068. Courts consider "the severity of the threatened harm," "the reasonableness of the anonymous party's fears," and "the anonymous party's vulnerability to such retaliation." *Id.*

"[T]hreats of physical retaliation are undoubtedly severe," and "physical harm presents the paradigmatic case for allowing anonymity." *Doe II*, 596 F.3d at 1043. When faced with threats of physical violence, a party seeking anonymity need not prove that anyone "intend[s] to carry out the threatened retaliation," but only that "a

14

reasonable person would believe that the threat *might* actually be carried out." *Advanced Textile*, 214 F.3d at 1071 (emphasis added). Courts do not require litigants to gamble with their physical safety. If a plaintiff can "expect" that the "public reaction" to her suit will "*perhaps*" be "violent," that is enough to justify anonymity. *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (emphasis added).

To judge the reasonableness of a party's fears, courts "must consider the surrounding context." *Doe II*, 596 F.3d at 1044. That context includes case-specific facts, like threats made "to [the party's] attorney" or a past plaintiff. *Id.* at 1043; *see Doe 1 v. GitHub*, 672 F. Supp. 3d 837, 853 (N.D. Cal. 2023) (finding reasonable fear based on threats made to "Plaintiffs' counsel" rather than "Plaintiffs directly"); *Doe v. Trump*, 2019 WL 13248001, *5 (N.D. Cal. Feb. 19) (finding reasonable fear based solely on defendant's "history of similar retaliation against others"); *Signature Mgmt. Team v. Doe*, 323 F. Supp. 3d 954, 960 (E.D. Mich. 2018) (finding defendant blogger had reasonable fear based on "the experience of another … blogger" that had criticized the plaintiff). Context also includes general social facts, like the pattern in Hawaii of "random acts of racial violence against non-Native Hawaiian children," *Doe II*, 596 F.3d at 1044, and the lifelong harassment that named plaintiffs in affirmative-action challenges have faced, *e.g.*, App.381-401, 416-19.

The mere existence of a threat to respond to a lawsuit with violence—even "a veiled threat"—is generally enough to justify anonymity. *Doe II*, 596 F.3d at 1044.

For instance, anonymity was warranted in an Establishment Clause challenge where locals reacted to the suit "by saying things like 'God is fixing to come back. He'll show them,' and 'Christians must beat the evil out of these people.'" *Id.* (quoting *Stegall*, 653 F.2d at 183 n.6). And courts regularly find reasonable fear based on threats made on social media and other websites. *See, e.g.*, *Doe v. Neverson*, 820 F. App'x 984, 985-86, 988 (11th Cir. 2020) (reversing district court for failing to find reasonable fear based on non-violent threats to harass the plaintiff in comments on a news article about her allegations); *Doe v. FIT*, 2025 WL 384562, *1 (S.D.N.Y. Feb. 4) (threat to "bea[t] [the plaintiff's] ass" on a "social media" post); *Doe v. DNA Diagnostics Ctr. LLC*, 2025 WL 1725449, *2, *5 (S.D.N.Y. June 18) (comments such as "[h]opefully she burns in the pits of hell" and "you'll get yours" on a news article); *GitHub*, 672 F. Supp. 3d at 853 (anonymous emails to counsel containing "veiled death threats"); *Doe v. Predator Catchers*, *Inc.*, 343 F.R.D. 633, 637 (M.D. Fla. 2023) (comment that "one bullet fixes that problem" on a social-media post about plaintiff).

The threats in this case vastly exceed the threshold for reasonable fear. SFFA's president and Plaintiffs' counsel have each received numerous death threats, death wishes, and other threats of bodily harm directed at them personally. Blum-Decl.1¶5; Franklin-Murdock-Decl. ¶12. Even a political commentator who simply expressed support for SFFA was met with extreme, personal, non-anonymous threats

of assassination. Blum-Decl. ¶22. And Kamehameha's supporters have called for

SFFA's families, like I.P. and B.P., to be doxed and harmed. Blum-Decl. ¶20.

These threats cannot be waved off as mere "frustration" or "political commen-

tary" with no "true intent to harm." *Doe II*, 596 F.3d at 1044. Most of the comments

are just threats with no political point. And Kamehameha's supporters have already

made good on some. After multiple commenters called for doxing counsel's home

address, someone did. Franklin-Murdock-Decl. ¶¶10, 12.  Days after a commenter

vowed to send "14lbs of dog shit" to counsel, he received a bag of feces in the mail,

¶11—likely a federal crime, 18 U.S.C. §1461, §1716. And Kamehameha supporters

have targeted Franklin-Murdock's wife and parents, who have no involvement in

this suit. ¶¶7-8.

In short, Kamehameha's supporters have threatened and harassed anyone pub-

licly associated with this suit, and they have made explicit their desire to do the same

to B.P. and I.P. That alone warrants their request for limited anonymity protection.

Even absent physical violence, fear of "harassment" can justify proceeding

anonymously. *Advanced Textile*, 214 F.3d at 1068. The plaintiffs in *Stegall* reason-

ably feared "extensive harassment" based on public hostility expressed at a single

school-board meeting. 653 F.2d at 186. Similarly, the Eleventh Circuit deemed it an

abuse of discretion not to grant anonymity based on "eight … comments" online

threatening to dox or harass the plaintiff. *Neverson*, 820 F. App'x at 988; *see also*

17

*Bingham v. Wilson*, 2025 WL 782030, *2 (D.S.C. Mar. 11) (reasonable fear of "doxing" warrants anonymity); *Signature Mgmt.*, 323 F. Supp. 3d at 960 (same).

The targeted harassment that has already occurred in this case far exceeds the threshold. Kamehameha's supporters have already harassed B.P. and I.P.'s attorney and coparty with doxing; feces; threatening comments, emails and voicemails; character assassination; ridicule; and more. And they have made clear their intent to treat families, like B.P. and I.P., the same way once their identities are known. Under these circumstances, B.P. and I.P. are very likely to experience an intolerable level of harassment if their names are disclosed, which alone justifies the limited relief of letting them use initials.

B.P. and I.P. also reasonably fear "economic harm" from their identities being disclosed, which further justifies anonymity. *Advanced Textile*, 214. F.3d at 1070. Because B.P. works at a small business that heavily depends on the goodwill of the Native Hawaiian community, B.P. is confident she will lose her job if her identity becomes public. B.P.-Decl. ¶13. She likewise fears her participation in the suit will be used against her in a current state-court case. ¶17. And I.P. will soon be applying to nursing school in Hawaii, where her public involvement in this suit could jeopardize her ability to get in, attend, or succeed. ¶16.

I.P.'s "youth" makes her all the more "vulnerab[le]" to the above harms, tipping the balance even more heavily "in favor of anonymity." *Doe II*, 596 F.3d at

18

1045. Even when she turns 18, I.P. will be a "student who has yet to start her pro-fessional career," making "her particularly vulnerable to reputational harm." *FIT*, 2025 WL 384562, *3; *accord J.I. v. United States*, 2018 WL 1474355, *2 (E.D. Cal. Mar. 26). Plus, I.P. "was a minor at all times material" to her claims, a fact that should be "at the forefront of the Court's analysis." *Doe v. USD No. 237 Smith Ctr. Sch. Dist.*, 2017 WL 3839416, *11 (D. Kan. Sept. 1); *accord N.E. v. Blue Cross Blue Shield*, 2023 WL 2696834, *15 (M.D.N.C. Feb. 24); *K.B. v. Conrad Weiser Area Sch. Dist.*, 2022 WL 206176, *2 n.1 (E.D. Pa. Jan. 24).

I.P. and B.P. are also vulnerable because they are residents of a small town in Hawaii, making them easier to locate. B.P.-Decl. ¶12. They also make particularly attractive targets, since—as Kamehameha is counting on—making them drop out of the suit could affect its success. Blum-Decl. ¶19. The abuse stemming from this case to date is extreme even for seasoned civil-rights professionals who are used to back-lash. ¶¶10, 21; Franklin-Murdock-Decl. ¶5. For a young girl living in the commu-nity, it is intolerable.

### 2. Disclosure would impair associational rights.

Disclosure of B.P. and I.P.'s identities would also *guarantee* (not merely risk) serious harm to their First Amendment rights. Unlike the plaintiffs in *Doe II*, B.P. and I.P. are not mere individual plaintiffs, but also members of SFFA. B.P.-Decl. ¶2. Requiring them to proceed under their real names would thus require them to also reveal their otherwise confidential membership in SFFA. Because that information

is protected by a First Amendment privilege, the balance here tips decisively toward anonymity. *See SFFA v. Harvard*, 2023 WL 3126414, *6 n.4 (D. Mass. Apr. 27) (refusing to unseal the identities of SFFA's young, Asian-American standing members who were denied admission to Harvard).

The First Amendment contains a "guaranty of associational privacy." *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 932 (1982) (collecting cases). Without associations, people would be less likely to advocate or achieve change; and without privacy, people would be less likely to associate. *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460-62 (1958). The First Amendment thus limits the government's power to compel associations to disclose sensitive information, including their members. *Bonta*, 594 U.S. at 609-10; *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010). This is true even when the disclosure occurs inside a lawsuit that the association initiated. *Black Panther Party v. Smith*, 661 F.2d 1243, 1265-66 (D.C. Cir. 1981), *vacated for subsequent mootness*, 458 U.S. 1118 (1982); *see NAACP v. Button*, 371 U.S. 415, 431 (1963) (recognizing that "association for litigation" is protected because it can be "the most effective form of political association").

Violating the privilege by revealing B.P. and I.P.'s identities would bring on precisely the "chilling effect" that the First Amendment is meant to prevent. *Bonta*, 594 U.S. at 606. Opposing racial preferences invites retaliation, threats, and harassment, as the facts of this case amply demonstrate. SFFA routinely experiences that

harassment and threats in other cases, and it avoids the chilling effect only by keeping its standing members anonymous. Blum-Decl. ¶¶4-10. If opposing litigants could force the disclosure of SFFA's membership, individuals like B.P. and I.P. would be deterred from joining and vindicating their rights. ¶¶24-28.

## B.    Any interest in disclosure is minimal.

On the other side of the ledger, Kamehameha will suffer no prejudice from not having B.P. and I.P.'s full names exposed to the public. And the public interest, if anything, favors anonymity.

### 1.   Kamehameha will suffer no prejudice.

Even more than in *Doe II*, any "prejudice" to Kamehameha is "minimal" at best. 596 F.3d at 1045.

Kamehameha almost certainly knows who B.P. and I.P. are. Because it is widely known that Kamehameha accepts only Native Hawaiian students, it is vanishingly unlikely that another white female student with the initials I.P. whose mother has the initials B.P. applied for admission in 2022-23. B.P.-Decl. ¶7; *see Advanced Textile*, 214 F.3d at 1069 n.11 (noting lack of prejudice because Defendant knew the plaintiffs' identities); *Doe v. Noem*, 781 F. Supp. 3d 1055, 1063 (E.D. Cal. 2025) (same). Even if Kamehameha somehow claims it does not know their identities, Kamehameha knows that Plaintiffs are willing to share that information under a suitable protective order.

Nor would anonymity "hinder" any "defense" Kamehameha might raise. *Doe
II*, 596 F.3d at 1045 n.7. In *Doe II*, the Ninth Circuit "doubt[ed]" that the plaintiffs'
proposed protective order would hinder Kamehameha's ability to conduct "standing-
related discovery," even though the order would have only entitled Kamehameha's
*counsel* to know the plaintiffs' identity. *Id.*; *see* App.325. Here, Kamehameha itself
likely already knows B.P. and I.P.'s identities. Or it can find out through a suitable
protective order.

At minimum, Kamehameha cannot claim meaningful prejudice this early in
the proceedings. The "prejudice" resulting from anonymity must be assessed "at
each stage." *Advanced Textile*, 214 F.3d at 1068. "Though pseudonymity may pose
certain logistical challenges during discovery," those concerns are irrelevant "at the
pleadings stage." *GitHub*, 672 F. Supp. 3d at 854; *accord Advanced Textile*, 214
F.3d at 1072; *Doe v. Cnty. of El Dorado*, 2013 WL 6230342, *5 (E.D. Cal. Dec. 2).
Kamehameha, after all, plans to move to dismiss the complaint based on the Ninth
Circuit's en-banc decision upholding its admissions policy. If Kamehameha is right
that Plaintiffs should lose this case at the outset as a matter of law, then exposing
B.P.'s and I.P.'s identities now serves no purpose other than gratuitously punishing
this family.

It is hard to see how any prejudice could arise later either. The plaintiffs in
*Doe I* were completely anonymous through summary judgment, appeal, and en banc.

Far from experiencing prejudice, Kamehameha won on the merits. It then entered a settlement where *it* promised to keep the families' identities confidential. App.346. Kamehameha's contracts also promise to keep the information of applicants, including I.P., confidential. App.359-60; *see EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (party's preexisting contractual "promise of confidentiality" weighs against disclosure). And none of Kamehameha's defenses of its admissions policy turn on the identity of the plaintiffs. *See Doe II*, 596 F.3d at 1043 (recognizing this point).

### 2. The public interest favors anonymity.

Because I.P. is a minor, the public interest favors anonymity, not disclosure—precisely the balance that Rule 5.2 already strikes. *Doe II*, 625 F.3d at 1188 (Reinhardt, J., dissental). I.P.'s privacy interests will persist after she turns 18, *see supra* I, and at least undermine the force of the general presumption of disclosing plaintiffs' identities, *supra* II.A.1.

Even setting aside I.P.'s youth, because Plaintiffs "bring claims of widespread discrimination," there "is no reason to believe" that "disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Doe II*, 596 F.3d at 1043. Plus the lead plaintiff, SFFA, is proceeding in its own name. The public also has an interest in ensuring that powerful parties like Kamehameha cannot rely on "tactics"—like unreasonably objecting to using initials to refer to plaintiffs whose identities it already knows—to avoid accountability for unlawful activity. *Doe II*,

625 F.3d at 1186 (Reinhardt, J., dissental). Rewarding such behavior undermines the legitimacy of the legal system.

### III.  *Doe II* supports Plaintiffs.

Even if this case presented anonymity issues identical to *Doe II*, the Ninth Circuit's reluctant affirmance in that case supports anonymity here. The five appellate judges who opined on the case—the panel plus Judges Kozinski and Reinhardt—agreed that the district court could have allowed the plaintiffs to proceed anonymously. *See* 596 F.3d at 1046. So this Court is free to grant anonymity here, as the district court did in *Doe I*. And the Ninth Circuit's serious doubts in *Doe II* suggest that, if any aggravating fact or circumstance exists here that wasn't present there, denying anonymity here *would be* an abuse of discretion. Indeed, this case is sharply distinct from *Doe II*.

In *Doe II*, the parties, magistrate judge, district judge, and appellate panel never "mentioned, let alone considered, Rule 5.2(a)." 625 F.3d at 1194-95 (concurral). *Doe II* "relied heavily on the concept of the general public interest in open courts." *Id.* at 1187 (Reinhardt, J., dissental). Because Rule 5.2(a) completely inverts the usual rule for minors, *Doe II* has "no precedential value" here, where Rule 5.2(a) is properly raised. *Id.* at 1188.

The magistrate judge in *Doe II* premised his findings on the assumption that, since the en-banc Ninth Circuit had just resolved the merits for Kamehameha in *Doe*

*I*, an immediate follow-on case would "trigger little, if any, emotional reaction by the public." 2008 WL 4755674, *5. The opposite is demonstrably true here, nearly 20 years after *Doe I*. Moreover, the threats in *Doe II* were limited to comments on online news articles, none of which wished death on anyone. *Id.* at *3-*4. Here, Kamehameha's supporters have sent explicit death threats and engaged in many other kinds of intimidation with no parallel in *Doe II*. And needless to say, 2003 is not 2026; today, adults and children have nonstop access to the internet and smartphones, social media came on the scene, and the ability to find and target people on the internet has never been greater. *See Free Speech Coal. v. Paxton*, 606 U.S. 461, 490-91 (2025); *Bonta*, 594 U.S. at 617; *Okonowsky v. Garland*, 109 F.4th 1166, 1171 (9th Cir. 2024).

Other key differences exist. The *Doe II* plaintiffs were not members of an association, so their First Amendment rights were not at stake. And as individuals, I.P. and B.P. are secondary plaintiffs seeking compensatory and punitive damages for the past. The most significant claim—for injunctive relief against Kamehameha's admissions going forward—is being brought by SFFA, in its own name. I.P. and B.P. also seek "to proceed with their initials, not as 'Doe,'" which, unlike in *Doe II*, allows Kamehameha to know who they are by consulting its own records. 625 F.3d at 1195 (concurral).

The case for anonymity here is thus far stronger than in *Doe II*. And again, *Doe II* was a case where five judges thought the plaintiffs could have proceeded anonymously and only two did not.

## CONCLUSION

Plaintiffs' motion should be granted. If the Court denies it, the Court should stay its order for 10 days so Plaintiffs can decide how to proceed.

Dated: January 21, 2026

Respectfully submitted,

/s/ *Jesse D. Franklin-Murdock*
Jesse D. Franklin-Murdock (10778)
DHILLON LAW GROUP INC.
500 Ala Moana Blvd., Ste. 7400
Honolulu, HI 96813
Tel: (415) 433-1700
Fax: (415) 520-6593
jfranklin-murdock@dhillonlaw.com

Adam K. Mortara*
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Thomas R. McCarthy*
J. Michael Connolly*
Cameron T. Norris*
R. Gabriel Anderson*
Julius I. Kairey*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com
julius@consovoymccarthy.com

*pro hac vice*

*Counsel for Plaintiffs*

26