ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
FEB 11 2026
at 2 o'clock and 00 min. P M
Lucy H. Carrillo, Clerk

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAIʻI

**STUDENTS FOR FAIR ADMISSIONS, INC.,**

Plaintiff,

v.

**TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP,**

d/b/a KAMEHAMEHA SCHOOLS,

Defendant.

Case No. 1:25-cv-00450-MWJS-RT

**AMICUS CURIAE BRIEF IN SUPPORT OF RECONSIDERATION**

(Integrating FSIA, UPU, IRS, DCCA, Bond Removal, Title Guaranty, and Crown/Regency Separation)

## TABLE OF CONTENTS

Introduction ................................................................. 4

FSIA Jurisdiction and the Expropriation Exception .................. 5

UPU Treaty Violations and Sovereign Postal Authority ............. 5

IRS Revenue Stamps as Evidence of Unlawful Fiscal Imposition ... 6

Territorial Court Ultra Vires Actions .................................... 7

Administrative Record: DCCA Filings, Bond Removal, and Title Guaranty Responses ..................................................... 7

Distinguishing the Crown Principality from the Council of Regency Government ..................................................... 8

Inalienable Crown Lands: King Kamehameha V's Legal Foundation ... 9

Conclusion: Crown Principality, War Crimes, and FSIA Adjudication ...10

Certificate of Service ....................................................... 13

# TABLE OF AUTHORITIES

Cases

Republic of Austria v. Altmann, 541 U.S. 677 (2004).

Baker v. Carr, 369 U.S. 186 (1962).

Trustees of Dartmouth Coll. v. Woodward, 17 U.S. (4 Wheat.) 518 (1819).

Statutes

Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(3) (2024).

Universal Postal Union Treaty, July 1, 1875, 19 Stat. 577, T.S. No. 385.

Haw. Rev. Stat. § 431 (2024).

International Law

Hague Convention (IV) Respecting the Laws and Customs of War on Land art. 46, Oct. 18, 1907, 36 Stat. 2277, T.S. No. 539.

Rome Statute of the International Criminal Court art. 8(2)(b)(xvi), July 17, 1998, 2187 U.N.T.S. 90.

Administrative Records

Dep't of Commerce & Consumer Affairs, Complaint CMP No. 95646 (Haw. 2025).

Letter from Title Guaranty of Hawai'i to DCCA (Apr. 24, 2025) (on file with DCCA).

Addendum_ADR_Procedural_Clarification_Option3.docx (filed as Addendum to Amicus Curiae Brief).

## INTRODUCTION

Amicus Curiae, Prince Ni'i Loa ~ Kapu Moe Kamehameha, respectfully submits this brief to assist the Court in addressing threshold procedural and jurisdictional issues, including the application of the Foreign Sovereign Immunities Act (FSIA), the impact of Universal Postal Union (UPU) treaty

obligations, the legal effect of IRS revenue stamps, and the significance of administrative records (DCCA, Bond Removal, Title Guaranty responses). Amicus does not seek a merits determination on sovereignty, title, or political status, but urges the Court to address these foundational issues as a matter of record and procedure.

## I. FSIA JURISDICTION AND THE EXPROPRIATION EXCEPTION

The FSIA, 28 U.S.C. § 1605(a)(3) (2024), removes sovereign immunity where "rights in property taken in violation of international law are at issue." The Supreme Court's decision in Republic of Austria v. Altmann, 541 U.S. 677 (2004), confirms that FSIA applies retroactively and mandates judicial review when property is expropriated under internationally unlawful conditions.

## II. UPU TREATY VIOLATIONS AND SOVEREIGN POSTAL AUTHORITY

5

The Hawaiian Kingdom's UPU membership established it as a recognized sovereign postal authority. UPU treaty law prohibits member states from imposing postal or fiscal instruments within another member's territory absent lawful succession. Universal Postal Union Treaty, July 1, 1875, 19 Stat. 577, T.S. No. 385. The application of U.S. postal stamps, IRS revenue stamps, and territorial fiscal markers to Hawaiian lands and documents constitutes a violation of international postal sovereignty and supports the FSIA expropriation exception.

## III. IRS REVENUE STAMPS AS EVIDENCE OF UNLAWFUL FISCAL IMPOSITION

IRS revenue stamps are sovereign fiscal instruments. Their use on RPG-origin documents, land transfers, and corporate filings in Hawai'i, without lawful annexation or cession, evidences the unlawful exercise of foreign sovereign power. Such acts are not mere administrative details but are central to the question of whether property was taken in violation of international law. See Hague Convention (IV) Respecting the Laws and Customs of War on Land art. 46, Oct. 18, 1907, 36 Stat. 2277, T.S. No. 539.

## IV. TERRITORIAL COURT ULTRA VIRES ACTIONS

Following the 1893 overthrow, the Hawaiian Legislature was not in session and lacked quorum. The Committee of Safety and subsequent Territorial courts were not lawfully constituted under the Hawaiian Kingdom Constitution. All land titles, judgments, and administrative acts processed through these courts are ultra vires and cannot cure defects in title or jurisdiction. This further supports the application of FSIA and the need for judicial review.

## V. ADMINISTRATIVE RECORD: DCCA FILINGS, BOND REMOVAL, AND TITLE GUARANTY RESPONSES

The DCCA administrative record includes complaints, bond removal notices, and responses from Title Guaranty of Hawai'i. Dep't of Commerce & Consumer Affairs, Complaint CMP No. 95646 (Haw. 2025); Letter from Title Guaranty of Hawai'i to DCCA (Apr. 24, 2025) (on file with DCCA).

7

These filings document active disputes over title, commercial harm, and the acknowledgment by state agencies and insurers of unresolved sovereign claims. Title Guaranty's reliance on Territorial-era filings, IRS-stamped documents, and its inability to address sovereignty issues confirm the existence of a live controversy and support the FSIA expropriation exception.

## VI. DISTINGUISHING THE CROWN PRINCIPALITY FROM THE COUNCIL OF REGENCY GOVERNMENT

The Crown is a distinct constitutional institution, representing the enduring legal personality and sovereign authority of the Hawaiian Kingdom. Crown Lands and Royal Patent Grants (RPGs) are property and legal instruments issued by the Crown, not by the Council of Regency or any temporary government body. The Council of Regency, established to administer executive functions in the absence of a monarch, acts on behalf of the Crown but does not possess its legal or constitutional status. This separation is critical: adjudicating claims involving Crown Lands and RPGs does not require recognition of the Council of Regency as a government, nor does it

require resolving political questions about sovereignty. The Court can examine historical records, chain-of-title, and fiduciary practices relating to Crown property without making determinations about the legitimacy or recognition of the Council of Regency.

## VII. INALIENABLE CROWN LANDS: KING KAMEHAMEHA V'S LEGAL FOUNDATION

King Kamehameha V (Lot Kapuāiwa) declared Crown Lands to be inalienable, ensuring their permanent protection as the sovereign endowment of the Crown. He personally intervened to pay off nearly all mortgages encumbering Crown Lands, securing their status as inalienable and sovereign property. Trustees of Dartmouth Coll. v. Woodward, 17 U.S. (4 Wheat.) 518 (1819). This legal foundation distinguishes Crown Lands from government or private lands and supports the FSIA expropriation argument: property that was inalienable under Hawaiian law and forcibly converted or mortgaged during occupation constitutes a violation of international law and triggers federal jurisdiction.

# VIII. CONCLUSION: CROWN PRINCIPALITY, WAR CRIMES, AND FSIA ADJUDICATION

Your Honor,

We are not here to debate U.S. jurisdiction or to ask the Court to resolve questions of sovereignty or political status. We are here as the Crown Principality of the Hawaiian Kingdom, to bring to the Court's attention the war crimes and internationally unlawful acts committed against Crown Lands and Royal Patent Grants. These lands were made inalienable by King Kamehameha V, and their forced conversion, mortgage, and expropriation during occupation constitute violations of international law. Under the Foreign Sovereign Immunities Act (FSIA), the Court is required to adjudicate these jurisdictional issues first—before any further processing or consideration of merits.

FSIA is not discretionary; it is a mandatory threshold. The expropriation exception applies because the property at issue was taken in violation of international law, and the administrative and historical record confirms this.

The Court must address FSIA jurisdiction and the war crimes evidence before proceeding to any other questions.

This is why we identify ourselves as the Crown Principality: to distinguish the enduring sovereign institution from any temporary government, and to ensure the Court understands the legal and historical foundation for our claims. The focus is on the unlawful taking and the need for proper adjudication under FSIA, not on political recognition or U.S. jurisdiction.

## CERTIFICATE OF SERVICE

I hereby certify that on  01/22/2026 , 2026, a true and correct copy of the foregoing Amicus Curiae Brief and Addendum was served upon all parties of record by United States mail, postage prepaid, and/or by electronic service where permitted.

Respectfully submitted,



Prince Niʻi Loa ~ Kapu Moe Kamehameha

Amicus Curiae, Pro Se