# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next friend and mother, B.P.; and B.P., *Plaintiffs,* <br><br> v. <br><br> TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, *Defendant.* | Case No. 1:25-cv-450-MWJS-RT <br><br> **DECLARATION OF DAVID KEANU SAI, PH.D., IN SUPPORT OF MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR RECONSIDERATION; EXHIBIT 1** |

## DECLARATION OF DAVID KEANU SAI, PH.D., IN SUPPORT OF MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR RECONSIDERATION

1. I am Chairman of the Hawaiian Kingdom Council of Regency, *acting* Minister of the Interior, and *acting* Minister of Foreign Affairs *ad interim*. I also served as Lead Agent for the Council of Regency, in *Larsen v. Hawaiian Kingdom*, PCA Case no. 1999-01, at the Permanent Court of Arbitration at The Hague, Netherlands, from 1999-2001.

2. The Council of Regency, as the interim Government for the Hawaiian Kingdom, respectfully submits that the proposed Supplemental Brief in Support of the Motion for Reconsideration filed herein on February 3, 2026

[Doc. 71], attached to the declaration as Exhibit "1", provides vital case law, analysis and context necessary for the Court's consideration and determination of said motion for reconsideration.

3.     The Hawaiian Kingdom respectfully submits that the Supplemental Brief more fully informs the Court, and provides case law, analysis and insight that is unlikely to be provided by any party to this proceeding.

4.     For these reasons, the Hawaiian Kingdom respectfully requests that the Court grant this Motion and grant leave to file our Supplemental Brief in Support of the Hawaiian Kingdom's Motion for Reconsideration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 11, 2026, at Hilo, Hawaiian Kingdom.

David Keanu Sai, Ph.D.

**Exhibit "1"**

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD
HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council
of Regency of the Hawaiian Kingdom*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next friend and mother, B.P.; and B.P., <br> *Plaintiffs,* <br><br> v. <br><br> TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, <br> *Defendant.* | Case No. 1:25-cv-450-MWJS-RT <br><br> **NON-PARTY INTERVENOR COUNCIL OF REGENCY OF THE HAWAIIAN KINGDOM'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION [DOC. 71] FILED FEBRUARY 3, 2026; DECLARATION OF EDWARD HALEALOHA AYAU; EXHIBITS A & B; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE** |

COMES NOW the Council of Regency in its official capacity as the government of the Hawaiian Kingdom (hereinafter, the "Hawaiian Kingdom"), by and through their undersigned attorney hereby files this supplemental brief to its motion for reconsideration [Doc.71] filed February 3, 2026, pursuant to Federal Rule of Civil Procedure 7(b)(1)(B) and 7(b)(1)(C), as applied through Local Rule 7.2. In this supplemental brief, the Hawaiian Kingdom raises additional basis, under *United States v. Belmont*, 301 U.S. 324, 330 (1937), to reconsider the Court's Order of January 23, 2026, dismissing Hawaiian Kingdom's motion to intervene on the grounds that it raises a political question.

The United States, by executive agreement, through exchange of notes, with the Hawaiian Government, was granted permission to access all records and pleadings of the *Larsen v. Hawaiian Kingdom* at the Permanent Court of Arbitration from 1999-2001. The Permanent Court of Arbitration's Deputy Secretary General, Ms. Phyllis Hamilton, brokered the agreement. Coincident with the agreement, the United States recognized the Hawaiian Government.

This coincident of recognition stemming from an executive agreement was at the center of *United States v. Belmont*, 301 U.S. 324, 330 (1937) ("We take judicial notice of the fact that, coincident with the assignment set forth in the complaint, the President recognized the Soviet Government." "The assignment was effected by an exchange of diplomatic correspondence between the Soviet Government and the

2

United States. The purpose was to bring about a final settlement of the claims and counterclaims between the Soviet Government and the United States, and it was agreed that the Soviet Government would take no steps to enforce claims against American nationals, but all such claims were released and assigned to the United States, with the understanding that the Soviet Government was to be duly notified of all amounts realized by the United States from such release and assignment." *Id*., 326). Like the assignment being effected by the executive agreement with the Soviet Government, the permission for the United States to access all records and pleadings in the *Larsen* case was effected by the executive agreement with the Hawaiian Kingdom Government.

In *Belmont*, the Supreme Court explained the effects of foreign relations and the State of New York ("In respect of all international negotiations and compacts, and in respect of our foreign relations generally, state lines disappear. As to such purposes, the State of New York does not exist. Within the field of its powers, whatever the United States rightfully undertakes it necessarily has warrant to consummate. And when judicial authority is invoked in aid of such consummation, state constitutions, state laws, and state policies are irrelevant to the inquiry and decision. It is inconceivable that any of them can be interposed as an obstacle to the effective operation of a federal constitutional power [citations omitted]." *Id*., 331-332).

Similarly, when judicial authority was invoked by the Hawaiian Kingdom to intervene in *SFFA v. Kamehameha*, the State of Hawaiʻi, like New York, disappeared together with its constitution, laws and policies. The existence of the State of Hawaiʻi is by virtue of the Hawaiʻi Statehood Act, Public Law 86-3, 73 Stat. 4 (1959), which is a federal law enacted by the Congress. On this subject, the Supreme Court, in *Belmont* stated, "our Constitution, laws and policies have no extraterritorial operation unless in respect of our own citizens." *Belmont*, 332. In *Belmont*, the State of New York disappeared in respect to U.S. foreign relations, while in this case the State of Hawaiʻi disappeared in respect to both U.S. foreign relations and the limitation of federal laws enacted by the Congress.

The current standing of the Kamehameha Schools is under and by virtue of United States laws—through State of Hawaiʻi laws and its Probate Court in the selection of the Trustees. The Kamehameha Schools trust, on the other hand, exists under and by virtue of Hawaiian Kingdom laws and its Supreme Court in the selection of the Trustees.[1] The latter supersedes. It should be noted that the current governing structure of the State of Hawaiʻi is that of the Hawaiian Kingdom as it stood on January 17, 1893.

---

[1] Article Fourteen, Last Will and Testament of Bernice Pauahi Bishop (Oct. 31, 1883) (online at https://www.ksbe.edu/about-us/about-pauahi/will).

4

On January 17, 1893, a small group of insurgents, with the protection of United States troops, declared the establishment of a provisional government whereby all "officers under the existing Government are hereby requested to continue to exercise their functions and perform the duties of their respective offices, with the exception of the following named persons: Queen Liliuokalani, Charles B. Wilson, Marshal, Samuel Parker, Minister of Foreign Affairs, W.H. Cornwell, Minister of Finance, John F. Colburn, Minister of the Interior, [and] Arthur P. Peterson, Attorney General, who are hereby removed from office." *Proclamation*, Laws of the Provisional Government of the Hawaiian Islands vii (1893), attached here to as Exhibit A. The insurgency further stated that all "Hawaiian Laws and Constitutional principles not inconsistent herewith shall continue in force until further order of the Executive and Advisory Councils." *Id*. The insurgency unlawfully seized control of the Hawaiian Kingdom civilian government, with the exception of the Queen and her cabinet.

While the Hawaiian Kingdom governmental infrastructure remained, its name changed from the provisional government to the so-called Republic of Hawaiʻi on July 4, 1894, and from the Republic of Hawaiʻi to the Territory of Hawaiʻi on April 30, 1900, 31 Stat. 141 (1900). Section 6 of this Act states, "That the laws of Hawaii not inconsistent with the Constitution or laws of the United States or the provisions of this Act shall continue in force, subject to repeal or amendment by the legislature

of Hawaii or Congress of the United States." And section 9 of this Act states, "That whenever the words 'President of the Republic of Hawaii' or 'Republic of Hawaii,' or 'Government of the Republic of Hawaii,' or their equivalents, occur in the laws of Hawaii not repealed by this Act, they are hereby amended to read 'Governor of the Territory of Hawaii,' or 'Territory of Hawaii,' or 'Government of the Territory of Hawaii,' or their equivalents, as the context requires."

On March 18, 1959, the Congress changed the name of the Territory of Hawai'i to the State of Hawai'i. Section 15 of this Act states, "All Territorial laws in force in the Territory of Hawaii at the time of its admission into the Union shall continue in force in the State of Hawaii, except as modified or changed by this Act or by the constitution of the State, and shall be subject to repeal or amendment by the Legislature of the State of Hawaii."

It should also be noted that the standing of the United States District Court for the District of Hawai'i is by virtue of section 9 of this Act that states, "Effective upon the admission of the State of Hawaii into the Union—(a) the United States District Court for the District of Hawaii established by and existing under title 28 of the United States Code shall thenceforth be a court of the United States with judicial power derived from article III, section 1, of the Constitution of the United States." Section 86 of the Territorial Act states, "That there shall be established in said

Territory a [federal] district court to consist of one judge, who shall reside therein and be called the district judge."

In its 1824 decision in *The Apollon*, 22 U.S. 362, 370 (1824), the Supreme Court also concluded that the "laws of no nation can justly extend beyond its own territories except so far as regards its own citizens. They can have no force to control the sovereignty or rights of any other nation within its own jurisdiction." The Hawaiian Supreme Court also cited *The Apollon* in its 1858 decision, *In re Francis de Flanchet*, 2 Haw. 96, 108-109 (1858), where the court stated that the "laws of a nation cannot have force to control the sovereignty or rights of any other nation within its own jurisdiction. And however general and comprehensive the phrases used in the municipal laws may be, they must always be restricted in construction, to places and persons upon whom the Legislature have authority and jurisdiction." Both the *Apollon* and *Flanchet* cases addressed the imposition of French municipal laws within the territories of the United States and the Hawaiian Kingdom.

In 1936, the United States Supreme Court reiterated this principle in *United States v. Curtiss Wright Export Corp.*, 299 U.S. 304, 318 (1936), ("Neither the Constitution nor the laws passed in pursuance of it have any force in foreign territory, and operations of the nation in such territory must be governed by treaties, international understandings and compacts, and the principles of international law"). In *Belmont*, the Supreme Court cited *Curtiss Wright Export Corp.* regarding the

7

territorial limitation of United States laws. According to *Belmont*, Congressional laws, which include the Territorial Act of 1900 and the Statehood Act of 1959, have "have no extraterritorial operation," and are, therefore, void.

The current standing of the Kamehameha Schools, however, can be remedied under the provisional laws of the Hawaiian Kingdom so long as the selection of trustees by a probate court are not inconsistent with Hawaiian Kingdom law. On October 10, 2014, the Council of Regency proclaimed the provisional laws of the Hawaiian Kingdom. The Proclamation stated, "And we do hereby proclaim from the date of this proclamation all laws that have emanated from an unlawful legislature since the insurrection began on July 6, 1887 to the present, to include United States legislation, shall be the provisional laws of the Realm subject to ratification by the Legislative Assembly of the Hawaiian Kingdom once assembled, with the express proviso that these provisional laws do not run contrary to the express, reason and spirit of the laws of the Hawaiian Kingdom prior to July 6, 1887, the international laws of occupation and international humanitarian law, and if it be the case they shall be regarded as invalid and void." *Proclamation of Provisional Laws* (Oct. 10, 2014), attached here to as Exhibit B.

The obligatory nature of this Proclamation is expressed in section 6 of the Hawaiian Civil Code that states, "The laws are obligatory upon all persons, whether subjects of this kingdom, or citizens or subjects of any foreign State, while within

8

the limits of this kingdom, except so far as exception is made by the laws of nations in respect to Ambassadors or others. The property of all such persons, while such property is within the territorial jurisdiction of this kingdom, is also subject to the laws."

The Council of Regency would consider that the selection of Kamehameha Schools Trustees by a State of Hawaiʻi Probate Court, and not the Supreme Court, "do not run contrary to the express, reason and spirit of the laws of the Hawaiian Kingdom prior to July 6, 1887, the international laws of occupation and international humanitarian law" given the circumstances for that change.

The Court, in its review of the Hawaiian Kingdom's motion for reconsideration and its request for leave to file a supplementary brief in support of its motion for reconsideration, should be guided by the Hawaiian Kingdom Supreme Court in *Shillaber v. Waldo, et al.*, 1 Haw. 32, 32 (1848) ("For I trust that the maxim of this Court ever has been, and ever will be, that which is so beautifully expressed in the Hawaiian coat of arms, namely, "*The life of the land is preserved by righteousness*. We know of no other rule to guide us in the decision of questions of this kind, than the supreme law of the land, and to this we bow with reverence and veneration, even though the stroke fall on our own head. In the language of another, "Let justice be done though the heavens fall." Let the laws be obeyed, though it ruin every judicial and executive officer in the Kingdom. Courts may err. Clerks may err.

9

Marshals may err—they do err in every land daily; but when they err let them correct their errors without consulting pride, expediency, or any other consequence").

Respectfully submitted this __ of _____, 202__.

By:

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council
of Regency of the Hawaiian Kingdom*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next friend and mother, B.P.; and B.P., *Plaintiffs,* <br><br> v. <br><br> TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, *Defendant.* | Case No. 1:25-cv-450-MWJS-RT <br><br> **DECLARATION OF EDWARD HALEALOHA AYAU; EXHIBITS A & B** |

## <u>DECLARATION OF EDWARD HALEALOHA AYAU</u>

I, Edward Halealoha Ayau, declare the following:

1.    Exhibit A, attached to the Hawaiian Kingdom's Supplemental Brief in Support of Motion for Reconsideration, is a true and correct copy from the United States House of Representatives, 53rd Congress, *Executive Documents on Affairs in Hawai'i: 1894-95*, 209-211 (1895).

2.    Exhibit B, attached to the Hawaiian Kingdom's Supplemental Brief in Support of Motion for Reconsideration, is a true and correct copy from the website of the Hawaiian Kingdom's Council of Regency at https://hawaiiankingdom.org/pdf/Proc_Provisional_Laws.pdf.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Honolulu, Hawai'i, __ _____ 202__.

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council
of Regency of the Hawaiian Kingdom*

# Exhibit "A"

and a resident here for many years. The other two members are of the highest respectability. The committee of public safety forthwith took possession of the Government buildings, archives, and treasury, and installed the Provisional Government at the heads of the respective departments. This being an accomplished fact, I promptly recognized the Provisional Government as the *de facto* Government of the Hawaiian Islands. The English minister, the Portuguese chargé d'affaires, the French and the Japanese commissioners promptly did the same; these, with myself, being the only members of the diplomatic corps residing here.

All is quiet here now. Without the sacrifice of a single life this change of government has been accomplished. Language can hardly express the enthusiasm and the profound feeling of relief at this peaceful and salutary change of government. The underlying cause of this profound feeling among the citizens is the hope that the United States Government will allow these islands to pass to American control and become American soil. A commission of citizens, duly accredited, will go by the steamer that takes this dispatch to Washington, to state the wishes of the Provisional Government and of the responsible people of the islands, and to give a complete account of the existing state of things here.

It is proper that I should add, that the presence of the *Boston* here has been of the highest importance, and the behavior of officers and men has been admirable. Capt. Wiltse has exercised prudence and great firmness, while he and the undersigned have recognized only accomplished facts and have not allowed the use of the United States force for any but the most conservative reasons.

I am, sir,

JOHN L. STEVENS.

Written copy by future mail.

S.

---

[Inclosure 1 in No. 79.]

### PROCLAMATION.

In its earlier history Hawaii possessed a constitutional government honestly and economically administered in the public interest.

The Crown called to its assistance as advisers able, honest, and conservative men, whose integrity was unquestioned even by their political opponents.

The stability of the Government was assured, armed resistance and revolution unthought of, popular rights were respected, and the privileges of the subject from time to time increased and the prerogatives of the sovereign diminished by the voluntary acts of the successive Kings.

With very few exceptions this state of affairs continued until the expiration of the first few years of the reign of His late Majesty Kalakaua. At this time a change was discernible in the spirit animating the Chief Executive and in the influences surrounding the throne. A steadily increasing disposition was manifested on the part of the King to extend the royal prerogatives; to favor adventurers and persons of no character or standing in the community; to encroach upon the rights and privileges of the people by steadily increasing corruption of electors, and by means of the power and influence of officeholders and other corrupt means to illegitimately influence the elections, resulting in the final absolute control of not only the executive and legislative, but to a certain extent the judicial departments of the Government in the interests of absolutism.

This finally resulted in the revulsion of feeling and popular uprising of 1887, which wrested from the King a large portion of his ill-gotten powers.

The leaders of this movement were not seeking personal aggrandizement, political power, or the suppression of the native Government. If this had been their object it could easily have been accomplished, for they had the absolute control of the situation.

F R 94—APP II——14

Their object was to secure responsible Government through a representative cabinet, supported by and responsible to the people's elected representatives. A clause to this effect was inserted in the constitution, and subsequently enacted by law by the legislature, specifically covering the ground that in all matters concerning the state the sovereign was to act by and with the advice of the cabinet, and only by and with such advice.

The King willingly agreed to such proposition, expressed regret for the past, and volunteered promises for the future.

Almost from the date of such agreement and promises up to the time of his death, the history of the Government has been a continual struggle between the King on the one hand and the cabinet and legislature on the other, the former constantly endeavoring by every available form of influence and evasion to ignore his promises and agreements and regain his lost powers.

This conflict upon several occasions came to a crisis, followed each time by submission on the part of His Majesty, by renewed expressions of regret and promises to abide by the constitutional and legal restrictions in the future. In each instance such promise was kept until a further opportunity presented itself, when the conflict was renewed in defiance and regardless of all previous pledges.

Upon the accession of Her Majesty Liliuokalani, for a brief period the hope prevailed that new policy would be adopted. This hope was soon blasted by her immediately entering into conflict with the existing cabinet, who held office with the approval of a large majority of the legislature, resulting in the triumph of the Queen and the removal of the cabinet. The appointment of a new cabinet subservient to her wishes and their continuance in office until a recent date gave no opportunity for further indication of the policy which would be pursued by Her Majesty until the opening of the legislature in May of 1892.

The recent history of that session has shown a stubborn determination on the part of Her Majesty to follow the tactics of her late brother and in all possible ways to secure an extension of the royal prerogatives and an abridgment of popular rights.

During the latter part of the session the legislature was replete with corruption; bribery and other illegitimate influences were openly utilized to secure the desired end, resulting in the final complete overthrow of all opposition and the inauguration of a cabinet arbitrarily selected by Her Majesty in complete defiance of constitutional principles and popular representation.

Notwithstanding such result the defeated party peacefully submitted to the situation.

Not content with her victory Her Majesty proceeded on the last day of the session to arbitrarily arrogate to herself the right to promulgate a new constitution, which proposed, among other things, to disfranchise over one-fourth of the voters and the owners of nine-tenths of the private property of the Kingdom, to abolish the elected upper house of the legislature and to substitute in place thereof an appointive one, to be appointed by the Sovereign.

The detailed history of this attempt and the succeeding events in connection therewith is given in the report of the committee of public safety to the citizens of Honolulu and the resolution adopted at the mass meeting held on the 16th instant, the correctness of which report and the propriety of which resolution is hereby specifically affirmed.

The constitutional evolution indicated has slowly and steadily, though reluctantly and regretfully, convinced an overwhelming majority of the conservative and responsible members of the community that independent, constitutional, representative, and responsible government, able to protect itself from revolutionary uprisings and royal aggression, is no longer possible in Hawaii under the existing system of government.

Five uprisings or conspiracies against the Government have occurred within five years and seven months. It is firmly believed that the culminating revolutionary attempt of last Saturday will, unless radical measures are taken, wreck our already damaged credit abroad and precipitate to final ruin our already overstrained financial condition; and the guaranties of protection to life, liberty, and property will steadily decrease and the political situation rapidly grow worse.

In this belief, and also in the firm belief that the action hereby taken is and will be for the best personal, political, and property interests of every citizen of the land—

We, citizens and residents of the Hawaiian Islands, organized and acting for the public safety and the common good, hereby proclaim as follows:

(1) The Hawaiian monarchical system of Government is hereby abrogated.

(2) A provisional government for the control and management of public affairs and the protection of the public peace is hereby established, to exist until terms of union with the United States of America have been negotiated and agreed upon.

(3) Such provisional government shall consist of an executive council of four members, who are hereby declared to be Sanford B. Dole, James A. King, Peter C.

Jones, William O. Smith, who shall administer the executive departments of the Government, the first named acting as president and chairman of such council and administering the department of foreign affairs, and the others severally administering the departments of interior, finance, and attorney-general, respectively, in the order in which they are above enumerated, according to existing Hawaiian law as far as may be consistent with this proclamation; and also of an advisory council, which shall consist of fourteen members, who are hereby declared to be S. M. Damon, L. A. Thurston, J. Emmeluth, J. H. McCandlass, F. W. McChesney, W. R. Castle, W. C. Wilder, A. Brown, J. F. Morgan, H. Waterhouse, E. D. Tenney, F. Wilhelm, W. G. Ashley, C. Bolte. Such advisory council shall also have general legislative authority.

Such executive and advisory council shall, acting jointly, have power to remove any member of either council and to fill such or any other vacancy.

(4) All officers under the existing Government are hereby requested to continue to exercise their functions and perform the duties of their respective offices, with the exception of the following-named persons: Queen Liliuokalani; Charles B. Wilson, marshal; Samuel Parker, minister of foreign affairs; W. H. Cornwell, minister of finance; John F. Colburn, minister of the interior; Arthur P. Peterson, attorney-general; who are hereby removed from office.

(5) All Hawaiian laws and constitutional principles not inconsistent herewith shall continue in force until further order of the executive and advisory councils.

> HENRY E. COOPER.
> ANDREW BROWN.
> J. A. MCCANDLESS.
> THEODORE F. LANSING.
> JOHN EMMELUTH.
> C. BOLTE.
> ED. SUHR.
> HENRY WATERHOUSE.
> W. C. WILDER.
> F. W. MCCHESNEY.
> WILLIAM O. SMITH.

---

[Inclosure 2 in No. 79.]

HONOLULU, HAWAIIAN ISLANDS, *January 17, 1893.*

SIR: The undersigned, members of the executive and advisory councils of the Provisional Government this day established in Hawaii, hereby state to you that for the reasons set forth in the proclamation this day issued, a copy of which is herewith inclosed for your consideration, the Hawaiian monarchy has been abrogated and a Provisional Government established in accordance with the said above-mentioned proclamation.

Such Provisional Government has been proclaimed, is now in possession of the Government departmental buildings, the archives, and the treasury, and is in control of the city. We hereby request that you will, on behalf of the United States of America, recognize it as the existing *de facto* Government of the Hawaiian Islands, and afford to it the moral support of your Government, and, if necessary, the support of American troops to assist in preserving the public peace.

We have the honor to remain your obedient servants,

> SANFORD B. DOLE.
> J. A. KING.
> P. C. JONES.
> WILLIAM O. SMITH.
> S. M. DAWSON.
> JOHN EMMELUTH.
> F. W. MCCHESNEY.
> W. C. WILDER.
> J. A. MCCANDLESS.
> ANDREW BROWN.
> JAS. F. MORGAN.
> HENRY WATERHOUSE.
> E. D. TENNEY.
> F. J. WILHELM.
> W. G. ASHLEY.
> C. BOLTE.

His Excellency JOHN L. STEVENS,
    *United States Minister Resident.*

# Exhibit "B"

# Proclamation

Whereas, the armed forces of the United States of America have invaded and occupied the shores of the Hawaiian Islands on two separate occasions, the first being from January 16, 1893 to April 1, 1893, and the second since August 12, 1898 to the present, whereby the latter being an illegal and prolonged occupation; and

Whereas, the armed forces of the United States of America on January 17, 1893 aided and abetted a small group of insurgents in seizing the Executive office of the Hawaiian Kingdom government and thereafter participated in the coercion of all government employees and officials in the executive and judicial branches of the government of the Hawaiian Kingdom to sign oaths of allegiance to the insurgency calling themselves the so-called provisional government; and

Whereas, United States President Grover Cleveland concluded, through a presidential investigation, that the overthrow of the Hawaiian Kingdom government was unlawful, and that the United States bears the sole responsibility for the overthrow of the government of a friendly State, and provide restitution; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, executive mediation took place between United States Minister Plenipotentiary Albert Willis and Her Majesty Queen Liliʻuokalani beginning on November 13, 1893, at the United States Legation in the city of Honolulu, and on December 18, 1893 an agreement was reached through *exchange of notes* committing the United States to reinstate the government, and thereafter the Hawaiian Kingdom to grant amnesty to the insurgents; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, United States President Cleveland and his successors in office failed to faithfully execute the agreement and allowed the insurgency to gain power through the hiring of American mercenaries in order to seek annexation to the United States of America; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, during the Spanish-American War, the armed forces of the United States of America unlawfully occupied the Hawaiian Islands on August 12, 1898, being a neutral State, to wage war against the Spanish colonies of the Philippines and Guam in the Pacific Ocean; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, since the second occupation, the armed forces of the United States of America have not complied with international law, the international laws of occupation, both customary and by conventions, and international humanitarian law; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the armed forces of the United States of America
under the guise of civilian authority seized control of the
government of the Hawaiian Kingdom calling itself the so-
called Republic of Hawaiʻi, being the successor to the
provisional government, and renamed the same as the
government of the Territory of Hawaiʻi on April 30, 1900, and
then subsequently renamed as the government of the State of
Hawaiʻi on March 18, 1959; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the so-called provisional government, the Republic
of Hawaiʻi, the Territory of Hawaiʻi, and the State of Hawaiʻi
have no legal basis under Hawaiian Kingdom law or the
international laws of occupation; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the occupant State has unlawfully levied pecuniary
contributions of various kinds that included taxes and the
imposition of fines in violation of international law; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the occupant State has unlawfully seized public
and private property for the construction of its government
agencies and military installations from the occupied State
and its inhabitants, and that restoration and compensation
shall be made under *jus post liminii*; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the failure of the armed forces of the United States
of America to administer the laws of the Hawaiian Kingdom as

it stood prior to the insurrection of July 6, 1887 has placed the Hawaiian Kingdom into a state of emergency that could lead to economic ruination and calamity; and

Whereas, war crimes have and continue to be committed as a result of the failure of the armed forces of the United States of America to administer the laws of the Hawaiian Kingdom in accordance with the 1907 Hague Regulations and the 1949 Geneva Convention IV; and

Whereas, customary international law recognizes that the rules on belligerent occupation will also apply where a belligerent State, in the course of war, occupies neutral territory, being the territory of the Hawaiian Kingdom; and

Whereas, customary international law recognizes that when neutral territory is militarily occupied by a belligerent, the occupant State does not possess a wide range of rights with regard to the occupied State and its inhabitants as it would in occupied enemy territory; and

Whereas, customary international law recognizes that legislative power remains with the government of the occupied State during military occupation of the occupied State's territory; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, Her late Majesty Queen Liliʻuokalani died on November 11, 1917, without an heir apparent proclaimed in accordance with Article 22 of the 1864 Constitution, as amended; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, it is provided by Article 33 of the Constitution that should a Monarch die without confirming an heir apparent in accordance with Hawaiian law, the Cabinet Council shall serve as an *acting* Council of Regency who shall administer the Government in the name of the Monarch, and exercise all the Powers which are constitutionally vested in the Monarch, until the Legislative Assembly may be assembled to elect by ballot a *de jure* Regent or Council of Regency; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, according to Article 42 of the Constitution, the Cabinet Council consists of the Minister of Foreign Affairs, the Minister of the Interior, the Minister of Finance and the Attorney General of the Kingdom; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, an *acting* Regency, by virtue of the offices made vacant in the Cabinet Council, was established under the doctrine of necessity by proclamation on February 28, 1997, pursuant to Article 33 of the Constitution and possesses the constitutional authority to temporarily exercise the Royal Power of the Hawaiian Kingdom under Article 32; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the Legislative Assembly is unable to be assembled in accordance with Title 3—Of the Legislative Department, Civil Code of the Hawaiian Islands (Compiled Laws, 1884), in order to elect by ballot a *de jure* Regent or Council of Regency as a direct result of the prolonged occupation of the Hawaiian Kingdom by the armed forces of the United States of America and the Rules of Land Warfare of the United States; and

𝔚𝔥𝔢𝔯𝔢𝔞𝔰, the public safety requires:

𝔑𝔬𝔴, 𝔱𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, 𝔚𝔢, the 𝔞𝔠𝔱𝔦𝔫𝔤 𝔆𝔬𝔲𝔫𝔠𝔦𝔩 𝔬𝔣 𝔕𝔢𝔤𝔢𝔫𝔠𝔶 of the Hawaiian Kingdom, serving in the absence of the Monarch and temporarily exercising the Royal Power of the Kingdom, do hereby acknowledge that acts necessary to peace and good order among the citizenry and residents of the Hawaiian Kingdom, such for example, as acts sanctioning and protecting marriage and the domestic relations, governing the course of descents, regulating the conveyance and transfer of property, real and personal, and providing remedies for injuries to person and estate, and other similar acts, which would be valid if emanating from a lawful government, must be regarded in general as valid when proceeding from an actual, though unlawful government, but acts in furtherance or in support of rebellion or collaborating against the Hawaiian Kingdom, or intended to defeat the just rights of the citizenry and residents

under the laws of the Hawaiian Kingdom, and other acts of
like nature, must, in general, be regarded as invalid and void;

And, We do hereby proclaim that from the date of this
proclamation all laws that have emanated from an unlawful
legislature since the insurrection began on July 6, 1887 to the
present, to include United States legislation, shall be the
provisional laws of the Realm subject to ratification by the
Legislative Assembly of the Hawaiian Kingdom once assembled,
with the express proviso that these provisional laws do not run
contrary to the express, reason and spirit of the laws of the
Hawaiian Kingdom prior to July 6, 1887, the international
laws of occupation and international humanitarian law, and if
it be the case they shall be regarded as invalid and void;

And, We do hereby further proclaim that the currency of the
United States shall be a legal tender at their nominal value in
payment for all debts within this Kingdom pursuant to *An Act
To Regulate the Currency* (1876);

And, We do hereby call upon the said Commander of the
United States Pacific Command, and those subordinate
military personnel to whom he may delegate such authority to
seize control of its government, calling itself the State of
Hawai'i, by proclaiming the establishment of a military
government, during the present prolonged military occupation

and until the military occupation has ended, to exercise those powers allowable under the international laws of occupation and international humanitarian law;

And, We do require all persons, whether subjects of this kingdom, or citizens or subjects of any foreign State, while within the limits of this kingdom, to obey promptly and fully, in letter and in spirit, such proclamations, rules, regulations and orders, as the military government may issue during the present military occupation of the Hawaiian Kingdom so long as these proclamations, rules, regulations and orders are in compliance with the laws and provisional laws of the Hawaiian Kingdom, the international laws of occupation and international humanitarian law;

And, We do further require that all courts of the Hawaiian Kingdom, whether judicial or administrative, shall administer the provisional laws hereinbefore proclaimed forthwith;

And, We do further require that Consular agents of foreign States within the territory of the Hawaiian Kingdom shall comply with Article X, Chapter VIII, Title 2—Of the Administration of Government, Civil Code of the Hawaiian Islands (Compiled Laws, 1884) and the Law of Nations;

𝔄𝔫𝔡, 𝔚𝔢 do further require every person now holding any office of profit or emolument under the State of Hawaiʻi and its Counties, being the Hawaiian government, take and subscribe the oath of allegiance in accordance with *An Act to Provide for the Taking of the Oath of Allegiance by Persons in the employ of the Hawaiian Government* (1874).



𝔍𝔫 𝔚𝔦𝔱𝔫𝔢𝔰𝔰 𝔚𝔥𝔢𝔯𝔢𝔬𝔣, 𝔚𝔢 have hereunto set our hand, and caused the Great Seal of the Kingdom to be affixed this 10th day of October A.D. 2014.

David Keanu Sai, Ph.D.
Chairman of the *acting* Council of Regency
*Acting* Minister of the Interior

Peter Umialiloa Sai,
*Acting* Minister of Foreign Affairs

Kauʻi P. Sai-Dudoit,
*Acting* Minister of Finance

Dexter Keʻeaumoku Kaʻiama, *Esq.*,
*Acting* Attorney General

9 of 9

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD
HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council*
*of Regency of the Hawaiian Kingdom*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next friend and mother, B.P.; and B.P., *Plaintiffs,* | Case No. 1:25-cv-450-MWJS-RT **CERTIFICATE OF COMPLIANCE** |
| v. | |
| TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, *Defendant.* | |

1. The Motion for Leave to File Supplemental Brief in Support of Motion for Reconsideration filed on February 16, 2026, in the above-captioned matter, complies with the type-volume limit to Local Rule 7.4 because the Supplemental Brief in Support of Motion for Reconsideration contains 1,998 words.

2. This document comply with the typeface and type style requirements of local rules because this documents has been prepared in a proportionally spaced typeface using Word, Office version 2025, in 14-point Times New Roman style type.

3. This brief has been scanned for viruses and is virus-free.

Dated this ___ of _____, 202__.

By:

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council
of Regency of the Hawaiian Kingdom*

2

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD
HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council
of Regency of the Hawaiian Kingdom*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next friend and mother, B.P.; and B.P., <br> *Plaintiffs,* <br><br> v. <br><br> TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, <br> *Defendant.* | Case No. 1:25-cv-450-MWJS-RT <br><br> **CERTIFICATE OF SERVICE** |

1. I hereby certify that on _____ __, 202__, the following documents were electronically served upon the attorney(s) listed below via PACER electronic service, pursuant to Rule 5(b) Fed. R. Civ. P., as indicated:

a.  Hawaiian Kingdom's Supplemental Brief in Support of Motion for

Reconsideration

b.  Declaration of Edward Halealoha Ayau

c.  Exhibit A – Proclamation of the Provisional Government (Jan. 17, 1893)

d.  Exhibit B – Proclamation of Provisional Laws by the Council of Regency

(Oct. 10, 2014).

2.  Persons served:

Jesse D. Franklin-Murdock (10778)
DHILLON LAW GROUP INC.
500 Ala Moana Blvd., Ste. 7400
Honolulu, HI 96813
Tel: (415) 433-1700
Fax: (415) 520-6593
jfranklin-murdock@dhillonlaw.com

Thomas R. McCarthy*
J. Michael Connolly*
Cameron T. Norris*
R. Gabriel Anderson*
Julius I. Kairey*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com
julius@consovoymccarthy.com

Adam K. Mortara*

LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

*Attorneys for Plaintiff*
STUDENTS FOR FAIR ADMISSIONS

COX FRICKE LLP
JOACHIM P. COX 7520-0
jcox@cfhawaii.com
KAMALA S. HAAKE 9515-0
khaake@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone: (808) 585-9440
Facsimile: (808) 275-3276

QUINN EMANUEL URQUHART & SULLIVAN, LLP
JOHN F. BASH (Pro Hac Vice)
johnbash@quinnemanuel.com
300 West 6th Street, Suite 2010
Austin, Texas 78701
ELLYDE R. THOMPSON (Pro Hac Vice)
ellydethompson@quinnemanuel.com
295 5th Avenue
New York, New York 10016
WILLIAM A. BURCK (Pro Hac Vice)
williamburck@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005

3

*Attorneys for Defendants*
TRUSTEES OF THE ESTATE OF
BERNICE PAUAHI BISHOP d/b/a
KAMEHAMEHA SCHOOLS

Dated this __ of _____, 202__.

By:

Edward Halealoha Ayau, Esq. (HI 5013)
LAW OFFICE OF EDWARD HALEALOHA AYAU
2 Nanea Street
Hilo, HI 96720
(808) 646-9015
halealohahapai64@gmail.com

*Counsel for Non-Party Intervenor Council
of Regency of the Hawaiian Kingdom*

4