**COX FRICKE LLP**
A LIMITED LIABILITY LAW
PARTNERSHIP LLP

JOACHIM P. COX          7520-0
   jcox@cfhawaii.com
KAMALA S. HAAKE          9515-0
   khaake@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

Attorneys for Defendants
TRUSTEES OF THE ESTATE OF
BERNICE PAUAHI BISHOP d/b/a
KAMEHAMEHA SCHOOLS

**QUINN EMANUEL URQUHART**
  **& SULLIVAN, LLP**

JOHN F. BASH (*Pro Hac Vice*)
   johnbash@quinnemanuel.com
300 West 6th Street, Suite 2010
Austin, Texas 78701
(737) 667-6100

WILLIAM A. BURCK (*Pro Hac Vice*)
   williamburck@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000

ELLYDE R. THOMPSON (*Pro Hac Vice*)
   ellydethompson@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
(212) 446-4800

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next of friend and mother, B.P.; and B.P.<br><br>         Plaintiffs,<br><br>  vs.<br><br>TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS,<br><br>         Defendant. | CIVIL NO. 1:25-cv-00450-MWJS-RT<br><br>DEFENDANT KAMEHAMEHA SCHOOLS' OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED USING INITIALS AND DEFENDANTS' CROSS-MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THEMSELVES; CERTIFICATE OF SERVICE<br><br>Judge:  Honorable Micah W. J. Smith<br><br>Trial Date:  None |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................i

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................5

ARGUMENT ....................................................................................7

I.     THE COURT SHOULD DENY PLAINTIFFS' MOTION TO
       PROCEED ANONYMOUSLY ...................................................7

       A.     I.P. And B.P. Are Not Permitted To Proceed Anonymously
              Under Rule 5.2 ...........................................................7

       B.     Plaintiffs Fail To Overcome The Strong Presumption Of Public
              Access To Judicial Proceedings.........................................10

              1.     The Public Interest Favors Disclosure .....................11

              2.     KS Will Be Prejudiced Absent Disclosure ...............14

              3.     I.P. And B.P. Are Not Especially Vulnerable ...........14

              4.     I.P. And B.P. Have No Reasonable Fear of Severe Harm........16

              5.     Plaintiffs' Alleged First Amendment Interest Has No Relevance
                     Here ...........................................................19

II.    THE COURT SHOULD GRANT KS'S CROSS-MOTION TO
       DISMISS THE COMPLAINT ...................................................21

       A.     The Court Should Dismiss I.P. And B.P.'s Claims For Failure
              To Comply With Rule 10(a) ............................................21

       B.     The Court Should Dismiss SFFA Because Its Failure To Name
              Allegedly Injured Members Defeats Associational Standing............21

CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abington School District v. Schemmp*,
    374 U.S. 203 (1963) ........................................................................17

*Americans for Prosperity Found. v. Bonta*,
    594 U.S. 595 (2021) ........................................................................20

*Arakaki v. Hawaiʻi*,
    314 F.3d 1091 (9th Cir. 2002) .......................................................17

*Arakaki v. Lingle*,
    477 F.3d 1048 (9th Cir. 2007) .......................................................17

*Black Panther Party v. Smith*,
    661 F.2d 1243 (D.C. Cir. 1981) .....................................................20

*Carney v. Adams*,
    592 U.S. 53 (2020) ..........................................................................12

*Carroll v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003) .........................................................17

*Clement v. Lumen Health Care Benefit Plan*,
    2025 WL 3213781 (W.D. La. Oct. 31, 2025) ...................................8

*Doe v. Accenture LLP Health Care Plan*,
    2025 WL 3712996 (N.D. Cal. Dec. 22, 2025) ................................10

*Doe v. Barr*,
    479 F. Supp. 3d 20 (S.D.N.Y. 2020) ..............................................20

*Doe v. Blue Cross & Blue Shield United of Wisconsin*,
    112 F.3d 869 (7th Cir. 1997) .........................................................11

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate (Doe I)*,
    470 F.3d 827 (9th Cir. 2006) .....................................................5, 12

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate (Doe II)*,
    2008 WL 4755674 (D. Haw. Oct. 28, 2008) .............................5, 6, 13

*Doe ex rel. Doe v. Kamehameha Schools/Bernice Pauahi Bishop
Estate (Doe II)*,
625 F.3d 1182 (9th Cir. 2010) .........................................................9, 13

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
596 F.3d 1036 (9th Cir. 2010) .................................2, 4, 6, 11, 13, 14, 16, 18, 21

*Doe v. University of Pennsylvania*,
2024 WL 2575702 (3d Cir. May 24, 2024) ...................................16

*Doe v. UNUM*,
164 F. Supp. 3d 1140 (N.D. Cal. 2016) ........................................21

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) ..........................................2, 9, 11, 16, 18, 21, 24

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2016) .............................................................23

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) .....................................................................25

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),
Inc.*,
528 U.S. 167 (2000) .....................................................................21

*FW/PBS, Inc. v. Dallas*,
493 U.S. 215 (1990) .....................................................................22

*Godelia v. Doe 1*,
881 F.3d 1309 (11th Cir. 2018) .....................................................8

*Gratz v. Bollinger*,
539 U.S. 244 (2003) .....................................................................16

*Grutter v. Bollinger*,
539 U.S. 306 (2003) .....................................................................16

*I.L. v. Six Flags Entertainment Corp.*,
2025 WL 2300009 (E.D. Cal. Aug. 8, 2025) ...................................17

*J.B. v. Banning Unified School District*,
2018 WL 6164312 (C.D. Cal. Oct. 18, 2018) ..................................10

*J.M. v. United Healthcare Insurance Co.*,
  2025 WL 559890 (D. Utah Feb. 20, 2025) ...........................................................9

*J.T. v. City & County of San Francisco*,
  2024 WL 4361579 (N.D. Cal. Oct. 1, 2024) .........................................................9

*Jessica K. by & through Brianna K. v. Eureka City Schools District*,
  2014 WL 689029 (N.D. Cal. Feb. 21, 2014).......................................................15

*K.G. v. Board of Education of Woodford County*,
  2019 WL 4467638 (E.D. Ky. Sept. 18, 2019)........................................................9

*Kuroiwa v. Lingle*,
  2008 WL 2622816 (D. Haw. July 3, 2008) ..........................................................17

*Lee v. Weisman*,
  505 U.S. 577 (1992) .............................................................................................17

*Lemus v. D.C. International Charter School*,
  2023 WL 2653416 (D.D.C. Mar. 27, 2023)............................................................8

*Life Insurance Co. of North America v. Nesom*,
  728 F. Supp. 2d 183 (N.D.N.Y. 2010) ...................................................................8

*Luckett v. Beaudet*,
  21 F. Supp. 2d 1029 (D. Minn. 1998) ..................................................................20

*Minersville School District v. Gobilitis*,
  310 U.S. 586 (1940) ......................................................................................15, 17

*NAACP. v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) .............................................................................................20

*N.S. v. Rockett*,
  2017 WL 1365223 (D. Or. Apr. 10)........................................................................9

*NAACP v. Button*,
  371 U.S. 415 (1963) .............................................................................................20

*NAACP v. State of Alabama ex rel. Patterson*,
  357 U.S. 449 (1958) .............................................................................................19

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010)................................................................20

*Phoenix Newspapers, Inc. v. United States District Court for the
   District of Arizona*,
   156 F.3d 940 (9th Cir. 1998)................................................................11

*Religious Sisters of Mercy v. Becerra*,
   55 F.4th 583 (8th Cir. 2022)................................................................23

*Rice v. Cayetano*,
   528 U.S. 495 (2000) ................................................................17

*Ricketts v. Titusville Area School District*,
   150 F.4th 634 (3d Cir. 2025)................................................................8

*Satanic Temple v. Labrador*,
   149 F.4th 1047 (9th Cir. 2025)................................................5, 23, 24

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009) ................................................5, 22, 23, 24

*T.H. v. Pasadena Unified School District*,
   2025 WL 1127862 (C.D. Cal. Feb. 28, 2025)................................25

*T.T. v. Bellevue School District*,
   2010 WL 5146341 (W.D. Wash. Dec. 13, 2010)................................9

*United States v. Air Industries Corp.*,
   2016 WL 11515131 (C.D. Cal. Oct. 24, 2016)................................15

*United States v. Index Newspapers LLC*,
   766 F.3d 1072 (9th Cir. 2014)................................................................20

*United States v. Lewis*,
   2017 WL 750456 (S.D. Ga. Feb. 27, 2017) ................................9

*United States v. Stoterau*,
   524 F.3d 988 (9th Cir. 2008)................................................................10, 19

*We Patriots USA, Inc. v. Ventura Unified School District*,
   2025 WL 2633126 (C.D. Cal. Aug. 29, 2025)................................10

## Rules / Statutes

18 U.S.C. § 5038 .................................................................................9

42 U.S.C. § 1981 ...............................................................................5

First Amendment .........................................................................19, 20

Federal Rule of Civil Procedure 5.2 ............................2, 7, 8, 9, 10, 21, 24

Federal Rule of Civil Procedure 10 .........................................4, 7, 20, 21

Federal Rule of Civil Procedure 12(b)(1) .....................................4, 7, 21

## Other Authorities

Kamehameha Schools: NOT FAIR,
    https://www.kamehamehanotfair.org/. ......................................6, 12

Letter To the Editor From the Governors (Current, Former) of the
    State of Hawaiʻi (Nov. 24, 2025), https://tinyurl.com/mrxa7kjb. .......................3

Mark Sherman, *Transgender Teen Athlete in a Supreme Court Fight
    Knows the Upcoming Sports Season Could be Her Last*, THE
    ASSOCIATED PRESS (Jan. 11, 2026, 3:09 PM),
    https://tinyurl.com/4nu4dvm4 ..........................................................15

# INTRODUCTION

This is a lawsuit manufactured and driven by Plaintiff Students for Fair Admissions ("SFFA"), an advocacy group with a national agenda, substantial resources, and a demonstrated practice of recruiting plaintiffs to advance its own objectives. Before filing its complaint in this action, SFFA set up a website to recruit members to challenge Defendant Kamehameha Schools' ("KS") admissions policy—a policy put in place before the United States annexed Hawaiʻi in 1898 and that the en banc Ninth Circuit has held lawful.[1] SFFA then filed a complaint alleging that anonymous Families A and B wished to apply to KS (though neither had taken rudimentary steps to do so). SFFA later amended the complaint to add anonymous co-plaintiffs (and supposed SFFA members) I.P. and B.P. Even though SFFA has no personal stake in the lawfulness of KS's admissions policy and apparently had no members with such an interest at the time it decided to target KS, Plaintiffs have now filed a motion, Dkt. 54 ("Mot."), attempting to insulate their standing allegations from meaningful scrutiny by keeping the identities of co-plaintiffs secret for the life of the case.

---

[1] Counsel for SFFA also coordinated a social media campaign asking "[h]ave you been affected by Kamehameha Schools' admission policy?" and stating "[w]e're looking to hear from families." *See* https://tinyurl.com/5n773a6e; https://tinyurl.com/2s4dvd4k.

The Court should not grant that request. "[T]he common law rights of access to the courts and judicial records are not taken lightly." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("*Doe II*"). Only in the "unusual case" may plaintiffs proceed pseudonymously. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). The "paramount importance of open courts" requires plaintiffs seeking pseudonymity to demonstrate not merely a fear of "severe" harm but that such fear is objectively "reasonable." *Doe II*, 596 F.3d at 1043-45. And such "objectively reasonable fear of extraordinarily severe retaliation" must outweigh both the public's interest in open courts *and* prejudice to the opposing party. *Advanced Textile*, 214 F.3d at 1068.

That standard is not met. Plaintiffs' motion generally regurgitates the arguments that the anonymous plaintiffs in *Doe II* made in requesting anonymity—a request that Magistrate Judge Kurren denied in the first instance and that was affirmed by Judge Seabright and the Ninth Circuit. 596 F.3d at 1041-42, 1046. And Federal Rule of Civil Procedure 5.2, which permits minors to use their initials in court filings, does not apply here because I.P. will have turned 18 by the time the Court rules on this motion. For that reason, denial of the anonymity request here is easier than in the case of *Doe II*, which involved minor plaintiffs.

Plaintiffs' intent to keep every party supposedly harmed by KS's admissions policy secret for the duration of this case would severely prejudice KS. Plaintiffs

have made clear that they will object on anonymity grounds to any effort to test the accuracy of their standing allegations through discovery directed at third parties— for example, teachers, friends, and community members familiar with I.P., B.P., and Families A and B who can verify or refute their claims that they truly desired to attend KS and took sufficient preparatory steps to apply.  Especially in a case where an out-of-state, activist plaintiff organization was forced to go trolling for plaintiffs to manufacture a suit in line with its ideological objectives, KS must have a full and fair opportunity to assess Plaintiffs' standing allegations.

Moreover, the consequences of the Court's decisions in this case extend far beyond SFFA's recruited members and directly implicate an inheritance set aside for Native Hawaiians by the sovereign princess of the Hawaiian Islands prior to annexation.  The public interest in the case is immense, and the public has a right to know who is attempting to employ the judicial system to effect such a fundamental reallocation of bequeathed resources from Native Hawaiians to others.  The potential statewide impact was even recognized by all seven living Governors of the State of Hawaiʻi, who issued a letter expressing their support for "the future that the Princess's gift was intended to enable."  Letter To the Editor From the Governors (Current, Former) of the State of Hawaiʻi (Nov. 24, 2025), https://tinyurl.com/mrxa7kjb.

3

KS condemns the inappropriate rhetoric from some anonymous internet commenters that Plaintiffs cite. But rhetoric does not suffice to rebut the presumption of open access to the courts. And Plaintiffs appear to misunderstand the governing standard. They have no right to be shielded from criticism for what they are doing. The risk that members of the community, such as B.P.'s purported employer, may choose not to associate with Plaintiffs and SFFA's members once their participation in this lawsuit is public is not a ground to grant anonymity. In no other context—challenges to election results, for example, or environmental regulations—could plaintiffs hide behind the veil of anonymity to protect themselves from criticism by citizens who object to their actions. And despite various challenges over the years to KS's admissions policy, there has not been a single episode of violence against anyone bringing such a challenge or otherwise criticizing KS.

Accordingly, here, as in *Doe II*, "the public interest and possible prejudice to the defendants outweigh the plaintiffs' interest in anonymity." 596 F.3d at 1042. The Court should thus deny Plaintiffs' motion.

Further, the Court should grant KS's cross-motion to dismiss this action unless I.P., B.P., and the anonymous SFFA members referred to in Plaintiffs' complaint (Families A and B) are disclosed. Federal Rule of Civil Procedure 10(a) requires that a "complaint must name all the parties." Absent an exception, a

4

complaint that fails to name all parties must be dismissed under Rule 12(b)(1).  I.P. and B.P. therefore cannot maintain this suit if they will not publicly disclose their identities.  And SFFA—a party that claims no injury to itself—cannot establish its associational standing without naming Families A and B given the Supreme Court's "requirement to name the affected members."  *Summers v. Earth Island Institute*, 555 U.S. 488, 498-99 (2009); *see Satanic Temple v. Labrador*, 149 F.4th 1047, 1050-51 (9th Cir. 2025) (stating that associational standing generally "requir[es] members to be named").  As with I.P. and B.P., naming Families A and B is also critical to KS's ability to defend itself by, among other things, conducting discovery into whether Families A and B would have standing in their own right.

## BACKGROUND

For nearly 140 years, KS has given a preference in admissions to students of Native Hawaiian descent, following the testamentary directive of Princess Pauahi years before Hawaiʻi was annexed.  *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 831 (9th Cir. 2006).   In *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate* (*Doe I*), the en banc Ninth Circuit held that the policy does not violate 42 U.S.C. § 1981, which prohibits racial discrimination in contracting.  *Id.* at 849.

In a case later filed to seek to overturn that holding, *Doe II*, this Court rejected the plaintiffs' request to proceed anonymously even where all the plaintiffs were

minors.  2008 WL 4755674 (D. Haw. Oct. 28, 2008).  This Court found that the

majority of threats were not directed against the children; internet comments did not

provide a sufficient basis for anonymity; and the paramount importance of open

courts weighed in favor of disclosure.  The Ninth Circuit affirmed.  *Doe II*, 596 F.3d

at 1042.

SFFA is a national advocacy group based 5,000 miles away in Arlington, VA.

*See* Kamehameha Schools: NOT FAIR, https://www.kamehamehanotfair.org/.

SFFA has filed lawsuits around the country challenging the admissions policies of

colleges and universities, with a track record of recruiting plaintiffs through websites

and targeted advertising.  Even though its website's mission statement is limited to

higher education, SFFA launched a website last summer with the apparent intention

of recruiting members to bring this action—presumably because it had no existing

members with a justiciable claim.  *See id.* (asking "Is your child barred from

Kamehameha Schools based on ancestry?" and providing a form to submit);

https://who.is/whois/kamehamehanotfair.org (noting creation of website on August

7, 2025).

In October 2025, SFFA filed the initial complaint.  Dkt. 1.  SFFA rested its

claim of associational standing on allegations about two anonymous families—

Families A and B—neither of which had ever applied to KS or taken any preparatory

steps beyond reviewing the application.  Dkt. 78, Second Amended Complaint

("SAC") ¶¶ 60-71.  In December, SFFA amended the complaint to add two individual co-plaintiffs, I.P., a high school senior who, according to Plaintiffs, will turn 18 imminently (Mot. 15), and her mother, B.P.  I.P. and B.P. are also purportedly members of SFFA.  SAC ¶ 88.

Plaintiffs have now moved to permit I.P. and B.P. to remain anonymous throughout this case.  Dkt. 54.  KS opposes Plaintiffs' motion to proceed anonymously and cross-moves to dismiss Plaintiffs' complaint under Rules 10(a) and 12(b)(1) unless Plaintiffs disclose the identities of I.P., B.P., and Families A and B.

## ARGUMENT

## I.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO PROCEED ANONYMOUSLY

### A.    I.P. And B.P. Are Not Permitted To Proceed Anonymously Under Rule 5.2

Rule 5.2 creates a presumption that "individual[s] known to be … minor[s]" should be referred to by their initials in court filings "[u]nless the court orders otherwise."  Plaintiffs admit (Mot. 15) that I.P. will turn 18 "before this motion is briefed and decided" and that B.P. is an adult.   As a result, under the plain terms of Rule 5.2, I.P. and B.P. are not entitled to continued use of initials.

I.P. and B.P. incorrectly argue (Mot. 18) that Rule 5.2 nonetheless permits I.P. to remain anonymous throughout this case because she was a minor at its outset. The plain language of Rule 5.2 does not support such a reading.  Its text applies only

to "an electronic or paper filing with the court that contains … the name of an individual known to be a minor."  In other words, Rule 5.2 applies on a filing-by-filing basis and therefore depends on the person's age at the time of the filing.  It does not apply for the duration of the lawsuit.

Courts thus consistently hold that "rule [5.2] no longer applie[s] on a prospective basis" to a plaintiff who turns 18 after the complaint "during the course of the litigation."  *Ricketts v. Titusville Area Sch. Dist.*, 150 F.4th 634, 636 (3d Cir. 2025).  As the Eleventh Circuit explained in a similar case, "[a]lthough the case caption refers to S.Y. as a minor, he has now reached majority, so we use his name."  *Godelia v. Doe 1*, 881 F.3d 1309, 1315 (11th Cir. 2018).  Federal district courts around the country likewise default to using the real names of plaintiffs and others named in court filings once they turn 18.  *See, e.g.*, *Lemus v. D.C. Int'l Charter Sch.*, 2023 WL 2653416, at *1 (D.D.C. Mar. 27, 2023); *Life Ins. Co. of N. Am. v. Nesom*, 728 F. Supp. 2d 183, 185 (N.D.N.Y. 2010), *aff'd sub nom. Nesom v. Straney*, 432 F. App'x 39 (2d Cir. 2011); *Clement v. Lumen Health Care Benefit Plan*, 2025 WL 3213781, at *1 (W.D. La. Oct. 31, 2025).  The Ninth Circuit panel recognized as much in *Doe II*, explaining in its concurrence in the denial of en banc review that "another reason why the plaintiffs did not invoke the rule" might have been because "it is possible that some of the plaintiffs were 16 or 17" and thus "Rule 5.2(a) would not have protected them after their 18th birthdays."  *Doe II*, 625 F.3d 1182, 1195

8

(9th Cir. 2010) (Beezer, Graber, Fisher, concurring in the denial of rehearing en banc).

The cases on which I.P. and B.P. rely do not construe Rule 5.2 to require continued anonymity when a party turns 18 mid-litigation. Rather, in all of those cases, the courts applied a balancing test—in this Circuit, the *Advanced Textile* test—and considered as one factor the fact that the plaintiff was a minor at the outset of the case or when events underlying the case occurred. Critically, unlike this case, those cases involved particularly sensitive or traumatic underlying events, such as sexual abuse or access to a juvenile's detention records.[2]

This Court should reject B.P. and I.P.'s attempt (Mot. 19) to liken Rule 5.2 to "other statutes that govern minors' court records." No statute akin to 18 U.S.C. § 5038, which safeguards juvenile delinquency records, exists to prevent disclosure of the names of minors who elect to file lawsuits. *See Doe II*, 625 F.3d at 1195 (concurring in the denial of rehearing en banc).

---

[2] *See K.G. v. Bd. of Educ. of Woodford Cnty.*, 2019 WL 4467638, at *3-4 (E.D. Ky. Sept. 18, 2019) (sexual abuse); *N.S. v. Rockett*, 2017 WL 1365223, *2 (D. Or. Apr. 10) (sexual abuse); *United States v. Lewis*, 2017 WL 750456, at *5 (S.D. Ga. Feb. 27, 2017) (sexual abuse); *J.M. v. United Healthcare Ins. Co.*, 2025 WL 559890, at *2 (D. Utah Feb. 20, 2025) (juvenile medical records); *J.T. v. City & Cnty. of San Francisco*, 2024 WL 4361579, at *4 n.6 (N.D. Cal. Oct. 1, 2024) (juvenile detention records); *T.T. v. Bellevue Sch. Dist.*, 2010 WL 5146341, at *1, *10 (W.D. Wash. Dec. 13, 2010) (juvenile disciplinary history).

Finally, because I.P. is not entitled to invoke Rule 5.2, the Court should also reject the argument (Mot. 17-18) that B.P. must remain anonymous to protect I.P.'s anonymity. And, even if I.P. could remain anonymous, Rule 5.2(a) "provides only for the use of the initials of minors themselves, and not their parents." *J.B. v. Banning Unified Sch. Dist.*, 2018 WL 6164312, at *1 (C.D. Cal. Oct. 18, 2018); *see We Patriots USA, Inc. v. Ventura Unified Sch. Dist.*, 2025 WL 2633126, at *1 (C.D. Cal. Aug. 29, 2025). Once again, the cases Plaintiffs cite in which parents were permitted to use initials to protect their *minor* children show only that, under the generally applicable balancing test (*see infra* Part I.B.), the presumption against anonymity can be overcome for parents in cases involving, for instance, "sensitive and highly personal" issues relating to their children. *See, e.g.*, *Doe v. Accenture LLP Health Care Plan*, 2025 WL 3712996, at *1 (N.D. Cal. Dec. 22, 2025).

### B.    Plaintiffs Fail To Overcome The Strong Presumption Of Public Access To Judicial Proceedings

Given that Rule 5.2 does not apply, I.P. and B.P. must meet the high standard to overcome the public's right of access to judicial proceedings. They do not meet that standard.

"[A]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008). Accordingly, "[i]n this circuit, the common law rights of access to the courts and

judicial records are not taken lightly," and there is a "strong general presumption that plaintiffs will conduct litigation under their own names." *Doe II*, 596 F.3d at 1042-43. Only in an "unusual case" may plaintiffs proceed anonymously. *Advanced Textile*, 214 F.3d at 1067.

"To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: '(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, … (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest. *Doe II*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1068). A plaintiff must establish that the "need for anonymity outweighs prejudice to the opposing party and to the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068.

Plaintiffs have not established that this is an "unusual case" justifying the continued anonymity of B.P. and I.P.

### 1. The Public Interest Favors Disclosure

Members of the public always have an interest in knowing "who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). Transparency in court proceedings gives the public confidence that the outcomes of cases are fair and legitimate. *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona*, 156 F.3d 940, 946 (9th Cir. 1998).

11

The public's interest here weighs particularly heavily in favor of transparency. KS has a unique nearly 140-year-long history of fulfilling Princess Pauahi's will by providing an unparalleled Christian and Hawaiian culture-based education to Native Hawaiians. *Doe I*, 470 F.3d at 831. Today, KS serves 5,400 K-12 students and their families across three campuses. SAC ¶¶ 15-17. The public interest, therefore, is especially acute because the Court is being asked to outlaw a long-standing policy that affects the educational experiences of thousands of students, not just Plaintiffs.

The public also has a strong interest in transparency in light of SFFA's efforts to generate this lawsuit by trolling for plaintiffs online and then refusing to identify who they are.[3] Article III does not permit parties to invoke generalized grievances to set national policy through legal actions—a practice that "would significantly alter the allocation of power at the national level, with a shift away from a democratic form of government." *Carney v. Adams*, 592 U.S. 53, 59 (2020). If SFFA seeks to control admissions policies at private as well as public schools across the country through lawsuits, the public should be able to scrutinize its efforts, including *who* SFFA claims is injured.

---

[3]    *See* SAC ¶ 77; Kamehameha Schools: NOT FAIR, https://www.kamehamehanotfair.org/ ("KamehamehaNotFair.org is an undertaking by Students for Fair Admissions, Inc."); *see also, e.g.,* https://tinyurl.com/yvdvbeer (advertisement stating "Denied or Afraid to Apply to Kamehameha Schools? Join the Lawsuit WITH FULL ANONYMITY & PROTECTION of YOUR IDENTITY … *Edward Blum SFFA*").

Moreover, the public has a legitimate interest in appraising the preliminary question of whether I.P. and B.P. have standing in this case.  As Magistrate Judge Kurren explained in *Doe II*, "[i]f Plaintiffs' identities are kept secret from the public, the Court's order [on a motion to dismiss for lack of standing] will have to speak in very general terms or be sealed if identifying information is discussed," such that "the public might not fully understand the basis for the Court's decision as to standing" in this case of great public importance.  2008 WL 4755674, at *7.  Indeed, because this case involves the added factor of a national organization recruiting members to serve as plaintiffs or to support associational standing, there is "reason to believe" that "plaintiff's identity" "will play a greater role here" than in *Doe I* or *Doe II*.  *Doe II*, 596 F.3d at 1043 (cited at Mot. 29).

Plaintiffs mistakenly contend (Mot. 29) that anonymity would not obstruct public scrutiny of this matter because their claim is of "widespread discrimination." To the contrary, "historically, the most important civil rights cases involving juveniles have all been cases where the plaintiffs used their real names, rather than pseudonyms."  *Doe II*, 625 F.3d at 1195 (Beezer, Graber, Fisher, concurring in the denial of rehearing en banc).  Plaintiffs' argument also would set a dangerous precedent permitting many civil-rights actions to proceed without named plaintiffs, which runs directly contrary to the Ninth Circuit's strong "presumption that

13

plaintiffs"—including civil-rights plaintiffs—"will conduct litigation under their own names." *Doe II*, 596 F.3d at 1043.

### 2.    KS Will Be Prejudiced Absent Disclosure

KS will suffer severe prejudice if I.P. and B.P. are allowed to proceed anonymously because it will be unable to conduct any third-party discovery into the dispositive issue of standing. Although I.P. and B.P. apparently intend to withdraw their request for prospective relief given that I.P. is set to graduate from high school in a matter of months, KS must be able to evaluate both her standing and her request for damages by testing her allegation that she would have entered KS if offered admission. That will require third-party discovery, including on the questions of whether B.P. would have been willing to pay tuition and what (if anything) I.P.'s rejection has cost her and B.P. Yet Plaintiffs seek to foreclose that scrutiny through secrecy.

For those reasons, it is no answer to assert, as Plaintiffs do (Mot. 21), that KS already knows the identity of I.P. or that the Court can enter a protective order allowing KS's counsel to learn I.P.'s identity. That would not permit KS to meaningfully scrutinize Plaintiffs' allegations.

### 3.    I.P. And B.P. Are Not Especially Vulnerable

I.P. and B.P. have not established that they are especially vulnerable. In *Doe II*, the Ninth Circuit upheld the district court's decision to require plaintiffs to

disclose their names despite the fact that the Doe children were minors and therefore vulnerable.  596 F.3d at 1045.  Even young plaintiffs frequently proceed under their real names in high-profile and controversial cases.  From sixth-grader Lillian Gobitis in *Minersville School District v. Gobilitis*, 310 U.S. 586 (1940), to 15-year-old Becky Pepper-Jackson,[4] "[o]ur federal courts have a proud and long history of children challenging race discrimination in schools, using their real names," *Jessica K. by & through Brianna K. v. Eureka City Schs. Dist.*, 2014 WL 689029, at *2 (N.D. Cal. Feb. 21, 2014).

Here, I.P. will be an adult by the time this motion is resolved, and Plaintiffs point to no other vulnerable characteristic.  Plaintiffs vaguely suggest I.P. will be vulnerable to "reputational harm" because she is about to start a "professional career."  Mot. at 19.  But courts consistently recognize that reputational harms such as "loss of employment," "blacklisting by prospective employers," and "economic harm" are legally inadequate to "demonstrate[] a severe enough harm to justify pseudonymity."  *United States v. Air Indus. Corp.*, 2016 WL 11515131, at *2 (C.D. Cal. Oct. 24, 2016).  The reason is simple:  The law does not insulate plaintiffs from criticism for filing lawsuits that other people object to.  In fact, the Third Circuit recently rejected the exact alleged harms claimed here, explaining that although the

---

[4] *See, e.g.*, Mark Sherman, *Transgender Teen Athlete in a Supreme Court Fight Knows the Upcoming Sports Season Could be Her Last*, THE ASSOCIATED PRESS (Jan. 11, 2026, 3:09 PM), https://tinyurl.com/4nu4dvm4.

plaintiff had "allege[d] that she must proceed anonymously to avoid damaging her ability to be accepted to medical school or to secure future employment in the medical profession[,] . . . that type of harm—embarrassment and economic harm— cannot serve as a basis to proceed under a pseudonym." *Doe v. Univ. of Penn.*, 2024 WL 2575702, at *2 (3d Cir. May 24, 2024).

### 4.    I.P. and B.P. Have No Reasonable Fear of Severe Harm

To justify anonymity on the basis of allegedly threatened harm, plaintiffs must prove "objectively reasonable fear[s] of extraordinarily severe retaliation[.]" *Advanced Textile*, 214 F.3d at 1063. Empty threats or statements of ill-will are insufficient to justify anonymity; a court must instead ask whether "a reasonable person would believe that the threat might actually be carried out." *Id.* at 1071. "To judge the reasonableness of the plaintiffs' fears, [courts] must consider the surrounding context and other listeners' reactions to the threats." *Doe II*, 596 F.3d at 1044. Thus, "a court may disregard a comment, which is a threat on its face, because the context demonstrates frustration, a joke, or political commentary instead of a true intent to harm." *Id.*

The Ninth Circuit applied this standard in *Doe II* and found that the anonymous online "threats of physical retaliation" the minor plaintiffs cited did not establish a "reasonable" fear of severe harm. *Id.* at 1043-44. That decision was in keeping with a long history of prominent civil-rights cases brought in the real names

16

of plaintiffs. *E.g.*, *Grutter v. Bollinger*, 539 U.S. 306 (2003); *Gratz v. Bollinger*, 539 U.S. 244 (2003); *Gobilitis*, 310 U.S. 586; *Abington School District v. Schemmp*, 374 U.S. 203 (1963); *Lee v. Weisman*, 505 U.S. 577 (1992).

While Plaintiffs point to "anti-white racism" and "hate crimes against whites" (Mot. 6), anonymity cannot be justified based on generalized claims of discrimination in the community; rather, an evaluation of the circumstances specific to the plaintiff is required. *See, e.g.*, *I.L. v. Six Flags Ent. Corp.*, 2025 WL 2300009, at *2-3 (E.D. Cal. Aug. 8, 2025) (rejecting anonymity request based on generalized claims of discrimination and stigma). And such an argument is undermined by B.P.'s testimony that she and her daughter do not ascribe to such a view of Native Hawaiians in their community. Dkt. 54-3 at ¶ 10. It also ignores that many plaintiffs have sued in their own names in challenging programs benefitting Native Hawaiians, both inside and outside of education.[5] There is no indication that any of these plaintiffs ever faced any retaliation or physical harm due to their challenges to preferences and entitlements for Native Hawaiians. As the Ninth Circuit noted in *Doe II*, even children who did not have any Native Hawaiian ancestors had "attended Kamehameha with no reported incidents—either at school or outside the school

---

[5] *See, e.g.*, *Rice v. Cayetano*, 528 U.S. 495 (2000); *Arakaki v. Lingle*, 477 F.3d 1048 (9th Cir. 2007); *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003); *Arakaki v. Hawai'i*, 314 F.3d 1091 (9th Cir. 2002); *Kuroiwa v. Lingle*, 2008 WL 2622816 (D. Haw. July 3, 2008).

setting," including after one used "his real name in litigation against Kamehameha."
96 F.3d at 1045.

Under *Advanced Textile*, plaintiffs seeking to demonstrate that their alleged
fear of harm from disclosure of their identities is objectively reasonable must prove
that they "were threatened, and that a reasonable person would believe that the threat
might actually be carried out." 214 F.3d at 1071. But this case is far afield from
*Advanced Textile*, in which the plaintiffs specifically identified the risk that they
would be deported from Saipan and arrested and imprisoned by the People's
Republic of China. *Id.* at 1061.

Further, I.P. and B.P.'s purported fear is based entirely on online statements
made primarily in reference to SFFA's president and Plaintiffs' counsel—not to I.P.
or B.P. personally. Mot. 16-17. The Ninth Circuit has recognized, however, "many
times people say things anonymously on the internet that they would never say in
another context and have no intention of carrying out." *Doe II*, 596 F.3d at 1045.
Here, amidst a sea of hyperbolic, online statements made primarily in reference to
SFFA's president and Plaintiffs' counsel that no one would mistake as actual threats,
I.P. and B.P. point (Mot. 16-17) to a few cherry-picked statements, but even those
are insufficient. For instance, while outrageous, the fact that someone sent
Plaintiffs' counsel a bag of dog excrement is not a reasonable basis to fear severe
harm to I.P. or B.P.

Nor does it satisfy the standard for showing a reasonable fear of severe harm to point to social media posts merely predicting what *others* may do to Plaintiffs (as was true but rejected in *Doe II*).  In the world of social media, the presumption of access to courts would be vitiated if it were overcome every time vitriolic language on the internet was used to discuss a high-profile or controversial case.  Especially given that I.P. and B.P. do not identify *any* threats actually levied against them, they cannot rely on generalized assertions of concern to stifle KS's and the public's interest in transparency.  *See, e.g.*, *Stoterau*, 524 F.3d at 1012-13 (denying  request of inmate convicted of child pornography crimes for pseudonymity based on severe physical danger in prison because such harm was equally present for all others similarly situated).

### 5.    Plaintiffs' Alleged First Amendment Interest Has No Relevance Here

Plaintiffs lastly argue that, as an additional factor supporting anonymity, identifying I.P. and B.P. would "reveal their otherwise confidential membership in SFFA."  Mot. 19-20.  In support, Plaintiffs cite cases holding, for example, that the Attorney General of Alabama could not force the NAACP to reveal the names and addresses of all its Alabama members.  *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).  But KS is not asking that SFFA disclose its membership rolls.  Plaintiffs have cited no precedents, and we are aware of none, suggesting that plaintiffs who file a lawsuit alleging they

are members of an organization can seek anonymity to protect their right to be confidential members of that organization.   In fact, none of the freedom of association cases Plaintiffs cite involved associational standing.[6]  Plaintiffs' position would obviously prove too much: A plaintiff could maintain anonymity through the life of a case simply by alleging membership in an organization.  That cannot be right.

Indeed, the First Amendment actually weighs in favor of transparency.  The "presumed public right of access to court proceedings" is rooted in the First Amendment, as well as in the common law and Federal Rules.  *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014).  That right weighs against concealment of important facts, like the "true identities" of litigants.   *Doe v. Barr*, 479 F. Supp. 3d 20, 25 (S.D.N.Y. 2020); *see also Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1029 (D. Minn. 1998).

---

[6] *See N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 932 (1982) (individuals should not be forced to disclose their political associations for the purpose of determining whether they are criminally or civilly guilty by association); *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) (charities cannot be compelled to disclose their donors); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162-63 (9th Cir. 2010) (political organizations cannot be compelled to disclose internal campaign communications); *Black Panther Party v. Smith*, 661 F.2d 1243, 1265-66 (D.C. Cir. 1981) (Black Panther Party was permitted to claim First Amendment privilege over the identities of its leaders and members not known to the public in response to interrogatories); *NAACP v. Button*, 371 U.S. 415, 431 (1963) (public interest lawyers may solicit clients).

## II.    THE COURT SHOULD GRANT KS'S CROSS-MOTION TO DISMISS THE COMPLAINT

### A.    The Court Should Dismiss I.P. And B.P.'s Claims For Failure To Comply With Rule 10(a)

Rule 10(a) requires that a "complaint name all the parties."  Fed. R. Civ. P. 10(a).  This rule reflects the "paramount importance of open courts."  *Doe II*, 596 F.3d at 1046.  Absent "special circumstances justify[ing] secrecy," *Advanced Textile*, 214 F.3d at 1067, a complaint that fails to heed Rule 10 must be dismissed under Rule 12(b)(1), *Doe II*, 596 F.3d at 1046 (affirming dismissal of complaint based on plaintiffs' failure to disclose identities); *Doe v. UNUM*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016) (dismissing complaint under Rule 12(b)(1) for failing to identify plaintiffs).

As explained in detail above, neither Rule 5.2 nor any special circumstances permit I.P and B.P. to pursue this action anonymously.  *See infra* Part I. Accordingly, the Court should dismiss their claims unless they proceed in their own names.

### B.    The Court Should Dismiss SFFA Because Its Failure To Name Allegedly Injured Members Defeats Associational Standing

As alleged in the Second Amended Complaint, SFFA's standing is premised on "associational standing," SAC ¶ 9, which requires an organizational plaintiff to have members who would have Article III standing to pursue the claim in their own right, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

181 (2000).  To meet that requirement, however, the organization must actually name an affected member.  Plaintiffs' failure to do so is fatal to SFFA's associational standing.  Accordingly, its claims should be dismissed.

In *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), the Supreme Court considered whether a national environmental group could establish standing to challenge federal regulations affecting forests.  In concluding that the organization lacked standing, the Court held that it was insufficient that there was "a statistical probability that some of [the organization's] members are threatened with concrete injury" on account of the regulations.  *Id.* at 497.  That view, the Court said, "would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one *identified member* had suffered or would suffer harm."  *Id.* at 498 (emphasis added).  The Court explained in no uncertain terms that its precedents establish a "requirement to name the affected members."  *Id.*  For example, "in *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 235 (1990), we noted that the affidavit provided by the city to establish standing would be insufficient because it did not *name the individuals* who were harmed by the challenged license-revocation program."  *Id.* (emphasis added).  Thus, "plaintiff-organizations [must] make specific allegations establishing that at least one *identified* member ha[s] suffered or would suffer harm."  *Id.* at 498 (emphasis

added); *see id.* at 499 ("the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite injury").

Applying *Summers*, the Ninth Circuit has held that associational standing generally "requir[es] members to be named." *Satanic Temple v. Labrador*, 149 F.4th 1047, 1050-51 (9th Cir. 2025) (citing *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016)). In *Satanic Temple*, the Ninth Circuit held that a religious organization did not have standing to challenge Idaho's abortion laws because it had not identified any affected members. 149 F.4th at 1048. The Court recognized that the only instance in which "an organization need not always 'identify by name the member or members injured,'" is when it is "'relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action.'" *Id.* at 1051 (citation omitted).

Although it is far from clear that the Ninth Circuit's exception for circumstances where it is relatively clear that a member has a concrete injury comports with *Summers*, it could not apply here. It is not remotely clear that SFFA— an organization based in Virginia that trolled the Internet for members in order to generate this lawsuit—has members who intend to apply to KS in the future. As a consequence, under *Summers* and *Satanic Temple*, SFFA must "identify by name the member or members injured." 149 F.4th at 1051.

23

Rule 5.2 does not permit Plaintiffs to evade the constitutional requirements of *Summers* and *Satanic Temple* by using members' initials. As a threshold matter, Plaintiffs have not referred to Families A and B by initials, so Rule 5.2 is irrelevant as to them, and I.P. will turn 18 before this motion is resolved. But at any rate, Rule 5.2 grants the Court discretion to require minors to be identified by name. For all the reasons discussed for I.P. and B.P. above, it is vital that the identities of Families A and B not be masked. Most clearly, KS would suffer severe prejudice if they could not test, through third-party discovery, the standing allegations for two families that have never taken even basic preparatory steps to apply to the Schools. Any other ruling would vitiate the Schools' right to meaningfully scrutinize the allegations that purport to give this Court jurisdiction to rule on the admissions policy.[7]

At any rate, a federal e-privacy rule cannot trump the requirements of Article III. Under *Summers* and *Satanic Temple*, SFFA cannot establish standing to bring a suit in which it has no personal stake without naming at least one member that does

---

[7]    Plaintiffs also have not sought leave to keep Families A and B anonymous under the *Advanced Textile* standard. It is not at all clear that doing so would be consistent with Article III's general requirement that a member necessary for associational standing be named, and Kamehameha Schools will address that question if and when Plaintiffs seek leave. But in any event, for the same reasons discussed above with respect to I.P. and B.P., Plaintiffs cannot satisfy the *Advanced Textile* standard for Families A and B—including the public's right to understand who is behind this lawsuit, the Schools' need for third-party discovery, and the lack of any credible threat of violence.

have a personal stake. Initials are not good enough. *See T.H. v. Pasadena Unified Sch. Dist.*, 2025 WL 1127862, at \*2 (C.D. Cal. Feb. 28, 2025) (treating initials as equivalent to a pseudonym). Allowing an association with no concrete stake in a case to bring suit is already constitutionally suspect. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 399-400 (2024) (Thomas, J., concurring). But to allow it do so without even identifying a real member with such a stake would exceed constitutional limits. That is especially true here where, for all the reasons stated with respect to I.P. and B.P., allowing Families A and B to remain anonymous would also make it impossible to meaningfully scrutinize SFFA's standing.

## CONCLUSION

The Court should deny Plaintiffs' request and grant KS's cross-motion to dismiss Plaintiffs' complaint unless they identify themselves and the SFFA members on whom they rely to establish standing.

DATED: Honolulu, Hawai'i, February 18, 2026.

*/s/ Joachim P. Cox*
JOACHIM P. COX
KAMALA S. HAAKE
JOHN F. BASH *(Pro Hac Vice)*
WILLIAM A. BURCK *(Pro Hac Vice)*
ELLYDE R. THOMPSON *(Pro Hac Vice)*

Attorneys for Defendants
TRUSTEES OF THE ESTATE OF
BERNICE PAUAHI BISHOP d/b/a
KAMEHAMEHA SCHOOLS