IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., by and through her next of friend and mother, B.P.; and B.P.<br><br>                    Plaintiffs,<br><br>     vs.<br><br>TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS,<br><br>                  Defendant. | CIVIL NO. 1:25-cv-00450-MWJS-RT<br><br>MEMORANDUM IN SUPPORT OF MOTION |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................. 1

II.   RELEVANT BACKGROUND ............................................................ 3

    A. The SAC's Jurisdictional Allegations ............................................. 3

       1.  Family A and Family B .............................................................. 3

       2.  I.P. and B.P. .............................................................................. 5

    B. Procedural Posture ........................................................................... 6

III.  LEGAL STANDARD .......................................................................... 7

IV.   ARGUMENT ....................................................................................... 9

    A. Limited Jurisdictional Discovery Is Warranted into Family A and
       Family B ......................................................................................... 12

       1.  KS Has No Information About Family A and Family B ............. 13

       2.  KS Should Be Allowed to Test Whether Family A and
           Family B Are "Able and Ready" ................................................. 13

       3.  Jurisdictional Discovery Is Required to Determine Whether
           the Preference Policy Would Be Applied to Student A and
           Student B ...................................................................................... 16

       4.  SFFA's Recruitment Method Is Suspect ..................................... 17

    B. KS' Proposed Limited Jurisdictional Discovery Will Provide
       Relevant Jurisdictional Facts Regarding Family A and Family B .... 19

    C. The Limited Jurisdictional Discovery KS Has Proposed Is
       Needed to Determine I.P. and B.P.'s Standing ................................. 22

V.    CONCLUSION .................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*California v. Texas*,
   593 U.S. 659 (2021) ....................................................................... 11, 22

*Carney v. Adams*,
   592 U.S. 53 (2020) ......................................................................... Passim

*Do No Harm v. Gianforte*,
   CV 24-24-H-BMM-KLD, 2025 WL 756742 (D. Mont. Jan. 10, 2025).............. 11

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*,
   470 F.3d 827 (9th Cir. 2006) ................................................................. 14

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
   11 F.4th 200 (3d Cir. 2021) ................................................................... 11

*Gallelli v. Crown Imports, LLC*,
   701 F. Supp. 2d 263 (E.D.N.Y. 2010) ...................................................... 8

*Grace v. T.G.I. Fridays, Inc.*,
   Civ. No. 14-7233, 2016 WL 952454 (D.N.J. Mar. 14, 2016) ........................... 18

*Gracie Baked LLC v. GiftRocket, Inc.*,
   No. 22 CIV. 4019, 2024 WL 1345643 (E.D.N.Y. Mar. 28, 2024)....................... 8

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ............................................................................ 11

*Hafner v. Grisham*,
   No. 23-CV-01151, 2024 WL 2832916 (D.N.M. June 4, 2024)........................... 11

*HRPT Properties Trust v. Lingle*,
   676 F. Supp. 2d 1036 (D. Haw. 2009)........................................................ 8

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ............................................................................ 10

*Laub v. United States Dept. of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ............................................................. 7

*Laufer v. Laxmii & Sons, LLC*,
    No. 1:19-CV-1501, 2021 WL 1970264 (N.D.N.Y. Apr. 1, 2021) ...................... 8

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ........................................................ 9, 12

*Loffman v. Cal. Dept. of Educ.*,
    119 F.4th 1147 (9th Cir. 2024) ...................................................... 10, 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................... 10

*MTACC, Inc. v. N.Y. State Dep't of Fin. Servs.*,
    No. C14-617 RSM, 2015 WL 300779 (W.D. Wash. Jan. 21, 2015) ................. 8

*Phoenix Consulting, Inc. v. Republic of Angola*,
    216 F.3d 36 (D.C. Cir. 2000) .............................................................. 9

*Prakash v. Am. Univ.*,
    727 F.2d 1174 (D.C. Cir. 1984) ........................................................... 9

*Qi Chen v. The Individuals, Partnerships, and Unincorporated Associations
    Identified on Schedule A*,
    No. 23-61975-CIV, 2025 WL 3541418 (S.D. Fla. Feb. 12, 2025) ..................... 8

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) .................................................................... 11, 14

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ......................................................................... 10

*Sweeney v. Paramount Global*,
    Case No. CV 24-0708, 2024 WL 5372403 (C.D. Cal. Oct. 4, 2024) ................. 8

*Tavarez v. Moo Organic Chocolates, LLC*,
    641 F. Supp. 3d 76 (S.D.N.Y. 2022) .................................................... 2, 8

*Texas v. U.S. Dep't of Homeland Security*,
    No. 6:24-CV-00306, 2024 WL 5454617 (E.D. Tex. Aug. 26, 2024) ................. 23

*United States v. Kiefer*,
  760 F.3d 926 (9th Cir. 2014) ............................................................... 22

*Whitaker v. Peet's Coffee, Inc.*,
  Case No. 21-cv-07698-VC, 2022 WL 278664 (N.D. Cal. Jan. 31, 2022)... 2, 9, 16

**Rules**

Federal Rules of Civil Procedure, Rule 12(b) ................................................ 8, 9, 18

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiff Students for Fair Admissions ("SFFA") admittedly has no concrete stake in challenging Defendant Kamehameha Schools' ("KS") preference policy. But to advance its ideological objectives, it generated this lawsuit by trolling online for new members so that it could allege associational standing based on the members' purported interest.  Yet, SFFA and its co-Plaintiffs I.P. and B.P. have refused to disclose the identities of any of the individuals that purport to establish an Article III case or controversy and have relied only on exceedingly vague, generic, and conclusory allegations of injury—like bald statements that Family A and Family B are ready and willing to apply to KS—without providing any objective markers that could confirm such an intent.  Because of the manner in which Plaintiffs have chosen to prosecute this case—hiding behind the cloak of anonymity while providing no concrete facts about standing in the complaint—KS has no way to determine whether Family A, Family B, I.P., and B.P. have Article III standing.  Nor would simply allowing Plaintiffs the opportunity to replead standing resolve the issue.  KS disputes Plaintiffs' Article III standing, not only because of the facial shortcomings in the Second Amended Complaint ("SAC"), but also, and more urgently, because of the facts.  KS asserts, for the particularized reasons set forth below, that discovery will confirm there is no basis for jurisdiction.

Courts have wide discretion to order jurisdictional discovery to test a plaintiff's standing allegations. Such discovery is particularly appropriate where there is reason to be "skeptical of the accuracy of the critical factual allegations," *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 83 (S.D.N.Y. 2022), or where standing hinges on otherwise unverifiable facts such as the plaintiff's intent, *Whitaker v. Peet's Coffee, Inc.*, Case No. 21-cv-07698-VC, 2022 WL 278664, at *1 (N.D. Cal. Jan. 31, 2022). There are ample reasons for jurisdictional discovery here, including the circumstances in which this suit was created, the anonymity of the only individuals with alleged concrete injuries, and the vague or otherwise untestable factual claims.

Plaintiffs resist that discovery by claiming that they would like to streamline this litigation and proceed expeditiously. *See*, *e.g.*, Dkt. 62. But it is Plaintiffs who are unduly prolonging proceedings. Rather than agreeing to expedited, limited jurisdictional discovery before engaging in Rule 12 motion practice, Plaintiffs insist that KS seek jurisdictional discovery only after its upcoming motion to dismiss— and then presumably file supplemental or amended briefs based on what discovery produces. That protracted process would not serve the interests of justice or judicial efficiency. KS has proposed an expedited, efficient approach in which the parties would brief Article III standing after targeted discovery.

Plaintiffs ultimately must prove that they have standing to bring their claims. There is no reason to delay the inevitable discovery that may determine the outcome of this case. And postponing this discovery until later stages of the case, as Plaintiffs urge, could lead the Court into issuing an advisory opinion on the merits. Accordingly, KS requests that the Court grant this motion so that the jurisdictional and merits issues can be properly and efficiently sequenced.

## II.    RELEVANT BACKGROUND

### A.    The SAC's Jurisdictional Allegations

#### 1.    Family A and Family B

After spending months trolling for plaintiffs to challenge KS' long-standing preference policy, SFFA found two families who have never taken any action on their supposed interest in enrolling at KS. Despite SFFA's acknowledgement of the "highly competitive" nature of KS' admissions process, SAC ¶ 19, SFFA provides *no* information regarding the academic qualifications of the children in Family A or Family B or the efforts they undertook to apply or prepare to apply to KS.

In fact, based on the allegations in the SAC, neither Family A nor Family B ever applied to KS. Instead, the SAC alleges that Family A and Family B, who are not Native Hawaiian, are "ready and able to apply" for their respective daughters "to attend Kamehameha Schools at the next opportunity, once a court orders Kamehameha to end its racial preference, to be equally open to non-native

Hawaiians, and to undo the effects of its past discrimination." *Id.* ¶¶ 65, 71. Family A and Family B proffer the exact same reason for not applying: "But the application process requires in-person testing and an interview with Kamehameha. Because Kamehameha accepts no non-native Hawaiians, Family [A and Family B] refuse[] to put the daughter through the time, effort, and humiliation of going through that futile process." *Id.* ¶¶ 64, 70.

The only other information alleged about Family A and Family B is as follows:

Family A. Family A resides in Hawai'i. The daughter of Family A ("Student A") is currently in the ninth grade and is homeschooled. *Id.* ¶¶ 61–62. Family A contends that they contemplated applying Student A for the tenth grade and that, prior to the application deadline, they "reviewed Kamehameha's application and determined how they would answer each question." *Id.* ¶ 64. Family A ultimately decided not to apply their daughter to KS.

Family B. Family B resides in Hawai'i. The daughter of Family B ("Student B") is currently in the second grade and attends public school. *Id.* ¶¶ 66–67. The SAC acknowledges that, as a second grader, Student B was not eligible to apply to KS for the 2025-2026 school year. *Id.* Nonetheless, the SAC alleges: "Family B could apply for the daughter to attend fourth grade at the Hawaii campus, since she has family on Oahu whom she could live with. Or Family B could apply for the

daughter to attend seventh grade at the Kapalama campus, near where Family B currently lives."[1]  *Id.* ¶ 68.  Family B alleges that it "has reviewed Kamehameha's application and determined how they would answer each question."  *Id.* ¶ 70.  However, the SAC provides no information as to when this supposed review occurred or why Family B took such action, considering Student B was not eligible for admission.  *See generally id.*

### 2. I.P. and B.P.

After filing the original Complaint, Plaintiffs filed an amended Complaint adding two new Plaintiffs:  I.P., a student who allegedly applied to and was denied admission to KS, and B.P., her mother.  The SAC alleges that I.P. is currently a senior in high school.  *Id.* ¶ 87.  She applied to KS' Kapālama campus as a freshman for admission her sophomore year, but she was denied admission.  *Id.* ¶¶ 82, 84.  Even though I.P. is graduating in a few months, the SAC alleges that "if a court ordered adequate relief, I.P. would finish her schooling and graduate from Kamehameha."  *Id.* ¶ 87.  Plaintiffs have recently conceded that they no longer seek injunctive relief on behalf of I.P. and B.P.  Dkt. 96 at 9 n.4.  Their claim is therefore limited to alleged damages for the prior denial of admission.

---

[1] Based on this allegation, it is unclear to which campus Student B would apply, since the Hawai'i campus is not on O'ahu.

**B.     Procedural Posture**

For over a month now, KS has made it known to SFFA that KS intends to challenge Plaintiffs' standing.  As early as January 26, 2026, KS advised SFFA and the Court of KS' intent to "file a motion challenging Plaintiffs' constitutional and statutory standing[.]"  Dkt. 61; *see also* Dkt. 63.   Thereafter, KS and Plaintiffs conducted several meet-and-confers regarding KS' request to proceed with limited jurisdictional discovery in advance of responding to the SAC.  *See* Dkt. 92-1 at 1.

KS proposed the following phased jurisdictional discovery to Plaintiffs:

- Stage 1:  Limited discovery confined to SFFA's Members (Family A, Family B, I.P., and B.P.), consisting of requests for production of documents and targeted depositions that would be limited in scope to questions related to standing.  *Id.* at 1–2; *see also* Dkt. 92-3.

- Stage 2:  Limited third-party discovery regarding standing, as permitted following the Court's ruling on the pending anonymity dispute and as needed based on information obtained (or not obtained) in Stage 1.  Dkt. 92-1 at 2.

As KS represented, the proposed discovery would be "confined to the factual predicates underlying Plaintiffs' assertions in support of standing" as alleged in the SAC.  *Id.*

In response, SFFA asked, among other things, whether KS would agree to bilateral jurisdictional discovery.  Dkt. 92-2 at 3.  KS responded:  "Generally, yes.  However, Plaintiffs need to first provide responses to KS' [requests for production of documents] so that there is a framework to better identify the scope of Plaintiffs'

6

counter discovery related to standing . . . ." *Id.* at 4. KS represented that any counter-discovery would need to be limited in time and that "other than providing the information related to I.P. and B.P., KS does not agree to Plaintiffs seeking discovery as to other individual applicants[.]" *Id.* Rather, KS would be willing to provide discovery on "the qualification standards set and related statistics as to applicants within the [relevant] time period." *Id.*

Despite KS' offer, Plaintiffs took the position "that [KS'] alleged need for jurisdictional discovery should be briefed in or alongside [KS'] motion to dismiss, which should be filed no later than April 13. We reserve the right to respond to your written discovery, but we oppose depositions, third-party discovery, and your conditions on our reciprocal discovery." *Id.* at 1.

## III.    LEGAL STANDARD

"A district court is vested with broad discretion to permit or deny [jurisdictional] discovery." *Laub v. United States Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (citation and internal quotation marks omitted) (collecting cases).

Given that Article III standing is a threshold issue that may deprive a court of jurisdiction, jurisdictional discovery should proceed in advance of a Rule 12

motion.[2]  In fact, courts may *sua sponte* order a defendant to take jurisdictional discovery, where, for instance, the court is "skeptical of the accuracy of the critical factual allegations" regarding plaintiff's standing. *Tavarez*, 641 F. Supp. 3d at 83.[3] Jurisdictional discovery is also appropriate where the court is simply unable to determine, based on the existing record, whether standing exists. *See MTACC, Inc. v. N.Y. State Dep't of Fin. Servs.*, No. C14-617 RSM, 2015 WL 300779, at \*6 (W.D. Wash. Jan. 21, 2015).

---

[2] *See, e.g., Qi Chen v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A*, No. 23-61975-CIV, 2025 WL 3541418, at \*3 (S.D. Fla. Feb. 12, 2025) (recognizing that "jurisdictional discovery is highly favored before resolving [FRCP] 12(b)(2) motions to dismiss for want of personal jurisdiction"); *Sweeney v. Paramount Global*, Case No. CV 24-0708, 2024 WL 5372403, at \*1 (C.D. Cal. Oct. 4, 2024) (deferring ruling on defendant's 12(b)(6) motion to allow the parties to conduct jurisdictional discovery into plaintiffs' injuries); *Gracie Baked LLC v. GiftRocket, Inc.*, No. 22 CIV. 4019, 2024 WL 1345643, at \*2 (E.D.N.Y. Mar. 28, 2024) ("Allowing jurisdictional discovery prior to [] a motion [to dismiss for lack of personal jurisdiction] is consistent with cases giving plaintiffs a reasonable opportunity to substantiate allegations . . . that would subject Individual Defendants to long-arm jurisdiction . . . ."); *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 267 (E.D.N.Y. 2010) (ordering the parties to engage in jurisdictional discovery before briefing the motion to dismiss); *see also, e.g., HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036, 1042 (D. Haw. 2009) ("The court may, for example, allow limited discovery on the jurisdictional issue, then resolve the matter based on a motion, or, if there is a genuine issue of fact, the court may conduct a hearing.").

[3] *See also Laufer v. Laxmii & Sons, LLC*, No. 1:19-CV-1501, 2021 WL 1970264, at \*5–6 (N.D.N.Y. Apr. 1, 2021) (ordering evidentiary hearing to test the credibility of plaintiff's standing allegations regarding her intent to travel to the subject area).

Moreover, when a defendant raises a factual attack under Rule 12(b)(1), which "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings," "the plaintiff must support her jurisdictional allegations with 'competent proof,' . . . under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citations omitted). "The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction[.]" *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984). Jurisdictional discovery is often appropriate to ascertain whether there are facts supporting the court's subject matter jurisdiction. *See, e.g., Whitaker*, 2022 WL 278664, at *1 (stating that, if defendant raises a factual attack challenging the truth of plaintiff's assertions regarding intent, "the Court would be inclined to allow three months of jurisdictional discovery").[4]

Because KS has significant reasons to question Plaintiffs' standing here, jurisdictional discovery is needed.

## IV.    ARGUMENT

To demonstrate associational standing to seek prospective relief, SFFA must plead and prove that, among other things, "its members would otherwise have

---

[4] *See also, e.g., Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39–40 (D.C. Cir. 2000).

standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  That requires SFFA, as the party invoking federal jurisdiction, to prove the following with respect to Family A and Family B, the allegedly affected SFFA members:[5]  (1) they suffered an "injury in fact" that is both (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).  I.P. and B.P., to the extent they are suing in their individual capacities, must also establish that they have standing to seek damages based on an alleged past injury.

Two aspects of standing have particular relevance here.  First, under Supreme Court and Ninth Circuit precedent, Plaintiffs must demonstrate that the members giving rise to SFFA's standing to seek prospective relief (*i.e.*, Family A and Family B) are "able and ready" to apply to KS.  *Loffman v. Cal. Dept. of Educ.*, 119 F.4th 1147, 1159 (9th Cir. 2024) (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020)).

---

[5] I.P. and B.P. are also allegedly members of SFFA.  SAC ¶ 88.  I.P. and B.P. recently conceded that they will not be seeking injunctive relief.  Dkt. 96 at 9 n.4.  Therefore, SFFA cannot rely on I.P. and B.P. to establish standing for prospective relief.  *See Summers v. Earth Island Institute*, 555 U.S. 488, 495 (2009) (finding standing lacking for prospective relief where member's injury occurred in the past "rather than imminent future injury that is sought to be enjoined").

"Whether a plaintiff is 'able and ready' to pursue a benefit or opportunity turns on the specific facts of the case." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 206 (3d Cir. 2021) (citation omitted).  In this context, to be "able" should be interpreted to mean "qualified,"[6] and to be "ready" means seeking admission "and genuinely interested in" attending KS.[7]

Second, in order to establish traceability, SFFA must show that the challenged preference policy for Native Hawaiians would be applied to Student A and Student B (and I.P. must show that the preference was applied to her prior application).  *See California v. Texas*, 593 U.S. 659, 668–69 (2021).  In other challenges brought by SFFA, for example, it was clear that race was taken into account early in the application process, such that each plaintiff or member was subject to the challenged policy.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 194–95 (2023).  But here, the evidence will show that KS

---

[6] *See, e.g.*, *Gratz v. Bollinger*, 539 U.S. 244, 251, 262 (2003) (holding one potential applicant had standing to challenge school's admission policy where he was in the "qualified range", and another potential applicant was considered to be "well qualified"); *see also*, *e.g.*, *Do No Harm v. Gianforte*, CV 24-24-H-BMM-KLD, 2025 WL 756742, at *6 (D. Mont. Jan. 10, 2025) ("To satisfy the 'ability' prong . . . , Do No Harm must demonstrate that at least one Member would be qualified and eligible for appointment to the Board but for the allegedly discriminatory criteria."); *Hafner v. Grisham*, No. 23-CV-01151, 2024 WL 2832916, at *3 (D.N.M. June 4, 2024) (finding plaintiff was not "able and ready" to seek public office where he was not qualified for the seat).

[7] *Cf. Carney*, 592 U.S. at 63–64 (holding plaintiff was not "able and ready" where, among other things, plaintiff did not evidence "an actual desire to become a judge").

does not consider whether an applicant is Native Hawaiian *at all* until the applicant could be offered admission based on their ranking and the number of seats available. Decl. of H. Park ("Park Decl.") ¶ 5.  Until this point, whether the applicant is Native Hawaiian is not considered.  *Id.*  As such, Plaintiffs would have to show that Student A, Student B, and I.P. were sufficiently competitive for admission that the preference policy was actually applied or would be applied to them; without that, there is no connection between the challenged preference and the putative Article III injury.

Here, even assuming, *arguendo*, that the allegations in the SAC are sufficient to survive dismissal, KS is entitled to a fair opportunity to test the facts underlying both of those issues through targeted jurisdictional discovery.  That is especially clear given the manner in which the purported SFFA members were recruited, Plaintiffs' demand for anonymity through the life of the case, the SAC's vague allegations about the intent of SFFA's putative members, and the dearth of any allegations about the student's competitiveness.

## A.    Limited Jurisdictional Discovery Is Warranted into Family A and Family B

To the extent Plaintiffs' vague jurisdictional allegations regarding Family A and Family B were facially sufficient (they are not), jurisdictional discovery is necessary so that KS can "contest[] the truth of [SFFA's] factual allegations." *Leite*, 749 F.3d at 1121.  Several red flags support a factual inquiry into those allegations.

### 1.    KS Has No Information About Family A and Family B

Plaintiffs' insistence that SFFA's putative members continue to remain anonymous raises serious concerns.  KS has no ability to independently obtain public information about Family A and Family B.  KS thus lacks even basic information regarding the students' objective qualifications, such as their zip codes, much less their competitiveness for admission and their intent.  Even if the identities of the individuals were disclosed to KS under a protective order, KS would presumably be barred from talking to third parties about the qualifications and intent of the individuals.

### 2.    KS Should Be Allowed to Test Whether Family A and Family B Are "Able and Ready"

Although Plaintiffs must show that Family A and Family B are "able" (*i.e.*, qualified) to attend KS and that they have taken steps showing they are "ready" to attend KS, such as "prior . . . applications," "efforts to determine likely openings," or "other preparations" for attending, the SAC's allegations provide no such information. *Loffman*, 119 F.4th at 1160 (quotation omitted); *see also Carney*, 592 U.S. at 65 (observing that the *Gratz* plaintiff had standing because he not only "said he intended to apply . . . in the near future" but that "he had" also "applied for admission . . . in the recent past and been rejected").

As Plaintiffs acknowledge, admission to KS is "highly 'competitive.'"  SAC ¶ 19.  As part of the application process, in addition to "fill[ing] out a questionnaire[,]

13

. . . attend[ing] a test session on campus . . . and an in-person interview with Kamehameha staff", SAC ¶ 24, applicants for every eligible grade level, except kindergarten, are required to also submit prior report cards and at least one teacher recommendation.[8]  The SAC does not allege that Families A and B are prepared to provide this information (much less describe the content of the information), making it impossible to know whether Student A and Student B are qualified and competitive for admission to KS.[9]

---

[8] *See* https://www.ksbe.edu/apply/kapalama-campus; *see also* Park Decl. ¶ 5.

[9] The standing allegations here bear no resemblance to other admissions cases that SFFA has prosecuted, where SFFA included far more specific allegations about its members' qualifications.  For instance, in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, SFFA attached to its complaint a declaration from Edward Blum, SFFA's president, attesting, among other things: (1) the member with standing graduated at the top of his/her class in high school; (2) "U.S. News and World Report ranks Applicant's high school in the top 5 percent of all high schools in the United States"; (3) the member achieved perfect scores on the ACT, SAT II History, and SAT II Math; (4) the member was awarded multiple academic achievements; and (5) the member participated in extensive extracurricular and volunteer activities.  Case 1:14-cv-14176 (D. Mass.), Dkt. 1 ¶¶ 18–21.  Similarly detailed information was alleged and attested to in *Students for Fair Admissions, Inc. v. University of North Carolina*.  Case No. 1:14-cv-00954 (M.D.N.C.), Dkt. 1 ¶¶ 15–18.  In addition, other SFFA cases, including *Harvard* and *University of North Carolina*, involved members who had previously applied for but were denied acceptance to the subject school.

These affirmative action cases concern different laws and distinct types of institutions.  *See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est*., 470 F.3d 827, 839 (9th Cir. 2006) (en banc) (noting the inapplicability of affirmative action cases to Kamehameha Schools); *id*. at 887 (Kleinfeld, J., dissenting) ("The recent U.S. Supreme Court decisions about affirmative action . . . have nothing to do with this case.").  Nevertheless, KS cites them here to show that, even accepting

In addition, SFFA provides virtually no information regarding the purported readiness of Family A and Family B to apply for and attend KS.  Instead, despite now having three opportunities to demonstrate Family A's and Family B's standing—and being on notice that KS intended to challenge standing—the SAC contains nothing more than carbon-copy, conclusory allegations as to Family A's and Family B's readiness to attend KS.  SAC ¶¶ 64–65, 70–71.  This purported readiness, however, is contradicted by the fact that neither family appears to have previously applied to KS, despite having the opportunity to do so.  For example, Student A is currently in the ninth grade and could have applied for admission to KS for kindergarten, fourth grade, seventh grade and ninth grade—yet, Plaintiffs do not allege that Family A applied at any of these entry points, and they offer no explanation for why Family A is only now suddenly "ready" to do so.  *Id.* ¶ 64.  Likewise, Student B is currently in second grade and, therefore, could have applied to KS for kindergarten.  *Id.* ¶ 66.  Under *Carney*, more is needed to establish standing than a plaintiff's say-so that they "would apply," particularly where, as here, such statements are made "without any past injury, without reference to an anticipated timeframe, without prior [] applications, . . . without efforts to determine likely

---

Plaintiffs' allegations as true here, they still fail to establish standing on their own terms.

openings, without other preparations or investigations, and without any other supporting evidence." 592 U.S. at 63.

Even if Plaintiffs eventually alleged enough to survive a facial jurisdictional attack, KS must at least be allowed to depose Family A and Family B about their putative intent. Discovery is particularly appropriate to test a plaintiff's claim about subjective allegations pertinent to standing, like an alleged desire to attend a certain school. *See*, *e.g.*, *Whitaker*, 2022 WL 278664, at *1. Unlike concrete factual assertions (*e.g.*, a physical or financial injury), such allegations are easy to include in a complaint but may crumble in the face of adversarial testing.

### 3. Jurisdictional Discovery Is Required to Determine Whether the Preference Policy Would Be Applied to Student A and Student B

If Student A and Student B are not competitive candidates for admission, they cannot establish the Article III requirement of traceability. As noted, unlike the university admissions policies that SFFA has challenged in the past, KS does not consider whether an applicant is Native Hawaiian until it has otherwise decided that it could offer the applicant admission based on their ranking and seat availability. Park Decl. ¶ 5. KS therefore must have an opportunity to scrutinize the competitiveness of Student A and Student B in order to test their standing.

16

## 4.    SFFA's Recruitment Method Is Suspect

The manner in which SFFA recruited members raises significant doubts about Plaintiffs' standing allegations. This lawsuit did not emerge organically. Rather, SFFA decided to target KS for SFFA's own ideological reasons and went looking for parties who would be willing to assist in the suit. SFFA launched its website to recruit members to challenge KS' preference policy in early August 2025.[10] According to the SAC, the application window for the 2025-2026 school year "opened on August 15 and closed on September 30, 2025." SAC ¶ 22. This lawsuit was filed on October 20, 2025, less than a month after the application closed, by two SFFA members who opted not to apply to KS for the 2025-2026 school year. Dkt. 1.

The timing of the website's launch and the filing of the complaint, combined with the vague allegations in the SAC that Family A and Family B "reviewed Kamehameha's application" at some point, *id.* ¶¶ 64, 70, raise serious questions about the standing allegations. For example, did Family A and Family B actually review the application on their own initiative because they were interested in applying to KS, or did they do so only at the prompting of SFFA in an effort to check a box for this lawsuit? SFFA's standing may well rise or fall on that fact alone. Without any evidence that Family A and Family B actually intended to apply to KS,

---

[10] *See* Kamehameha Schools: NOT FAIR, https://www.kamehamehanotfair.org/; https://who.is/whois/kamehamehanotfair.org (noting creation of website on August 7, 2025).

they have a mere generalized grievance and did not suffer an injury-in-fact.  *See*
*Carney*, 592 U.S. at 60 (concluding that plaintiff had a generalized grievance
because he read a law review article, suddenly changed political party, and then filed
suit).

A similar timeline issue arose in *Grace v. T.G.I. Fridays, Inc.*, Civ. No.
14-7233, 2016 WL 952454, at *4 (D.N.J. Mar. 14, 2016).  There, plaintiff's claims
were premised on the allegations "that Plaintiff suffered a monetary injury because
TGIF charged him in excess of what was reasonable for a beverage, and Plaintiff did
not know the price until after consuming the beverage and receiving the invoice."
*Id.*  Defendants argued that "plaintiff has no injury in fact if Plaintiff's counsel
directed him to visit the Evesham TGIF and purchase a beverage."  *Id.*  The court
agreed, noting that "[w]hether Plaintiff retained counsel prior to his September 30,
2014 visit to the Evesham TGIF or in the week between his visit and Plaintiff's
counsel filing his Complaint on October 6, 2014 is therefore relevant and dispositive
to whether Plaintiff suffered any injury in fact."  *Id.*  The court therefore allowed
jurisdictional discovery into plaintiff's standing and declined to consider defendants'
Rule 12(b)(6) arguments until the standing issue was resolved.  *Id.*  Jurisdictional
discovery is likewise necessary here to determine when Family A and Family B
became SFFA members, whether they "reviewed Kamehameha's application" solely

18

at the direction of SFFA to facilitate this lawsuit, and whether they independently undertook any other steps to apply to KS.  SAC ¶¶ 64, 70.

In short, the case falls well within the heartland of cases where courts have authorized targeted discovery into the plaintiffs' jurisdictional allegations to ensure that the courts have the constitutional power to adjudicate the dispute.  That is the appropriate course here.

**B.    KS' Proposed Limited Jurisdictional Discovery Will Provide Relevant Jurisdictional Facts Regarding Family A and Family B**

KS' proposed discovery plan is narrowly tailored to obtain relevant jurisdictional facts.  Stage 1 involves obtaining discovery solely from Family A and Family B (as well as I.P. and B.P., for the reasons discussed in Section IV.C) about the jurisdictional allegations in the SAC, including their intent, objective qualifications, and competitiveness for admission.  Dkt. 92-1 at 1; Dkt. 92-3. Stage 2 would be invoked only if necessary and appropriate based on the Court's ruling on the parties' anonymity dispute and the discovery KS obtains in Stage 1. Dkt. 92-1 at 2.  In Stage 2, KS proposes to take third-party discovery directed at the standing issue.  This limited jurisdictional discovery will provide KS with evidence as to whether Student A and Student B are "able and ready" to apply to and attend KS and whether there is any fair prospect that Student A and Student B would be competitive for admission.

### (a)    Stage 1

First, as Plaintiffs admit, admission to KS is "highly 'competitive'", with "[t]he number of children seeking admission . . . 'increasing' every year." SAC ¶ 19. Therefore, to determine whether Student A and Student B have a fair prospect of admission, KS proposes to request documents regarding Student A's and Student B's educational records, such as report cards, letters of recommendation, standardized test scores, and so forth. Dkt. 92-3. In addition, KS seeks documents regarding any extracurricular activities. *Id.* As discussed above, this is the same type of information that SFFA voluntarily attested to in the *Harvard* and *University of North Carolina* complaints.

Second, KS seeks documents that would demonstrate Student A's and Student B's readiness to apply for and attend KS. KS has propounded document requests that are aimed at determining, for instance, why Family A and Family B want Student A and Student B to attend KS, and what specific steps they took to apply (or attempt to apply) to KS. *Id.*; *see*, *e.g.*, *Carney*, 592 U.S. at 61 (finding plaintiff was not "able and ready" to apply to become a judge where, among other things, he failed to previously do so despite being eligible, and there was no "evidence of conversations or other actions taken by Adams suggesting that he was 'able and ready' to apply for a judgeship").

Lastly, KS proposes to take targeted depositions of Family A and Family B that would be "limited in scope to questions related to standing . . . ." Dkt. 92-1 at 2. Depositions are needed because the document requests by themselves may not yield any information. For instance, Family A or Family B may not have documents supporting their allegations that applying to KS would result in "humiliation" to Student A and Student B. SAC ¶¶ 64, 70. Nor may they have documents showing that Family A and Family B would "apply for their daughter to finish her schooling" at KS. *Id.* ¶¶ 65, 70. Such information, as well as whether Student A and Student B have a genuine interest in applying to and attending KS, may only be gleaned through Family A's and Family B's own testimony. *See Carney*, 592 U.S. at 60–63.

### (b)    Stage 2

If Stage 1 does not provide the evidence necessary to determine whether this Court has jurisdiction, then KS proposes to take limited third-party discovery to supplement the Stage 1 discovery. Dkt. 92-1 at 2. For example, if Family A or Family B does not have copies of relevant report cards or transcripts, KS would need to request such documents from Student A's and Student B's schools. Similarly, if Family A or Family B does not have copies of recent standardized test scores, KS would need to be able to subpoena those records from the schools or testing companies. Inasmuch as KS requires applicants to submit teacher recommendations, KS may also need to seek third-party discovery from the relevant teachers. Stage 1

discovery may also reveal other third parties that have information relevant to the standing allegations.

**C.    The Limited Jurisdictional Discovery KS Has Proposed Is Needed to Determine I.P. and B.P.'s Standing**

As noted previously, I.P. and B.P. have recently stated that they will no longer be seeking injunctive relief.  Dkt. 96 at 9 n.4.  Nonetheless, jurisdictional discovery is still required to determine whether I.P. and B.P. were genuinely interested in I.P. attending KS if she were admitted her sophomore year.  *See*, *e.g.*, *Carney*, 592 U.S. at 63–65 (conducting a factual analysis of whether a plaintiff was genuinely interested in a position and concluding that the "record . . . shows nothing more than an abstract generalized grievance").  To that end, KS proposes to conduct limited discovery into I.P.'s purported desire to attend KS and her ability, had she been admitted, to do so.  *See* Dkt. 92-3.

In addition, KS intends to establish that I.P. and B.P.'s claim rests on a fundamental misunderstanding of the KS preference policy.  As discussed previously, the preference policy does not apply until after an applicant is ranked and could be offered admission based on their ranking and seat availability.  Park Decl. ¶ 5.  It is expected that I.P. will be unable to show she was denied admission based upon the application of such preference.  This will defeat the Article III requirement of traceability, *i.e.*, the connection between the alleged legal violation and a plaintiff's alleged harm.  *California*, 593 U.S. at 668–69; *see, e.g.*, *United*

*States v. Kiefer*, 760 F.3d 926, 933 (9th Cir. 2014) (concluding standing was lacking where there was no showing that the challenged sentencing statute was actually applied to the party seeking to challenge the statute); *see also Texas v. U.S. Dep't of Homeland Security*, No. 6:24-CV-00306, 2024 WL 5454617, at *4 (E.D. Tex. Aug. 26, 2024) (granting defendant's request for jurisdictional discovery into the traceability prong of standing).  In response to that argument, Plaintiffs will presumably seek discovery into KS' admissions process applicable to I.P. or potentially applicable to Student A and Student B had either applied.  That is further reason not to postpone discovery until after the Rule 12 motion has been briefed.

## V.    CONCLUSION

For all of the foregoing reasons, the Court should grant Defendant Kamehameha Schools' motion to permit jurisdictional discovery and allow the jurisdictional discovery proposed in Dkt. 92.

DATED:  Honolulu, Hawaiʻi, March 12, 2026.

*/s/ Joachim P. Cox*
JOACHIM P. COX
KAMALA S. HAAKE
JOHN F. BASH *(Pro Hac Vice)*
WILLIAM A. BURCK *(Pro Hac Vice)*
ELLYDE R. THOMPSON *(Pro Hac Vice)*

Attorneys for Defendants
TRUSTEES OF THE ESTATE OF
BERNICE PAUAHI BISHOP d/b/a
KAMEHAMEHA SCHOOLS