Jesse D. Franklin-Murdock (10778)
SWEIGART MURDOCK, LLP
500 Ala Moana Blvd., Ste. 7400
Honolulu, HI 96813
Tel: (415) 873-0123
Fax: (877) 890-0791
jesse@sm-llp.com

Adam K. Mortara*
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Thomas R. McCarthy*
Patrick N. Strawbridge*
J. Michael Connolly*
Cameron T. Norris*
R. Gabriel Anderson*
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
patrick@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com
ryan@consovoymccarthy.com

*pro hac vice

Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS, <br><br> *Defendant*. | Case No. 1:25-cv-450-MWJS-RT <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR EXPEDITED JURISDICTIONAL DISCOVERY** <br><br> Judge Micah W.J. Smith <br><br> Trial Date: None |

**TABLE OF CONTENTS**

Table of Authorities ................................................................................... ii

Introduction .................................................................................................1

Background ..................................................................................................2

Argument.....................................................................................................4

    I.  Kamehameha does not meet the test for early jurisdictional discovery...........5

        A.  Individual plaintiffs ...................................................................5

        B.  SFFA's members .......................................................................11

    II.  The Court should discretionarily deny early jurisdictional discovery. .........18

    III.At a minimum, this Court should impose reasonable parameters on early jurisdictional discovery..........................................................................23

Conclusion ................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*AFPF v. Bonta*,
594 U.S. 595 (2021) ..................................................................................................14

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997) ...................................................................................................22

*Bost v. Ill. Bd. of Elections*,
146 S.Ct. 513 (2026)..................................................................................................12

*Bras v. Cal. Pub. Utilities Comm'n*,
59 F.3d 869 (9th Cir. 1995) ......................................................................................11

*Breiner v. Nev. DOC*,
610 F.3d 1202 (9th Cir. 2010) ..................................................................................15

*DNH v. Gianforte*,
2025 WL 756742 (D. Mont. Jan. 10) .......................................................................13

*Doe v. Kamehameha Schs.*,
470 F.3d 827 (9th Cir. 2006) .............................................................. 6, 10, 18, 20

*Doe v. Kamehameha Schs.*,
596 F.3d 1036 (9th Cir. 2010) ............................................................... 12, 20

*Edwards v. Jewish Hosp. of St. Louis*,
855 F.2d 1345 (8th Cir. 1988) ...................................................................................8

*Grace v. T.G.I. Fridays, Inc.*,
2016 WL 952454 (D.N.J. Mar. 14) ...........................................................................16

*Gratz v. Bollinger*,
539 U.S. 244 (2003) ..................................................................................................11

*Hafner v. Grisham*,
2024 WL 2832916 (D.N.M. June 4).........................................................................13

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ..................................................................................................14

*Jones v. L.A. Cent. Plaza*,
74 F.4th 1053 (9th Cir. 2023)....................................................................................23

*Laub v. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) ................................................................ 18, 23

*LNS Enters. LLC v. Continental Motors*,
22 F.4th 852 (9th Cir. 2022)........................................................ 5, 6, 7, 10, 14, 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................23

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022)...................................................................... 5, 6, 9, 18

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014)........................................................................15
*NAACP v. Button*,
  371 U.S. 415 (1963) ........................................................................................14
*Nuziard v. Minority Bus. Dev. Agency*,
  721 F. Supp. 3d 431 (N.D. Tex. 2024)............................................................11
*Parents Involved v. Seattle*,
  551 U.S. 701 (2007) ........................................................................... 7, 8, 12
*Perttu v. Richards*,
  605 U.S. 460 (2025) ..........................................................................................9
*Planned Parenthood v. HHS*,
  946 F.3d 1100 (9th Cir. 2020) .........................................................................10
*Rd.-Con, Inc. v. Philadelphia*,
  120 F.4th 346 (3d Cir. 2024) ...........................................................................11
*Regents of Univ. of Cal. v. Bakke*,
  438 U.S. 265 (1978) ..........................................................................................8
*SFFA v. Harvard*,
  397 F. Supp. 3d 126 (D. Mass. 2019)..............................................................19
*SFFA v. Harvard*,
  600 U.S. 181 (2023) ....................................................... 8, 15, 17, 18
*SFFA v. Naval Acad.*,
  2024 WL 4057002 (D. Md. Sept. 5)........................................... 7, 8, 12
*SFFA v. UT Austin*,
  37 F.4th 1078 (5th Cir. 2022) ...................................................... 8, 9, 12
*Shea v. Kerry*,
  796 F.3d 42 (D.C. Cir. 2015)....................................................... 12, 13
*Tagupa v. Bd. of Dirs.*,
  633 F.2d 1309 (9th Cir. 1980) ...........................................................................7
*UAW v. Brock*,
  477 U.S. 274 (1986) .................................................................... 15, 16
*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021) ..........................................................................................7

**Rules**
Fed. R. Civ. P. 1 ...................................................................................................18
Fed. R. Civ. P. 26(d)(1)..........................................................................................5

iii

**INTRODUCTION**

Kamehameha claims that, under the Ninth Circuit's decision in *Doe I*, Congress created a special carveout from §1981 that lets this one school racially discriminate. Doc.32 at 4. Whether that carveout exists and whether it's constitutional are questions this Court will consider, if Kamehameha ever briefs the merits. But Kamehameha wants to delay that moment as long as possible, since each delay is another day it can keep the merits away from an appellate court with the power to set or overrule precedent, that the students suing it might get too old to seek injunctive relief, that its policies can be tweaked to look less "contract-y," and that the school can continue its policy of admitting only Native Hawaiians.

Even if Kamehameha has a special carveout from §1981, the school does not have a carveout from the rules that govern all litigants in federal court. The school already tried to get around the rule that defendants must file a single motion to dismiss. Doc.61. Only after this Court said Kamehameha must file a motion to dismiss on the merits did the school claim it needed early jurisdictional discovery. Doc.88 at 1. And, of course, that discovery must be briefed and completed *before* any motion to dismiss addressing the merits. Doc.92 at 1-2.

Plaintiffs, who represent families with only a few years left to apply to Kamehameha, object to these continuing delay tactics. If *Doe I* dictates the legality of Kamehameha's admissions policy, then Plaintiffs' complaint should be dismissed, and the case should go to an appellate court that has the power to give Plaintiffs

1

relief. If *Doe I* does not dictate the legality of Kamehameha's admissions policy, then this case should proceed to normal discovery—where Kamehameha can ask all the same questions about standing and the parties can take discovery on the merits too. Kamehameha's insistence on taking jurisdictional discovery now serves no purpose other than prejudicing Plaintiffs and causing delay. Kamehameha's plan to have this Court make early factual findings on standing won't work, since courts lack that power when standing and the merits are intertwined. And it will be highly inefficient, since the parties will either need substantial time to discover all jurisdictional questions or will need another round of early discovery once Kamehameha actually makes all its jurisdictional arguments in a motion to dismiss.

Kamehameha doesn't meet the standard for early jurisdictional discovery. Most of its "standing" arguments go to the merits, not jurisdiction, and turn on records the school already has. And its metaphysical doubts about the sincerity of SFFA's members are based only on a hunch—suspicions that Kamehameha can explore in normal, non-expedited discovery. This Court should deny Kamehameha's motion and order this important civil-rights dispute to begin.

## BACKGROUND

Kamehameha is the last school in America with a formal policy of racial segregation. The school admits to giving a "preference" to "applicants of Hawaiian ancestry." 2d-Am.-Compl. (Doc.78) ¶28. More than a "preference," Kamehameha ren-

2

ders applications from non-Hawaiians futile. ¶¶30-35. Kamehameha admits *zero* students who lack Hawaiian ancestry. ¶1, ¶31, ¶¶33-34. Kamehameha admits non-Hawaiians only if seats remain after it has admitted every qualified Hawaiian. ¶30. And Kamehameha adjusts its admissions process, like dropping test-score requirements (and now tuition), to ensure the number of qualified Hawaiian applicants always exceeds the number of seats. ¶¶31-32; Doc.93 at 1.

Plaintiffs are currently B.P., I.P., and SFFA. I.P. applied to Kamehameha and was denied admission in 2023. 2d-Am.-Compl. ¶¶79-87; B.P. Decl. (Doc.54-4) ¶7. She seeks damages for that past harm. 2d-Am.-Compl. ¶88. Her mother, B.P., likewise seeks damages because Kamehameha made her sign a contract but then denied her the benefits based on race. ¶88. SFFA is a membership association whose broad "purpose" includes defending "the right to be free from illegal racial discrimination." ¶7. It seeks prospective relief on behalf of its members, including Families A and B. 2d-Am.-Compl. 47-48. These families are able and ready to apply to Kamehameha once a court enters adequate relief. ¶¶63-65, ¶¶69-71. As detailed in the complaint, these families live in Hawaii; their children attend school there; they want to apply to Kamehameha for specific reasons; and they would apply if the school stopped discriminating. ¶¶60-71. SFFA also seeks nominal damages for its members, including I.P. and B.P. 2d-Am.-Compl.48.

Plaintiffs recently moved to amend to add E.S. and her mother, K.S., as individual plaintiffs and standing members of SFFA. E.S. twice applied to Kamehameha, first in 2021 and again in 2023. 3d-Am.-Compl. (Doc.104-2) ¶94, ¶96. She is able and ready to reapply if Kamehameha stops discriminating. ¶103. K.S. and E.S. seek damages for past harm, as well as forward-looking relief. ¶104.

Kamehameha now seeks leave to take early jurisdictional discovery, before conducting any conferences or filing its main motion to dismiss. Kamehameha proposes a two-stage discovery period. In the first, Kamehameha would depose B.P., I.P., "the members" of Family A, and "the father" of Family B, plus make document requests. Doc.103 at 2. Though Kamehameha calls this phase "limited," the school contemplates five depositions (including of two high-schoolers) and 29 RFPs. Doc.92-3. In the second stage, Kamehameha would conduct "third party discovery" into standing. Doc.103 at 2. Kamehameha has not fully explained what this third-party discovery would seek or why, who would receive it, what form it would take, or how many requests would be made.

## ARGUMENT

Kamehameha does not meet the standard for expedited jurisdictional discovery. This Court could also deny early discovery as a matter of discretion. It should at least impose reasonable parameters on that discovery's scope, length, and speed.

4

**I.    Kamehameha does not meet the test for early jurisdictional discovery.**

Discovery normally covers both jurisdiction and the merits, and it normally starts only after the defendant responds to the complaint, the parties have their Rule 16 and 26(f) conferences, and initial disclosures are exchanged. *See* Fed. R. Civ. P. 26(d)(1). Kamehameha can get leave to take early jurisdictional discovery only if it overcomes three distinct hurdles. Kamehameha must have more than a "hunch" that early "discovery might yield" important facts. *LNS Enters. LLC v. Continental Motors*, 22 F.4th 852, 864-65 (9th Cir. 2022). Those facts must be "relevant" to "jurisdiction." *Id.* at 864. And the contemplated findings on jurisdiction cannot be "intertwined" with "the merits." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022). Kamehameha cannot clear these hurdles, either for the individual plaintiffs or SFFA's standing members.

**A.    Individual plaintiffs**

With respect to I.P. and B.P., who seek only damages, Kamehameha presents virtually no case for early jurisdictional discovery. It says *Plaintiffs* might need discovery into I.P.'s qualifications to prove that Kamehameha racially discriminated against her. Mot. (Doc.103-1) 22-23. And it says Kamehameha needs discovery to test whether I.P., despite going through the rigorous process of applying, really would have attended Kamehameha. Mot.22. Neither topic meets any requirement for early jurisdictional discovery.

*Qualifications*: Introducing only a short declaration describing its admissions process, Kamehameha says it uses race only against a top-ranked subset of applicants it deems "qualified." Park-Decl. (Doc.103-2) ¶5. Kamehameha introduces no evidence that I.P. was not deemed qualified when she applied in 2022, or any evidence about I.P. at all. This theory fails all three limits on early discovery.

**1.** Any supposed need for early discovery into how Kamehameha treated I.P. is based on nothing more than a "hunch." *LNS*, 22 F.4th at 864-65. The *school* does not need early discovery on whether it used race against I.P.; it already has all the evidence on how it treated I.P. Though it speculates what discovery *Plaintiffs* "will presumably" want, Mot.23, Plaintiffs have not moved for early jurisdictional discovery. Their complaint alleges that I.P. made the waitlist, which means Kamehameha deemed her qualified. 2d-Am.-Compl. ¶35, ¶84; *see Doe v. Kamehameha Schs.* (*Doe I*), 470 F.3d 827, 834 (9th Cir. 2006) (en banc). Kamehameha has not contradicted that allegation with evidence. If its motion to dismiss never does, then Plaintiffs' allegation will be accepted as true, and they won't need jurisdictional discovery. *Mecinas*, 30 F.4th at 895-96. If Kamehameha does submit contrary evidence, then Plaintiffs will decide at that time whether to seek jurisdictional discovery. But Kamehameha can't "substantiat[e]" its need for jurisdictional discovery now by guessing that Plaintiffs might want it later. *LNS*, 22 F.4th at 857.

**2.** One reason why Plaintiffs might not seek jurisdictional discovery later—and why Kamehameha cannot get it now—is that Kamehameha's argument, even if true, is not "relevant" to standing. *Id.* at 864. All agree that Kamehameha uses race in admissions to benefit Native Hawaiians; that I.P. is not Native Hawaiian; and that Kamehameha rejected her application. She thus has standing because Kamehameha denied her an equal "*opportunity to compete*" for admission, *Ne. Fla. Ch., AGCA v. Jacksonville*, 508 U.S. 656, 666 (1993), a "completed" injury that "damages" would "redress," *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021).

I.P. has standing regardless of whether Kamehameha applied its racial preference to her specific application. Because one injury is being forced "to compete in a race-based system," *Parents Involved v. Seattle Sch. Dist. 1*, 551 U.S. 701, 719 (2007), it does not matter whether an applicant "would have obtained" admission "but for" race, *Jacksonville*, 508 U.S. at 666. It's enough that Kamehameha "considers race in its admissions process"; "that consideration's specific impact on [I.P.] is not material to … standing." *SFFA v. Naval Acad.*, 2024 WL 4057002, at *6 (D. Md. Sept. 5). Whether a defendant had a race-neutral reason for denying the benefit goes only to the merits. *Tagupa v. Bd. of Dirs.*, 633 F.2d 1309, 1311-12 (9th Cir. 1980). If I.P. would have been denied admission even if she were Native Hawaiian, then her actual damages might be zero; but her §1981 rights were still violated, entitling her to at least nominal damages. *Regents of Univ. of Cal. v. Bakke*, 438 U.S.

265, 281 n.14 (1978); *Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1348-52 (8th Cir. 1988). And even if she were not deemed "qualified" in 2022, I.P.'s rights were still violated by Kamehameha's "decision not to permit [her] to compete for all … places in the class." *Bakke*, 438 U.S. at 281 n.14. Plaintiffs also challenge Kamehameha's decision to use race in a system that artificially caps the number of seats, a system that injures non-Hawaiian applicants like I.P. by making it harder to be qualified and impossible to be admitted. *E.g.*, 2d-Am.-Compl. ¶1, ¶52, ¶97.

Contra Kamehameha, Mot.16, other schools have tried this same standing argument and lost. In *Parents Involved*, Seattle said it used race only as a "tiebreaker" and whether the tiebreaker would actually "affec[t]" any member of the plaintiff-association was "speculative." 551 U.S. at 718. That objection was deemed irrelevant, since participation in "a race-based *system* that *may* prejudice the plaintiff" is an injury. *Id.* at 719 (emphases added). The Naval Academy argued that SFFA's members lacked standing because their "medical and academic qualifications" were not good enough for admission, meaning the academy would not apply its racial preference to them. The court deemed that argument "not material to the issue of standing." 2024 WL 4057002, at *6. The Fifth Circuit likewise disagreed that SFFA lacked standing to challenge UT's "holistic" use of race, which did "not '*automatically* place white applicants on unequal footing.'" *SFFA v. UT Austin*, 37 F.4th 1078, 1085 (5th Cir. 2022); *see also SFFA v. Harvard*, 600 U.S. 181, 399-401 (2023)

8

(Jackson, J., dissenting) (making similar point about UNC). Under the governing caselaw, that argument was "specious." *UT Austin*, 37 F.4th at 1085-86.

**3.** Even if supported and relevant, Kamehameha's "traceability" objection cannot be resolved by this Court after jurisdictional discovery because it's intertwined with the merits. I.P. has demanded a jury (and Kamehameha might demand one too), so the Seventh Amendment forbids this Court from resolving "a factual dispute" about "subject matter jurisdiction" that is "intertwined with the merits." *Perttu v. Richards*, 605 U.S. 460, 472 (2025). Courts follow the same rule in non-jury cases, stressing that "'where the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.'" *Mecinas*, 30 F.4th at 896. More than intertwined, Kamehameha's traceability objection goes to the heart of the case: how Kamehameha uses race in admissions and whether it racially discriminated against I.P. This Court has no power to resolve these issues on a pre-merits, factual challenge to jurisdiction under Rule 12(b)(1). Early jurisdictional discovery is thus inappropriate. *Id.*

***Intent***: Kamehameha also says it wants early jurisdictional discovery into I.P.'s "purported desire to attend KS and her ability, had she been admitted, to do

9

so." Mot.22. By "ability," Kamehameha presumably means her ability to pay whatever tuition Kamehameha would have charged her. Whatever it means, this theory does not come remotely close to justifying early jurisdictional discovery.

**1.** Saying this theory is based on a "hunch" is unfair to hunches. *LNS*, 22 F.4th at 864-65. As Kamehameha knows, I.P. *applied* to Kamehameha in 2022. Mot.5. That process isn't easy, requiring testing, an interview, rigorous documentation, and more. Mot.13-14. No family would go through it if they were not "genuinely interested" in attending. *Cf.* Mot.22. While Kamehameha relies heavily on *Carney v. Adams*, the standing-based discovery in that case occurred in the normal course, after the defendant responded to the complaint. *See* Docs.13, 19, No. 1:17-cv-00181 (D. Del. Apr. 24, 2017). And *Carney* stressed that a plaintiff who "applied in the past" does have standing. 592 U.S. 53, 65-66 (2020). As for tuition, Kamehameha has long stressed that most admitted students pay very little. *E.g.*, *Doe I*, 470 F.3d at 832. And families don't go through the trouble of applying to schools they can't afford.

**2.** Nor is I.P.'s intent to "attend" Kamehameha, had the school not rejected her, relevant to standing. Mot.22. I.P. has standing because she was denied an equal opportunity "to be *considered*" for admission. *Jacksonville*, 508 U.S. at 666. That "injury" became "actual" as soon as I.P. "[e]nter[ed]" her application and became subject to Kamehameha's race-based process. *Planned Parenthood v. HHS*, 946 F.3d 1100, 1108 (9th Cir. 2020); *accord Bras v. Cal. Pub. Utilities Comm'n*, 59 F.3d

869, 873 (9th Cir. 1995); *Rd.-Con v. Philadelphia*, 120 F.4th 346, 358 (3d Cir. 2024).

Kamehameha's only authority, *Carney*, agrees that intent "to apply," not intent to

accept, is the relevant showing for standing. 592 U.S. at 60; *accord Nuziard v.*

*MBDA*, 721 F. Supp. 3d 431, 461-62 (N.D. Tex. 2024).

### B.    SFFA's members

With respect to SFFA, Kamehameha says it needs discovery on two topics. It

wants to test whether the children of Families A and B would be deemed "qualified"

enough to be subjected to its racial preference. And it wants to test the sincerity of

these families' intent to apply, should a court order it to stop discriminating. Neither

topic meets the standard for early discovery.

*Qualifications*: As with I.P., Kamehameha's theory that SFFA's members are

not "qualified" enough for Kamehameha to use race against them is not relevant to

standing and is intertwined with the merits. *See supra* I.A. If anything, this theory is

weaker for SFFA's members. According to Kamehameha's declarant, the school

first tests and interviews all applicants, then ordinally ranks them, then deems the

top subset "qualified." *See* Park-Decl. ¶5. But the children of Families A-B have not

yet applied to Kamehameha, and they would apply only in a world where Kame-

hameha "cease[s] to use race." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). Dis-

covery into how Kamehameha might rank these children against a future or hypo-

thetical pool of applicants that's never existed would be pointless speculation. Hence

why the law asks only whether Kamehameha's "race-based system … *may* prejudice" them. *Parents Involved*, 551 U.S. at 719 (emphasis added). This Court should reject Kamehameha's attempt to "make standing law more complicated than it needs to be." *Bost v. Ill. Bd. of Elections*, 146 S. Ct. 513, 523 (2026).

Kamehameha cannot make this discovery relevant by claiming it goes to whether SFFA's members are "'able and ready' to apply." *Cf.* Mot.11. "Ready" just means the plaintiff has the intent to apply once a court orders relief. *See Carney*, 592 U.S. at 60. And "able" just means the plaintiff satisfies the minimum objective qualifications for applying, other than race. *See Shea v. Kerry*, 796 F.3d 42, 50 (D.C. Cir. 2015). Kamehameha has no minimum requirements for grades, test scores, extracurriculars, interviews, and the like. *See* 2d-Am.-Compl. ¶20, ¶32, ¶68; *Doe v. Kamehameha Schs.* (*Doe II*), 596 F.3d 1036, 1039 (9th Cir. 2010).

Because the injury is the inability to equally compete, not the inability to get admitted, *see Jacksonville*, 508 U.S. at 666; *Parents Involved*, 551 U.S. at 718, Kamehameha's planned discovery into the *quality* of these members' applications is not relevant to standing, *Jacksonville*, 508 U.S. at 666; *UT Austin*, 37 F.4th at 1085-86; *Naval Acad.*, 2024 WL 4057002, at *4-8. Getting into Harvard is hard too—so hard that many applicants are so uncompetitive that race plays no meaningful role in the consideration of their applications. *See* Harvard-Br., 2022 WL 2987146, at *15-16 (U.S.). Yet no court ever cared whether SFFA's members were "competitive

12

for admission" to Harvard. *Cf.* Mot.14. Unlike objective requirements like residency, *cf. Hafner v. Grisham*, 2024 WL 2832916, at *3 (D.N.M. June 4); *DNH v. Gianforte*, 2025 WL 756742, at *6 (D. Mont. Jan. 10), courts "do not inquire" into the plaintiff's subjective "qualifications (or lack thereof) when assessing standing" to challenge racial preferences, *Shea*, 796 F.3d at 50.

*Intent*: Finally, Kamehameha wants early jurisdictional discovery to test whether Families A and B are sincere about their interest in applying to Kamehameha if a court made that school become race neutral. Of course, defendants question virtually every complaint; but if those doubts were enough, then early discovery would be the norm whenever allegations turn on the plaintiff's intent. But as Kamehameha knows, defendants in admissions cases typically explore intent in normal discovery, *after* responding to the complaint. Kamehameha says SFFA's complaints in other cases contained more allegations about standing. Mot.14 n.9. But none of those cases challenged a policy that *outright bans* students of certain races, as Kamehameha's does. And if Plaintiffs' standing allegations are "facially" deficient, Mot.12, then Kamehameha can challenge them in a regular, pre-discovery motion to dismiss. But in terms of getting *early* jurisdictional discovery, Kamehameha's suspicions do not satisfy any of the requirements.

**1.** Kamehameha's argument for early jurisdictional discovery into intent—that SFFA is lying and its members really have no real interest in applying to this

13

prestigious school, even in a world where a court made it desegregate—is only a "hunch," if not an outright conspiracy theory. *LNS*, 22 F.4th at 864-65. The "red flags" Kamehameha says warrants early discovery, Mot.12, are neither flags nor red.

It's not suspicious that Families A and B are currently anonymous. *Cf.* Mot.13. Associational privacy is a constitutional right. *AFPF v. Bonta*, 594 U.S. 595, 606 (2021); *NAACP v. Button*, 371 U.S. 415, 431 (1963). SFFA's members were anonymous when it sued Harvard, UNC, and the Naval Academy too. Like those schools, Kamehameha will get these families' identities once there's a protective order. Blum-Decl. (Doc.54-5) ¶4. Its refusal to agree to a protective order because it wants to freely disclose the families' names to others, *see* Mot.13, is only its fault. Early jurisdictional discovery wouldn't solve that problem anyway, unless Kamehameha proves that jurisdictional discovery should proceed without a protective order shielding the identities and confidential records of these children. *No* court in *any* SFFA case has allowed that—and those cases didn't involve young children or a massive record of death threats, like this one does. Blum-Decl. ¶5, ¶¶13-23.

It also doesn't matter what steps SFFA's members have taken to apply to Kamehameha. *Cf.* Mot.15-16. The school says early jurisdictional discovery was not taken in "other SFFA cases" because, unlike Families A and B, the members in those cases "had previously applied." Mot.14 n.9. That distinction should defeat this motion, since SFFA needs only one member with standing, *Hunt v. Wash. State Apple*

14

*Advert. Comm'n*, 432 U.S. 333, 342 (1977), and both I.P. and E.S. have previously "applied" to Kamehameha, 3d-Am.-Compl. ¶10, ¶12. But even if the intent of Families A and B were somehow key, this case is different from SFFA's "other admissions cases" because Kamehameha does not use race as one factor. Mot.14 n.9. It *bars* students who aren't Native Hawaiian. 2d-Am.-Compl. ¶¶28-34. A plaintiff whose application would be futile because of race has standing to challenge that barrier, regardless of whether he applied. *Carney*, 592 U.S. at 66; *Breiner v. Nev. DOC*, 610 F.3d 1202, 1206 (9th Cir. 2010). And because his application would be futile, his "sincerity" is not undermined if he does not take equally "futile" preparations to apply. *Mendoza v. Perez*, 754 F.3d 1002, 1014 n.6 (D.C. Cir. 2014); *cf. Carney*, 592 U.S. at 66 (faulting plaintiff for failing to apply "when he was eligible"). Kamehameha cannot get early discovery into the steps that Families A and B didn't take to apply—facts that are largely conceded in the complaint anyway.

Equally unpersuasive is Kamehameha's repeated refrain that SFFA's members are "recruited." Mot.17. Kamehameha cannot claim that, if Families A-B are sincerely interested in applying to this prestigious school, then they lack standing because they joined SFFA, support this lawsuit, or share SFFA's goal of bringing down racial segregation. Those facts are *prerequisites* to associational standing. *Harvard*, 600 U.S. at 199; *accord UAW v. Brock*, 477 U.S. 274, 290 (1986) ("associational standing recognizes that the primary reason people join an organization is

15

often to create an effective vehicle for vindicating interests that they share with others"). True, associations have the resources, expertise, and motivation to bring lawsuits that individuals wouldn't bring "organically," Mot.17; but that's considered an "advantag[e]" of the doctrine, not a source of suspicion. *UAW*, 477 U.S. at 289-90. If an association or lawyer convinces a victim to assert her rights, that person is no less a victim—just ask Homer Plessy and Oliver Brown (recruited to challenge separate-but-equal), John Lawrence and James Obergefell (recruited to overrule *Bowers v. Hardwick* and legalize same-sex marriage), and virtually every member of every voting-rights group that challenged a racial gerrymander.[1]

Kamehameha has no basis to say that SFFA's members were "recruited" in the relevant sense—meaning, like the plaintiff in *Carney*, they have no sincere interest in applying to a desegregated Kamehameha. While Kamehameha obsesses over SFFA's website, it never quotes it. The website asks parents to contact SFFA "[i]f your child has been denied admission to Kamehameha" or "[i]f you are interested in having your child apply to Kamehameha but effectively cannot because it discriminates against non-native Hawaiians." *KamehamehaNotFair*, perma.cc/

---

[1] *Grace v. T.G.I. Fridays* does not suggest otherwise. There, the plaintiff's asserted injury was that he "did not know the price" of a beverage when he bought it. 2016 WL 952454, at *4 (D.N.J. Mar. 14). But if "Plaintiff retained counsel prior to" buying it, then he *did* know its price and thus suffered no "injury." *Id.* No similar reasoning applies to the victims of racial discrimination—who, like Homer Plessy and Oliver Brown, are excluded based on race and join forces with lawyers and civil-rights groups to remedy that injury.

16

VV88-P7FV (archived Mar. 26, 2026). Even assuming Plaintiffs' families ever saw it, the website seeks information from parents who are injured, not parents with purely ideological grievances. SFFA launched similar websites before suing Harvard and UNC, Blum-Decl. ¶11, and the Supreme Court unanimously agreed that SFFA was a "'genuine'" association with real standing, *Harvard*, 600 U.S. at 198-99.

For all its talk of SFFA being an organization that recruits fake plaintiffs, Kamehameha ignores that "every court" has upheld SFFA's standing in every case it has ever filed. *Id.* Harvard, UNC, the Naval Academy and other schools deposed more than 36 standing members of SFFA, Blum-Decl. ¶4, and none was ever rejected as insincere. Kamehameha's guess that the members here "may crumble" in a deposition, Mot.16, is the quintessential "hunch" that must be explored in normal, non-expedited discovery, *LNS*, 22 F.4th at 864-65. Nor does Kamehameha even pretend that SFFA "recruited" I.P. or E.S., who applied to Kamehameha long before SFFA ever said a word about the school. *See* Mot.17.

**2.** Even if substantiated and relevant to standing, early jurisdictional discovery into the intentions of SFFA's members would be fruitless because these topics are intertwined with the merits. This Court cannot make findings about these families' sincerity based on their failure to apply in the past (or their preparations to apply in the future) without also resolving whether their applications would be "'futile.'" *Carney*, 592 U.S. at 66. Kamehameha likely contests futility. *See* Mot.15 (insisting

17

Families A-B "ha[d] the opportunity to" apply). And the school agrees that early jurisdictional discovery should be bilateral, meaning both Kamehameha and Plaintiffs can take discovery on these topics. Mot.6. But futility turns on how Kamehameha's racial preference works, including whether that preference is an absolute bar on non-Hawaiians and how Kamehameha changed it after *Doe I* (including its recent elimination of tuition, which will increase applications and thus make it more impossible for seats to be left open for non-Hawaiians). Those questions go directly to whether Kamehameha's use of race violates §1981, both under strict scrutiny and *Doe I*'s affirmative-action approach. *See Harvard*, 600 U.S. at 218-19; *Doe I*, 470 F.3d at 844-46. So this Court cannot resolve them on a Rule 12(b)(1) factual attack. *Mecinas*, 30 F.4th at 896.

## II.    The Court should discretionarily deny early jurisdictional discovery.

The question is not whether to allow jurisdictional discovery, but whether to allow that discovery earlier than normal, before the Court decides Kamehameha's principal motion to dismiss. Whether to expedite discovery is inherently discretionary. *Laub v. DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003). This Court can and should use its discretion here to defer discovery until after Kamehameha moves to dismiss.

Early jurisdictional discovery will not promote the "speedy" and "inexpensive" resolution of this case. Fed. R. Civ. P. 1. As explained, this Court won't be able to resolve standing under a Rule 12(b)(1) factual attack, since these topics are intertwined with the merits. *Mecinas*, 30 F.4th at 896. Even if it weren't likely to

succeed, early jurisdictional discovery will hardly be "expedited." Mot.2. Kame-hameha is not asking this Court to allow only *its* discovery; it agrees (and even asks the Court) to let Plaintiffs explore these standing questions with early discovery of their own. *See* Doc.92 at 3; Doc.103 at 2; Mot.6, 23. Consider how discovery might go on each topic.

To rebut the argument that Plaintiffs are not "qualified" enough for Kame-hameha to use race against them, Mot.22-23, Plaintiffs would need to test the truth of Kamehameha's assertion that it does not consider race when deciding whether applicants are "qualified." Park-Decl. ¶5. If that process is tainted by race, then Plaintiffs suffered discrimination, no matter whether Kamehameha did or would deem them "qualified." The school's assertion of race neutrality is facially implau-sible, since the qualification process involves subjective criteria like "interviews" and assessing teacher "recommendations," Mot.14, and Kamehameha's admissions officers know that non-Hawaiians cannot be admitted on the back end anyway. Dis-covery on this topic will require depositions and documents on how each part of the qualification process is scored, whether race is used, and what guarantees exist that race is not used; a copy of the "composite scores" that Kamehameha assigned to past applicants, broken down by race; and expert analysis on whether the relationship between those scores and the applicant's race is statistically significant. *See, e.g.*, *SFFA v. Harvard*, 397 F. Supp. 3d 126, 158-75 (D. Mass. 2019). Kamehameha will

also need to explain what composite score it would assign these children, if they had applied in various years. And Plaintiffs will have the right to challenge that score, including by comparing it to how Kamehameha scored Native Hawaiian applicants with similar qualifications.

To rebut Kamehameha's argument that Families A and B are not "ready" to apply, Mot.13-19, Plaintiffs will seek discovery into whether Kamehameha's racial preference makes their applications "'futile.'" *Carney*, 592 U.S. at 66. That discovery will require documents and depositions about whether Kamehameha would ever admit a non-Hawaiian applicant. Plaintiffs would explore the total number of applications Kamehameha receives each year from Native Hawaiians and non-Hawaiians, the relative qualifications of each group, how Kamehameha talks about and treats the applications of non-Hawaiians, and whether the school admitted any non-Hawaiians. Discovery would also test Kamehameha's defense that it admitted "[o]ne" non-Hawaiian in 2002, *Doe I*, 470 F.3d at 844 n.10, or whether (as many believe) it made a strategic move to ward off a lawsuit, *e.g.*, Liptak, *School Set Aside for Hawaiians Ends Exclusion to Cries of Protest*, NYT (July 27, 2022). Plaintiffs would also explore how Kamehameha has "amend[ed]" its admissions process in the last 20 years to make it even harder for non-Hawaiians to get admitted. *Doe II*, 596 F.3d at 1039.

20

And if the parties are doing "third-party discovery" on standing, Mot.19, then Plaintiffs want to explore whether objective third parties think applying to Kamehameha is futile for non-Hawaiians.[2]

In short, jurisdictional discovery would quickly become discovery into how Kamehameha uses race in admissions—essentially full-blown merits discovery in an admissions case. Similar discovery took 11 months in *Harvard*, 16 months in *UNC*, 6 months in *Naval Academy*, and a scheduled 14 months in *UCLA*. *See* Doc.35, *Harvard*, No. 1:14-cv-14176 (D. Mass. May 4, 2015); Doc.72, *UNC*, No. 1:14-cv-954 (M.D.N.C. Aug. 1, 2016); Doc.61, *Naval Acad.*, No. 1:23-cv-02699 (D. Md. Dec. 20, 2023); Doc.61, *DNH v. UCLA*, No. 2:25-cv-04131 (C.D. Cal. Oct. 28, 2025). If Kamehameha wants to do full discovery now, it could just answer the complaint. But it cannot pretend that its current plan would be "expedited," at least without causing severe prejudice to Plaintiffs or inviting this Court to err by making rushed findings on an incomplete record.

And to what end? Kamehameha's plan only possibly promotes efficiency if it could lead to the dismissal of the whole case for lack of standing. Otherwise Kame-

---

[2] Plaintiffs would also test Kamehameha's assertion that, if I.P. had been admitted, she might not attend because her family wouldn't pay tuition. Mot.22. Plaintiffs would at least seek discovery into what the tuition would have been for I.P., whether Kamehameha would have awarded her financial aid, and whether Kamehameha considers race when deciding these amounts or awarding scholarships.

hameha should just file its motion to dismiss, leaving all jurisdiction and merits discovery for whatever plaintiffs and claims survive that motion. And yet Kamehameha's discovery is highly unlikely to result in total dismissal. B.P. and I.P. seek damages for I.P.'s past rejection. That they lack standing even for *nominal* damages is absurd. This case will also soon include E.S., who twice applied to Kamehameha and would like to apply again. She is also a member of SFFA, and she raises none of Kamehameha's "red flags." Mot.12. It is highly unlikely that Kamehameha will prove *all* these individuals are unqualified and insincere, meaning early discovery will only delay, rather than avoid, a decision on the merits.

In a similar vein, the jurisdictional arguments in Kamehameha's current motion are not the only "factual" attacks on jurisdiction that the school might raise. For example, Kamehameha enlisted a state court to let it stop charging tuition—a strategy designed to defeat Plaintiffs' forward-looking relief by making the school's admissions look less like a contract under §1981. *See Kamehameha Schools Changes Its Tuition Policy to Protect Trust Against Lawsuit*, Island News (updated Jan. 29, 2026), perma.cc/U5JT-DMUU. Kamehameha has not yet argued that this maneuver moots anything. *Cf. Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.23 (1997) (stressing counsel's ethical duty "to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness"). If it raises this factual attack in a motion to dismiss, Plaintiffs reserve the right to seek jurisdictional discovery

22

into the change—including the motivations behind it and the other contracts that Kamehameha still uses. From an efficiency perspective, it makes little sense to authorize *some* jurisdictional discovery now, only for new jurisdictional arguments (and new potential requests for early jurisdictional discovery) to emerge after Kamehameha files its motion to dismiss.

Denying jurisdictional discovery and resolving Kamehameha's motion to dismiss on the face of the complaint alone would not be an "advisory opinion." Mot.3. Plaintiffs need only establish jurisdiction "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, "[a]t the pleading stage," the Court can rely on "general factual allegations of injury." *Id.* Otherwise, early jurisdictional discovery would be compulsory in every contested case, not within the "broad discretion" of the Court. *Laub*, 342 F.3d at 1093. If Plaintiffs' complaint plausibly alleges standing on its face, then the Court has jurisdiction to let the case proceed to discovery—after which it can consider standing again at summary judgment. *See Jones v. L.A. Cent. Plaza*, 74 F.4th 1053, 1058 (9th Cir. 2023).

III. **At a minimum, this Court should impose reasonable parameters on early jurisdictional discovery.**

If the Court allows early jurisdictional discovery, it should exercise its "discretion" to impose reasonable limits. *Laub*, 342 F.3d at 1093. To be clear, Plaintiffs think Kamehameha is not entitled to early discovery, don't see how the Court could

use that discovery to make jurisdictional findings that aren't intertwined with the merits, and are extremely concerned that this process will derail the case and prejudice their rights. Plaintiffs thus reserve the right to file a motion for preliminary injunction. But if early jurisdictional discovery is going to occur, Plaintiffs suggest the following limits to minimize overall delay without sacrificing truth-seeking.

**1.** If early jurisdictional discovery is going to occur, this Court should order six months of expedited, bilateral discovery on all questions of Article III jurisdiction. That discovery should cover all jurisdictional disputes, not just the ones identified in Kamehameha's motion. And both parties should get to make any requests they deem appropriate. Because the parties will inevitably disagree about the scope of each other's discovery, this Court should create a mechanism to resolve the parties' discovery disputes quickly. And the Court should not rule (or imply) that Kamehameha's current requests are appropriate. If those requests are served in their current form, Plaintiffs have many objections based on relevance, proportionality, privilege, and other rules. This Court should not resolve those objections until Plaintiffs make them, the parties narrow them through meet-and-confers, and the Court gets fuller (though expedited) argumentation.

**2.** Alternatively, this Court should grant one month of jurisdictional discovery, limited to whether SFFA has a member who is able and ready to apply to Kamehameha if a court ordered it to stop considering race—in other words, Plaintiffs'

24

standing to seek forward-looking relief. That topic is at least relevant to standing (though, again, Plaintiffs don't think the school satisfies the test for taking *early* discovery on it). Other schools, like Harvard, UNC, and the Naval Academy, have explored that topic through short depositions. Proportional discovery here would be limited to three depositions, of no more than three hours each, of SFFA's relevant parent members (K.S., a parent of Family A, and a parent of Family B). That discovery should not entail document requests, which Kamehameha admits are unlikely to "yield" much. Mot.21. It should not entail "third-party discovery," Mot.21, which is unheard of in admissions cases and highly disproportionate on questions of subjective intent. And it should not entail depositions of these parents' children, Mot.6, who are young people still in grade school and whose parents were responsible for their education at the relevant times.

## CONCLUSION

Kamehameha's motion should be denied.

25

Dated: March 26, 2026         Respectfully submitted,

/s/ *Jesse D. Franklin-Murdock*       Thomas R. McCarthy*
Jesse D. Franklin-Murdock (10778)    Patrick N. Strawbridge*
SWEIGART MURDOCK, LLP           J. Michael Connolly*
500 Ala Moana Blvd., Ste. 7400      Cameron T. Norris*
Honolulu, HI 96813               R. Gabriel Anderson*
Tel: (415) 873-0123              Ryan M. Proctor*
Fax: (877) 890-0791             CONSOVOY MCCARTHY PLLC
jesse@sm-llp.com                 1600 Wilson Boulevard, Suite 700
                                  Arlington, VA 22209
Adam K. Mortara*               (703) 243-9423
LAWFAIR LLC                  tom@consovoymccarthy.com
40 Burton Hills Blvd., Ste. 200      patrick@consovoymccarthy.com
Nashville, TN 37215             mike@consovoymccarthy.com
(773) 750-7154                   cam@consovoymccarthy.com
mortara@lawfairllc.com           gabe@consovoymccarthy.com
                                  ryan@consovoymccarthy.com

*pro hac vice*

*Counsel for Plaintiffs*

26