IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS; I.P., B.P., E.S., by and through her next of friend and mother, K.S.; and K.S.<br><br>Plaintiffs,<br><br>vs.<br><br>TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP d/b/a KAMEHAMEHA SCHOOLS,<br><br>Defendant. | CIVIL NO. 1:25-cv-00450-MWJS-RT<br><br>DECLARATION OF HEATHER KK PARK<br><br>Judge: Honorable Micah W. J. Smith<br><br>Trial Date: None |

**DECLARATION OF HEATHER KK PARK**

I, Heather KK Park, under penalty of perjury declare as follows:

1. I make this declaration on the basis of personal knowledge and in my capacity as Director of Campus and Community Education Program Support for Kamehameha Schools. I am authorized and competent to make this declaration. If called as a witness, I could and would testify competently thereto under oath.

2. I have been in my current role as Director of Campus & Community Education Program Support for Kamehameha Schools since July 14, 2019. I have been employed by Kamehameha Schools since February 14, 2005.

3. As the Director of Campus & Community Education Program Support for Kamehameha Schools, I oversee the admissions department ("Admissions") for all of Kamehameha Schools' Kindergarten - 12th Grade campus programs.

4. I make this declaration to supplement my March 12 and July 15, 2026 declarations in support of Kamehameha Schools' Motion to Dismiss.

5. Hoʻoulu Verification Services ("HVS") is the department responsible for verifying applicants' demographic information, including ancestry, age, custodial and orphan status. I do not oversee HVS, which is procedurally and operationally separate from Admissions and has separate personnel and computer systems. This separation is critical to the integrity of the admissions process, and Kamehameha Schools takes significant measures to ensure that Admissions personnel, including teacher and faculty raters, testing proctors, and interviewers do not have access to HVS' ancestry-related documents and information. It is not until the end of the admissions process, when applicants are already ranked by Admissions based on their composite score, that Admissions personnel receive data from HVS that would allow us to identify non-Hawaiian applicants and apply a preference.

6. Importantly, applicants who self-declare with HVS as non-Native Hawaiian still progress through the separate admissions process. Ancestry status is only handed over to Admissions and the preference policy potentially applied as the

***final*** step of the process—after Kamehameha Schools decides an applicant could be invited based on their composite score and the number of available seats. As explained in my July 15 declaration, the preference policy was not applied to I.P. or E.S. because neither reached this final step of the admissions process based upon their composite scores and the number of seats available for the years they applied.

7. Kamehameha Schools provides students with a Hawaiian culture-based education, and the ʻOhana Questionnaire, interview questions, and all other parts of the admissions application packet reflect that educational purpose. While ***HVS*** asks about Native Hawaiian ancestry in its discrete HAR form, at no point during the separate admissions process do ***Admissions*** personnel ask any applicants if they are Native Hawaiian. In fact, all Admissions packet raters are trained to review applications based solely on merit and program fit, and to disregard self-disclosures of ancestry in scoring. Likewise, Admissions testing proctors and interviewers are trained to disregard an applicant's physical appearance. Because applicants to Kamehameha Schools come from a range of racial, ethnic, and cultural backgrounds, there is no way to visually identify Hawaiians and non-Native Hawaiians based on their appearance.

8. During I.P.'s interview [redacted], she was ***never*** asked about her ancestry. [redacted]

[redacted] I.P.'s interview, [redacted] was scored without regard to any ancestry information.

9. In addition to completing an interview, Grade 4 applicants are also expected to verify that their parents/legal guardians reside on the island of the campus to which they are applying from January of that admissions cycle through the time of invitation. This is an important clarification because Family B claims their daughter could apply to attend Grade 4 at KSK. In fact, Family B's daughter is ineligible for admission since the only parents/legal guardians alleged in the Fourth Amended Complaint admit they do not live on Oʻahu.

10. Following the Probate Court's February 12, 2026 order, Kamehameha Schools discontinued the use of all documents of a potentially contractual nature, including the: KS Tuition Contract; KS Access Agreement Acknowledge, Consent, and Authorization; Enrollment Contract/General Release; waivers and any other alleged contract with its students. There are no longer any fees associated with the application or enrollment process. A Kamehameha Schools education is provided to enrolled haumāna free of tuition, and Kamehameha Schools does not charge or collect any fees, including for meals, school materials and equipment, boarding, bus transportation, summer programs (including Kauluhala Summer Academy), clubs

and extracurricular activities, and dual credit programs (e.g., Associate of Arts degrees and career certifications). To be clear, enrolled haumāna are not asked to sign any contracts with Kamehameha Schools and pay no educational costs to Kamehameha Schools.

I declare under penalty of perjury that the foregoing is true and correct

DATED: Honolulu, Hawai‘i, August 31, 2026.

Heather KK Park