# EXHIBIT A

CARLSMITH BALL LLP
JOANNE LO GRIMES 6275
MELISSA H. LAMBERT 7767
SHAWN H. YAMADA 9589
1001 Bishop Street, Suite 2100
Honolulu, HI 96813-4212
Telephone: (808) 523-2500
Fax: (808) 523-0842
jgrimes@carlsmith.com
mlambert@carlsmith.com
syamada@carlsmith.com

CADES SCHUTTE
A Limited Liability Law Partnership
KELLY G. LAPORTE 6294
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
Telephone: (808) 521-9200
Fax: (808) 521-9210
klaporte@cades.com

Attorneys for the Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased

Electronically Filed
FIRST CIRCUIT
1EQ000002048
23-DEC-2025
09:30 PM
Dkt. 5670 PET

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAIʻI

| | |
|---|---|
| In the Matter of the Estate<br><br>of<br><br>BERNICE P. BISHOP,<br><br>Deceased. | EQUITY NO. 2048<br><br>**TRUSTEES' PETITION FOR APPROVAL OF PROPOSED CHANGES TO EDUCATIONAL SPENDING; EXHIBIT A** |

**TRUSTEES' PETITION FOR APPROVAL OF**
**PROPOSED CHANGES TO EDUCATIONAL SPENDING**

Petitioners CRYSTAL KAUILANI ROSE (Chair of the Board of Trustees), MICHELLE M. KAʻUHANE and ELLIOT KAWAIHOʻOLANA MILLS, as a majority of the current TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP, Deceased, in their fiduciary

capacities and not individually (the "***Trustees***" or "***Petitioners***"), by and through their counsel, Carlsmith Ball LLP and Cades Schutte LLP, respectfully petition this Honorable Court for approval of Petitioners' proposed change to the educational spending policy to permanently adopt a Complete Gift Approach, which entails moving from a heavily subsidized tuition model (recently at 97.7%) to a free of tuition model for its preschools and K-12 campuses ("***PreK-12***"), beginning with the School Year 2026-2027 ("***SY 2026-27***")[1] ("***Complete Gift Approach***"). The proposed policy change is as follows:

## I. <u>PROBATE RULE 126(C) STATEMENTS</u>

1. Petitioners are the duly appointed, qualified, and acting Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased (the "***Trust Estate***" or "***Trust***"), who died at Honolulu, Hawai‘i on October 16, 1884, and whose Will and two codicils thereto (collectively, the "***Will***") were duly admitted to Probate in the Supreme Court of the Hawaiian Islands on December 2, 1884.

2. As discussed in more detail below, Trustee JENNIFER NOELANI GOODYEAR-KA‘ŌPUA has a conflict of interest and therefore, is not a Petitioner herein.

3. Petitioners' post office address is P.O. Box 3466, Honolulu, Hawai‘i 96801; Petitioners' business address is Kawaiaha‘o Plaza, Suite 200, 567 South King Street, Honolulu, Hawai‘i 96813.

---

[1] "Tuition" as used herein refers to "tuition and fees", as reflected in the Trustees' Annual Accounts, and student meals; collectively referred to in prior Masters' Reports as "TFM". Currently, the total cost of education for students at KS preschools and K-12 campuses includes tuition (a charge for instruction), fees (for miscellaneous items such as textbooks, classroom supplies and instructional materials, class dues, yearbooks, student council dues, technology, and residential life fees for Kapālama campus), and student meals. The intended "Complete Gift Approach," free of tuition model, means that ‘ohana at preschool and K-12 campuses would pay none of these educational costs – no TFM.

4. Petitioners are residents of the City and County of Honolulu, State of Hawaiʻi.

5. By the terms of her Will, namely Article *Thirteenth*, Bernice Pauahi Bishop gave, devised, and bequeathed all the rest, residue and remainder of her estate, subject to certain life interests which have lapsed or been surrendered, unto certain trustees, to hold upon the following trusts, namely:

> *to erect and maintain in the Hawaiian Islands two schools, each for boarding and day scholars, one for boys and one for girls, to be known as, and called the Kamehameha Schools.*

6. The assets of the Trust Estate consist of real, personal, and other properties (including without limitation, all assets and properties, and all rights and interest in corporations, partnerships, and other entities and investments owned, held, controlled or managed by or vested in Petitioners in their fiduciary capacities as Trustees of the Estate of Bernice Pauahi Bishop, whether directly or indirectly). As reflected in the Trustees' Petition for Approval of the 139th Annual Accounts (FYE June 30, 2024), filed on May 15, 2025 [Dkt. 5573] ("***139th Accounts Petition***"), which was granted pursuant to the Order filed December 19, 2025 [Dkt. 5666], the assets of the Trust Estate as of June 30, 2024 have a value of approximately $10.8 billion as determined in accordance with generally accepted accounting principles. The fair value of the Trust Estate's endowment as of June 30, 2024, is approximately $15.2 billion. The fair value of the Trust Estate's endowment is used for calculating trust spending levels.

7. The Trust Estate is a perpetual, charitable educational trust for the purpose of education of Native Hawaiians and has no ascertainable beneficiaries. The Attorney General of the State of Hawaiʻi represents all beneficiaries as *parens patriae*, and will be given notice of this Petition.

8. This Court has jurisdiction of this matter pursuant to Hawaiʻi Revised Statutes ("***H.R.S.***") §§ 554D-201(c)(5) and (6), 554D-202, and 554D-203(a). This Petition is submitted pursuant to H.R.S. § 554D-203(a), and Rules 1, 3, and 126(a) of the Hawaiʻi Probate Rules (the "***Probate Court Rules***"). Venue is proper pursuant to H.R.S. §§ 554D-204 and 603-36(3).

## II. THIS PETITION

### A. Purpose of this Petition

9. The purpose of this Petition is to request approval of certain actions that are to be taken by Petitioners (a) during the current trust accounting period, which typically would be included in a Petition for Approval of 141st Annual Account (FYE June 30, 2026), expected to be filed in mid-2027; and (b) during the next trust accounting period, which typically would be included in a Petition for Approval of 142nd Annual Account (FYE June 30, 2027), expected to be filed in mid-2028. Petitioners are requesting this Court's approval of proposed changes to move KS permanently to a Complete Gift Approach.

10. Although Petitioners will not implement the Complete Gift Approach until this Court approves this Petition, Petitioners will be notifying ʻohana (families) of current haumāna (students) and applicants for SY 2026-27 of KS' plans to adopt the Complete Gift Approach, so that ʻohana and staff can plan appropriately in the event the Petition is approved.

### B. Current Tuition Policy

11. In the fiscal year July 1, 2023 to June 30, 2024 ("***FY 2024***"), reported Total Trust Spending (Educational Spend) was approximately $522,622,000 compared to Tuition and Fees collected (net of financial aid and waivers of $35,171,000) of approximately $11,874,000, which represented just 2.3% of the total Educational Spend during the account period, and means that the Trust subsidized 97.7% of the account period's Educational Spend. See also, ¶ 34 below.

12. The same 97.7% subsidy took place in the fiscal year July 1, 2024 to June 30, 2025 ("***FY 2025***"), as collected Tuition and Fees totaled $12,225,000 compared to an Educational Spend of $529,662,000, representing a mere 2.3% recovery of the account period's Educational Spend.

13. Currently, no student bears the full cost of education at Kamehameha Schools ("***KS***"). Tuition and Fees cover only a small proportion of the cost of education and 75% of K-12 and 83% of Preschool students receive full or partial financial aid.

**C. <u>Proposed Changes to the Tuition Policy</u>**

14. Transitioning to a Complete Gift Approach would move KS from a heavily subsidized tuition approach into a more complete expression of Ke Aliʻi Pauahi's chiefly legacy, by aligning educational access with the longstanding reality that the Trust, not individual families, bears primary responsibility for the cost of education. As discussed below, this is consistent with the cultural and historical context in which Ke Aliʻi Pauahi established the Trust under her Will.

15. Founded in the Hawaiian Kingdom in 1887, Ke Aliʻi Pauahi's Will and the birth of Kamehameha Schools are powerful expressions of her chiefly kuleana to ensure that Native Hawaiian children will grow, rise, and stand strong to care for their ʻohana, kaiāulu, lāhui, and ʻāina. As noted by the Master for the 139th Annual Account, "Bernice Pauahi Bishop witnessed the rapid decline of the Native Hawaiian population. She had a vision and believed education could offer her people hope and future. [She] put her land into a trust as a compassionate gift embodying the Hawaiian value of *kahiau*, or '*to give generously … with the heart and not with expectation of return*.'" *See* Master's Report for the 139th Annual Account of the Trustees; Exhibit "A"; Certificate of Service, filed November 12, 2025 [Dkt. 5634] ("***Master's Report for the 139th Annual Account***"), at 38 (internal footnotes omitted).



4905-2867-2380.23

16. For nearly 140 years, KS has honored and fulfilled Ke Aliʻi Pauahi's chiefly kauoha, her charge, dedicating her Trust Estate to restoring her people through education.

17. For many years, such an education was shaped by the post-overthrow socio-political context in Hawaiʻi, causing KS to be part of the widespread Hawaiian cultural suppression occurring in schools and homes. However, by the 1960s, a KS education began to include increasingly meaningful opportunities for haumāna to reconnect to their ancestral roots through language classes and the performing arts, followed by required Hawaiian culture and history classes. By the 1990s, KS began a purposeful shift from Hawaiian language, history, and culture being subjects of instruction to having these serve as the kahua (foundation) and kuanaʻike (world view) through which learning occurs.

18. Since 2016, KS has strongly committed to the implementation of Hawaiian culture-based education ("***HCBE***") and E Ola!, leading Petitioners to evaluate the worldview of KS' operations and to consider whether KS' current tuition is the most effective way to implement the relationship contemplated by Ke Aliʻi Pauahi in establishing the Trust. Ke Aliʻi Pauahi acted as an aliʻi exercising her chiefly kuleana to provide for the conditions necessary for the collective well-being and future capacity of her people, which is different from later Western paradigms that may characterize this as an individual benefit provided in exchange for payment.

19. After they and their predecessors devoted many years to evaluating how best to approach and balance educational spending with the underlying directives of Ke Aliʻi Pauahi, Petitioners have determined that it is in the best interest of the Trust as a whole for KS to permanently move to a Complete Gift Approach. This transition will allow KS to fully implement Ke Aliʻi Pauahi's kauoha by allowing its haumāna and their ʻohana to focus first and reflect fully

on the education coming from Ke Aliʻi Pauahi and her leadership charge to them, sustaining a lineage of ʻŌiwi leaders.

20. This Complete Gift Approach makes sense now because it is economically sustainable given the financial condition of the Trust and fully consistent with KS' Strategic Plan ("***SP2030***") (adopted in FY 2025)[2], so haumāna can exercise the ea (breath, life, rising, agency, sovereignty, independence, and the ability to step up and standup) necessary to restore a thriving and self-determined lāhui. Critical to ea is having the agency to define KS' own identity and relationships. For generations, others have done this for us, using their labels, e.g., defining Ke Aliʻi Pauahi as a philanthropist, donor, private school founder, wealthy landowner, etc. The proposed Complete Gift Approach will help to reclaim the nature of the relationship between Ke Aliʻi Pauahi and haumāna through kuanaʻike Hawaiʻi, our Hawaiian perspective.

21. What arises from KS' SP2030 and this kuanaʻike Hawaiʻi lens is not a foundation of privilege, but a kahua of kuleana – preparing haumāna to be "good and industrious men and women," committed to serving ʻohana, kaiāulu, lāhui, Hawaiʻi, and the wider world. From this kahua, haumāna can see in all directions and exercise their ea, deciding what to build, what to restore, and what must be cleared away for collective flourishing. Under SP2030, no agreements are necessary for haumāna to learn how to strengthen community, regenerate ʻāina, and advance the justice needed for self-determination; instead, they will move forward with the kuleana that

[2] The four goals of SP2030 are to: "(1) develop globally competitive haumāna at our world-class campuses, through Hawaiian culture-based education (HCBE) and E Ola! learner outcomes, empowering them to lead and uplift their ʻohana and lāhui, guided by ke ea Hawaiʻi; (2) advance our kaiāulu by strengthening Native Hawaiian identity through HCBE and E Ola!, preparing ʻŌiwi leaders in key sectors and advancing our lāhui toward ea Hawaiʻi; (3) through E Ola! and culturally rooted stewardship, generate competitive financial portfolio returns, while cultivating prosperous ʻohana and communities; and (4) achieve performance excellence through disciplined management standards (operational, financial, and risk management) and globally competitive lines of business, with a collective commitment to E Ola!."

flows from receiving the gift of education and the call from their aliʻi to persevere. With this kahua, haumāna will, by nature extend this gift outward, creating new platforms for the next generation, mau a mau (forever).

22. Petitioners further note that the proposed transition to a Complete Gift Approach does not represent a fundamental change in the nature of the educational services historically provided by KS. As a practical matter, the Trust has long borne the overwhelming share of the cost of education for its haumāna. Today, approximately three-fourths of KS students already receive full or nearly full tuition assistance, and families paying the stated "full tuition" contribute only a small fraction of the actual per-student cost of education. The proposed change therefore completes an already existing heavily subsidized tuition model, rather than introducing a new or materially different approach to educational financing. Although the transition does not represent a fundamental change in what KS has already been doing, it will have fundamental impacts on the way that haumāna see themselves and their relationship with their aliʻi and lāhui.

23. Petitioners' intended change is expected to have additional indirect but important benefits. Legal challenges to Ke Aliʻi Pauahi's mission and intended charitable purposes have sought to constrain the Trustees' ability to fully carry out her wishes. By adopting a Complete Gift Approach, Petitioners intend to reinforce that providing educational services at KS' PreK-12 campuses, free of tuition, is delivering a gift, consistent with the Trust's charitable and fiduciary obligations under the Will, and not any sort of contractual arrangement. The small contribution that ʻohana have been making toward their education has never been about cash or consideration back to KS or Ke Aliʻi Pauahi.

24. The path toward achieving KS' SP2030 goals combined with recent legal challenges to Ke Aliʻi Pauahi's charitable mission and purpose have impacted the approaches

taken in considering the cost of education, as previously examined and studied in tuition reports provided to prior Masters. A Complete Gift Approach is not a significantly large step from a 97.7% subsidized school system, but it clearly reflects a more complete, direct expression of Ke Aliʻi Pauahi's kauoha, one that places haumāna and their relationship to Ke Aliʻi Pauahi directly at the center.

**D. Trustees' Authority and Request for Court Approval**

25. Pursuant to Codicil No. 2 to the Will, Article 4th, Ke Aliʻi Pauahi granted the Trustees with discretion "to determine to what extent [its] schools shall be industrial, mechanical, or agricultural; and also **to determine if tuition shall be charged** in any case." *See* Ex. A, Codicil No. 2, Art. 4th (emphasis added).

26. Petitioners are also authorized to "[c]ollect trust property, accept or reject additions to the trust property from a settlor or any other person" and "pay . . . other expenses incurred in the administration of the trust", pursuant to H.R.S. § 554D-816(1) and (15), respectively.[3]

27. Although Petitioners have the discretion under the Will and authority under the Hawaiʻi Uniform Trust Code to make changes to its tuition policy and make payments related to their administration of the Trust, and while educational spending is expected to remain in the court-

[3] H.R.S. § 554D-816 provides in relevant part:

> **Specific powers of trustee.** Without limiting the authority conferred by section 554D-815, a trustee may:
> (1) Collect trust property, accept or reject additions to the trust property from a settlor or any other person, and retain trust property, even if the trustee has a personal interest in the property, until in the judgment of the trustee, disposition of the property should be made;
> . . .
> (15) Pay taxes, assessments, compensation of the trustee and of employees and agents of the trust, and other expenses incurred in the administration of the trust [.]

H.R.S. § 554D-816.

approved 2.5% - 6.0% spending range, they are filing this Petition in advance of filing their 141st Annual Account (FYE June 30, 2026) for several reasons.

28. In several Master's Reports beginning with the 114th Annual Trust Accounts, prior Masters had recommended that the Trustees provide a tuition report to future Masters to demonstrate the priority that the Trustees are giving to matters concerning tuition, fees, and meals, and particularly to orphans and others in indigent circumstances.[4] Previous tuition reports had described how KS diligently approached its continuing duties to re-examine, re-study, and develop a policy of equitable, graduated tuition, fees, and meal increases in light of (among other things) KS' finite resources. Petitioners thus recognize the interest of the Court Master related to tuition matters.

29. Transitioning to a Complete Gift Approach will impact the way that reporting is addressed to the Court Master. Reports to the Court Master will no longer require a discussion of tuition revenue or the setting of tuition levels. In lieu of tuition reporting, KS will address how its graduates are fulfilling their kahua of kuleana to their lāhui and whether HCBE, E Ola!, and this shift are effectively helping us attain KS' SP2030 goals. It is important to Petitioners that this

---

[4] *See, e.g.*, Master's Consolidated Report for the 109th to 111th through the 112th to 114th Annual Trust Account of the Trustees, filed October 6, 2000, at pp. 104-105 (recommending a Tuition Review by future Masters); Master's Report for the 115th Annual Account of the Trustees, filed January 8, 2002, at pp. 65-67 (noting that the tuition subsidy ranged from 92% to 96% of the total cost of education); Recommendation No. 7 of Master's Report for the 116th Annual Account of the Trustees, filed March 4, 2003, at pp. 99-104; Recommendation No. 10 of Master's Report for the 117th Annual Account of the Trustees, filed March 31, 2004, at p. 41-44; Master's Report for the 118th Annual Account of the Trustees, filed July 1, 2005, at p. 67 (describing Policy Number 211[T] ("For the first time, there is a written expression that priority will be given to "orphans" and "others in indigent circumstances.")); Master's Report for the 120th Annual Account of the Trustees, filed April 5, 2007, at p. 72 (noting "It will be a few years until the full effects of the orphan and indigent policy of 211[T] can be determined."); Master's Report for the 122nd Annual Account of the Trustees, filed April 30, 2009, at pp. 66-68 (noting that Policy 211[T] (orphans and indigents) has been successful and recommending continued dedication to Policy 211[T]).

Court understand the reasoning behind adopting a Complete Gift Approach and the associated changes to reporting. It is also important to Petitioners to provide certainty to applicants and continuing haumāna in advance of the upcoming SY 2026-27, and to set in motion the foundation for moving forward in SP2030, as well as to correct inaccurate and inapplicable notions of what a KS education is and provides.

**E. <u>Expected Impact to Future Accounts</u>**

30. The Trust's current Spending Policy range is to maintain a Spending Rate which falls within a range of 2.5% to 6.0% each fiscal year based on the average of the market value of the Endowment Fund as of the end of the 20 calendar quarters ending on June 30 of the year preceding the fiscal year.

31. KS has a long-term target average Spending Rate of 4.0%, although the Spending Rate may vary annually around the 4.0% target, depending on program needs and changes in the average market value of the Endowment Fund.

32. Under KS' current Spending Policy, in any given year, returns from the Trust's assets support annual educational spending, and on a long-term basis, KS' investment and spending policy objectives are designed to support the Trust and its educational programs in perpetuity.

33. As reflected in the Trustees' 139th Accounts Petition, the total trust spending for education during FY 2024 was approximately $522,662,000, and based on the five-year average market value of the KS endowment, this reflected a spending rate of 3.9% for FY 2024, which was slightly below the current long-term average target rate of 4%. As the value of the Trust's corpus has grown, the materiality of the amounts collected for tuition has diminished significantly.

34. The limited financial impact of eliminating the remaining tuition obligation further confirms that this change does not substantively alter the Trust's charitable purpose or its court-approved Spending Policy. In particular, the Master noted the following:

> Furthermore, your Master commends the Trust's efforts to enable Bernice Pauahi Bishop's beneficiaries to become good and industrious men and women through its scholarship and financial aid need-based programs. An exemplary example of the Trust's efforts to enable Bernice Pauahi Bishop's beneficiaries to become good and industrious men and women is evident by the fact that KS in FY2024 reported Total Trust Spending (Educational Spent) was approximately $522,662,000 compared to Tuition and Fees (net of financial aid and waivers of $35,171,000) being only approximately $11,874,000, or a mere 2.3% ($11,874,000 ÷ $522,622,000) recovery of the Account Period's Educational Spend.

*See* Master's Report for the 139th Annual Account, at 39.

35. The proposed impact of approximately $10 - 15 million in tuition revenue to the Trust's Spending is expected to increase the annual spend rate from the endowment by only 0.1%. For example, spending is expected to increase from approximately 4.0% to 4.1%. However, this is still well within the Trustees' current approved Spending Policy range of 2.5% to 6.0%. Petitioners believe that even at a slightly increased average rate of approximately 4.1%, its investment and spending policy objectives are reasonable and expected to continue to provide all needed support for the Trust's educational programs in perpetuity.

36. Under KS' Conflict of Interest Policy, the Trustees must disclose on an annual basis their personal financial interests, directorships or offices held in another entity and those held by their immediate family members. During the year, the Trustees must provide updates, if any, to their disclosures or any situations that might create a conflict. If a Trustee has a conflict of interest, then a Trustee must recuse himself of herself from that portion of the Trustees' meeting concerning a matter in which such Trustee has a conflict of interest.

37. In accordance with this policy, Trustee JENNIFER NOELANI GOODYEAR-KAʻŌPUA disclosed relevant conflicts of interest in connection with the tuition issue when it arose and then recused herself from any decision making concerning this issue, including without limitation, matters related to this Petition.

38. Based on the privileged and confidential opinions and recommendations of Petitioners' legal counsel, and Petitioners' due diligence, review, analysis, and evaluation of this matter, and consideration of the overall interests of the Trust, Petitioners believe that the proposed permanent change to KS' educational spending, involving a Complete Gift Approach, as discussed above, is prudent and in the best interest of the Trust and its beneficiaries. Petitioners further believe that the requested change is consistent with Ke Aliʻi Pauahi's intentions under her Will and the Trustees' authority under the Will and Hawai'i law.

39. Petitioners request that the Court appoint a Master to review this Petition, including the terms and conditions of the proposed changes to KS' educational spending, its Complete Gift Approach and such other materials and information concerning said change as may be appropriate, in order to determine that the change is a prudent exercise of the Petitioners' authority as a majority of the duly appointed and acting Trustees, and in the best interest of the Trust. Petitioners further request that the Master and Attorney General, as *parens patriae*, be permitted to review any relevant documents and consult with the Trustees' legal counsel without waiving the applicable attorney-client privilege and/or the protection of the work product doctrine.

## III. <u>CONCLUSION</u>

WHEREFORE, Petitioners pray that this Honorable Court:

1. Set a date, time and place of hearing on this Petition;

2. Find and determine that jurisdiction and venue are proper;

3. Appoint a Master to review the proposed changes to educational spending to determine that the proposed action is a prudent exercise of the Petitioners' authority as the duly appointed and acting Trustees and in the best interest of the Trust;

4. Confirm that the Master and the Attorney General, as *parens patriae*, be permitted to review any relevant documents and consult with Petitioner's legal counsel without waiving the applicable attorney-client privilege and the protection of the work product doctrine;

5. Determine that any documents or information provided to the Attorney General, as *parens patriae*, that are subject to the attorney-client privilege or work product doctrine be protected;

6. Grant this Petition;

7. Expressly determine that Petitioners' proposed change to educational spending to permanently adopt a Complete Gift Approach at preschools and K-12 campuses beginning with SY 2026-27 is in the Trust's best interest, and that the proposed change be approved;

8. Upon hearing of this Petition, fix and determine the amounts allowed out of the Trust Estate as Master's fees and Attorney General's expenses, if any; and

9. Grant Petitioners such other and further relief as this Honorable Court shall deem just and equitable in the premises.

[*The remainder of this page is intentionally left blank; signature pages to follow.*]

**Each of the undersigned persons understands that this petition is deemed to include an oath, affirmation or statement to the effect that (1) its representations are true as far as each of the undersigned persons knows or is informed, (2) it is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, and (3) that penalties for perjury may follow deliberate falsification.**

DATED: Honolulu, Hawai'i, this 23rd day of December, 2025.

Crystal Kauilani Rose
CRYSTAL KAUILANI ROSE

MICHELLE M. KA'UHANE

ELLIOT KAWAIHO'OLANA MILLS

Trustees Under the Will and of the Estate of Bernice Pauahi Bishop, Deceased

Hawai'i Probate Rule 5(b) Certification:

/s/ *Shawn H. Yamada*
JOANNE LO GRIMES
MELISSA H. LAMBERT
SHAWN H. YAMADA
KELLY G. LAPORTE
Attorneys for Petitioners

**Each of the undersigned persons understands that this petition is deemed to include an oath, affirmation or statement to the effect that (1) its representations are true as far as each of the undersigned persons knows or is informed, (2) it is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, and (3) that penalties for perjury may follow deliberate falsification.**

DATED: Honolulu, Hawaiʻi, this 23rd day of December, 2025.

______________________________
CRYSTAL KAUILANI ROSE

______________________________
MICHELLE M. KAʻUHANE

______________________________
ELLIOT KAWAIHOʻOLANA MILLS

Trustees Under the Will and of the Estate of Bernice Pauahi Bishop, Deceased

Hawaiʻi Probate Rule 5(b) Certification:

*/s/ Shawn H. Yamada*
JOANNE LO GRIMES
MELISSA H. LAMBERT
SHAWN H. YAMADA
KELLY G. LAPORTE
Attorneys for Petitioners

**Each of the undersigned persons understands that this petition is deemed to include an oath, affirmation or statement to the effect that (1) its representations are true as far as each of the undersigned persons knows or is informed, (2) it is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, and (3) that penalties for perjury may follow deliberate falsification.**

DATED: Honolulu, Hawaiʻi, this 23rd day of December, 2025.

____________________________
CRYSTAL KAUILANI ROSE

____________________________
MICHELLE M. KAʻUHANE

Elliot K. Mills
ELLIOT KAWAIHOʻOLANA MILLS

Trustees Under the Will and of the Estate of Bernice Pauahi Bishop, Deceased

Hawaiʻi Probate Rule 5(b) Certification:

*/s/ Shawn H. Yamada*
JOANNE LO GRIMES
MELISSA H. LAMBERT
SHAWN H. YAMADA
KELLY G. LAPORTE
Attorneys for Petitioners

# EXHIBIT A

The Will of Bernice Pauahi Bishop

And Two Codicils

# Will of Bernice Pauahi Bishop

Know all Men by these Presents, That I, Bernice Pauahi Bishop, the wife of Charles R. Bishop, of Honolulu, Island of Oahu, Hawaiian Islands, being of sound mind and memory, but conscious of the uncertainty of life, do make, publish and declare this my last Will and Testament in manner following, hereby revoking all former wills by me made:

*First.* I give and bequeath unto my namesakes, E. Bernice Bishop Dunham, niece of my husband, now residing in San Joaquim County, California, Bernice Parke, daughter of W. C. Parke Esq., of Honolulu, Bernice Bishop Barnard, daughter of the late John E. Barnard Esq. of Honolulu, Bernice Bates, daughter of Mr. Dudley C. Bates, of San Francisco, California, Annie Pauahi Cleghorn of Honolulu, Lilah Bernice Wodehouse, daughter of Major J. H. Wodehouse, of Honolulu, and Pauahi Judd the daughter of Col. Charles H. Judd of Honolulu, the sum of Two hundred Dollars ($200.) each.

*Second.* I give and bequeath unto Mrs. William F. Allen, Mrs. Amoe Haalelea, Mrs. Antone Rosa, and Mrs. Nancy Ellis, the sum of Two Hundred Dollars ($200.) each.

*Third.* I give and bequeath unto Mrs. Caroline Bush, widow of A .W. Bush, Mrs. Sarah Parmenter, wife of Gilbert Parmenter Mrs. Keomailani Taylor, wife of Mr. Wray Taylor, to their sole and separate use free from the control of their husbands, and to Mrs. Emma Barnard, widow of the late John E .Barnard Esq. the sum of Five hundred dollars ($500.) each.



EXHIBIT A

*Fourth.* I give, devise and bequeath unto H. R. H. Liliuokalani, the wife of Gov. John O. Dominis, all of those tracts of land known as the "Ahupuaa of Lumahai," situated on the Island of Kauai, and the "Ahupuaa of Kealia", situated in South Kona Island of Hawaii; to have and to hold for and during the term of her natural life; and after her decease to my trustees upon the trusts below expressed.

*Fifth.* I give and bequeath unto Kahakuakoi (w) and Kealohapauole, her husband, and to the survivor of them, the sum of Thirty Dollars ($30.) per month, (not $30. each) so long as either of them may live. And I also devise unto them and to their heirs of the body of either, the lot of land called "Mauna Kamala", situated at Kapalama Honolulu; upon default of issue the same to go to my trustees upon the trusts below expressed.

*Sixth.* I give and bequeath unto Mrs. Kapoli Kamakau, the sum of Forty Dollars ($40.) per month during her life; to my servant woman Kaia the sum of Thirty Dollars ($30.) per month during her life, and to Nakaahiki (w) the sum of Thirty Dollars ($30.) per month during her life.

*Seventh.* I give, devise and bequeath unto Kapaa (k) the house-lot he now occupies, situated between Merchant and Queen Streets in Honolulu, to have and to hold for and during the term of his natural life; upon his decease to my trustees upon the trusts below expressed.

*Eighth.* I give, devise and bequeath unto Auhea (w) the wife of Lokana (k) the house-lot situated on the corner of Richard and Queen Streets, now occupied by G. W. Macfarlane & Co; to have and to hold for and during the term of her natural life; upon her decease to my trustees upon the trusts below expressed.

*Ninth.* I give, devise and bequeath unto my husband, Charles R. Bishop, all of the various tracts and parcels of land situated upon the Island of Molokai, comprising the

"Molokai Ranch", and all of the live-stock and personal property thereon; being the same premises now under the care of R. W. Myer Esq.; and also all of the real property wherever situated, inherited by me from my parents, and also all of that devised to me by my aunt Akahi, except the two lands above devised to H. R. H. Liliuokalani for her life; and also all of my lands at Waikiki, Oahu, situated makai of the government main road leading to Kapiolani Park; to have and to hold together with all tenements, hereditaments, rights, privileges and appurtenances to the same appertaining, for and during the term of his natural life; and upon his decease to my trustees upon the trusts below expressed.

*Tenth.* I give, devise and bequeath unto Her Majesty Emma Kaleleonalani, Queen Dowager, as a token of my good will, all of the premises situated upon Emma Street in said Honolulu, known as "Kaakopua," lately the residence of my cousin Keelikolani; to have and to hold with the appurtenances for and during the term of her natural life; and upon her decease to my trustees upon the trusts below expressed.

*Eleventh.* I give and bequeath the sum of Five thousand Dollars ($5000.) to be expended by my executors in repairs upon Kawaiahao Church building in Honolulu, or in improvements upon the same.

*Twelfth.* I give and bequeath the sum of Five thousand Dollars ($5000.) to be expended by my executors for the benefit of the Kawaiahao Family School for Girls (now under charge of Miss Norton) to be expended for additions either to the grounds, buildings or both.

*Thirteenth.* I give, devise and bequeath all of the rest, residue and remainder of my estate real and personal, wherever situated unto the trustees below named, their heirs and assigns forever, to hold upon the following trusts, namely: to erect and maintain in the Hawaiian Islands two schools, each for boarding and day scholars, one for

boys and one for girls, to be known as, and called the Kamehameha Schools. I direct my trustees to expend such amount as they may deem best, not to exceed however one-half of the fund which may come into their hands, in the purchase of suitable premises, the erection of school buildings, and in furnishing the same with the necessary and appropriate fixtures furniture and apparatus. I direct my trustees to invest the remainder of my estate in such manner as they may think best, and to expend the annual income in the maintenance of said schools; meaning thereby the salaries of teachers, the repairing buildings and other incidental expenses; and to devote a portion of each years income to the support and education of orphans, and others in indigent circumstances, giving the preference to Hawaiians of pure or part aboriginal blood; the proportion in which said annual income is to be divided among the various objects above mentioned to be determined solely by my said trustees they to have full discretion. I desire my trustees to provide first and chiefly a good education in the common English branches, and also instruction in morals and in such useful knowledge as may tend to make good and industrious men and women; and I desire instruction in the higher branches to be subsidiary to the foregoing objects. For the purposes aforesaid I grant unto my said trustees full power to lease or sell any portion of my real estate, and to reinvest the proceeds and the balance of my estate in real estate, or in such other manner as to my said trustees may seem best. I also give unto my said trustees full power to make all such rules and regulations as they may deem necessary for the government of said schools and to regulate the admission of pupils, and the same to alter, amend and publish upon a vote of a majority of said trustees. I also direct that my said trustees shall annually make a full and complete report of all receipts and expenditures, and of the condition of said schools to the Chief Justice of the Supreme Court, or other highest judicial officer in this country; and shall also file before him annually an inventory of the property in their hands

and how invested, and to publish the same in some Newspaper published in said Honolulu; I also direct my said trustees to keep said school buildings insured in good Companies, and in case of loss to expend the amounts recovered in replacing or repairing said buildings. I also direct that the teachers of said schools shall forever be persons of the Protestant religion, but I do not intend that the choice should be restricted to persons of any particular sect of Protestants.

*Fourteenth.* I appoint my husband Charles R. Bishop, Samuel M. Damon, Charles M. Hyde, Charles M. Cooke, and William O. Smith, all of Honolulu, to be my trustees to carry into effect the trusts above specified. I direct that a majority of my said trustees may act in all cases and may convey real estate and perform all of the duties and powers hereby conferred; but three of them at least must join in all acts. I further direct that the number of my said trustees shall be kept at five; and that vacancies shall be filled by the choice of a majority of the Justices of the Supreme Court, the selection to be made from persons of the Protestant religion.

*Fifteenth.* In addition to the above devise to Queen Emma, I also give, devise and bequeath to her (said Emma Kaleleonalani Queen Dowager (*sic*) the Fish-pond in Kawaa, Honolulu near Oahu Prison, called "Kawa", for and during the term of her natural life; and after her decease to my trustees upon the trusts aforesaid.

*Sixteenth.* In addition to the above devise to my husband, I also give and bequeath to him, said Charles R. Bishop all of my personal property of every description, including cattle at Molokai; to have and to hold to him, his executors, administrators and assigns forever.

*Seventeenth.* I hereby nominate and appoint my husband Charles R. Bishop and Samuel M. Damon, executors of this my will.

In witness whereof I, said Bernice Pauahi Bishop, have hereunto set my hand and seal this thirty-first day of October A. D. Eighteen hundred and eighty-three.

BERNICE P. BISHOP (SEAL)

---

The foregoing instrument, written on eleven pages, was signed, sealed, published and declared by said Bernice Pauahi Bishop, as and for her last will and testament in our presence, who at her request, in her presence, and in the presence of each other, have hereunto set our names as witnesses thereto, this 31st day of October A. D. 1883.

F. W. MACFARLANE
FRANCIS M. HATCH

# CODICIL NO. 1.

This is a Codicil to the last Will and Testament of me, Bernice P. Bishop, dated October thirty-first A. D. Eighteen hundred and eighty-three:

1st I give and bequeath unto Mrs William F. Allen the sum of One thousand Dollars ($1000.) in place of the amount given to her in my said will.

2nd I revoke the devise to Her Majesty Emma Kaleleonalani of the premises situated upon Emma Street in Honolulu, known as "Kaakopua", contained in the tenth article of my said will; and in place thereof I give, devise and bequeath unto her, said Emma Kaleleonalani, all of those parcels of land situated in Nuuanu Valley, Oahu, on both sides of the road, known as "Laimi"; to hold for and during the term of her natural life; and upon her decease to my trustees upon the trusts expressed in my said will. Said Emma to also have the fish pond known as "Kawa", as provided in the fifteenth article of my said will.

3rd In addition to the bequests to my husband named in my said will I also give, devise and bequeath unto my said husband, Charles R. Bishop, the land known as Waialae-nui, as well as Waialae-iki and also the land known as "Maunalua", Island of Oahu; and also all of the premises situated in said Honolulu, known as the Ili of "Kaakopua", extending from Emma to Fort Street and also all kuleanas in the same, and everything appurtenant to said premises; to hold for his life, remainder to my trustees.

4th I give, devise and bequeath unto Kuaiwa (k) and Kaakaole (w), old retainers of my parents, that piece of land now occupied by them, situated in upper Kapalama,



EXHIBIT A

in said Honolulu, called "Wailuaakio"; to have and to hold for and during the term of their natural lives and that of the survivor of them; remainder to my trustees upon the trusts named in my said will.

5th I give, devise and bequeath unto Kaluna (k) and Hoopii, his wife, those premises now occupied and cultivated by them in Kauluwela, Liliha Street, Honolulu; to have and to hold for and during the terms of their natural lives and that of the survivor of them; remainder to my trustees upon the trusts named in my said will.

6th I give, devise and bequeath unto Naiapaakai (k) and Loika Kahua his wife, that lot of land now enclosed and occupied by them, in Kauluwela in said Honolulu, the size of said lot not to exceed one acre; to have and to hold for and during the term of their natural lives, and that of the survivor of them; remainder to my trustees upon the trusts named in my said will.

7th I give and bequeath unto Lola Kahailiopua Bush, of said Honolulu, the sum of Three hundred Dollars (300.) per year during her minority, to be applied towards her education and clothing; and upon her becoming of age the sum of One thousand Dollars, ($1000.) to her sole and separate use, free from the control of any husband she may marry.

8th I give and bequeath unto Bernice B. Barnard, of said Honolulu the sum of Three hundred Dollars ($300.) a year during her minority, to be applied towards her education and clothing; and upon her becoming of age the sum of One thousand Dollars ($1000.) to her sole and separate use, free from the control of any husband she may marry. This in lieu of the $200. given by my will.

9th I give, devise and bequeath unto my friend Samuel M. Damon, of said Honolulu, all of that tract of land

known as the Ahupuaa of Moanalua, situated in the District of Honolulu, Island of Oahu; and also the fishery of Kaliawa; to have and to hold with the appurtenances to him, his heirs and assigns forever.

10th I give and bequeath unto my servants Kaleleku (k) and Kaoliko (k) his brother, each the sum of Twenty Dollars ($20.) per month, during the term of the natural life of each of them.

11th I revoke so much of the fifth article of my said will as devises the land known as "Mauna Kamala" to Kahakuakoi (w) and Kealohapauole her husband; and in lieu thereof I give, devise and bequeath unto said Kahakuakoi (w) and Kealohapauole (k) all of that tract of land known as Hanohano, situated at Ewa, Island of Oahu, formerly the property of Puhalahua; to have and to hold as limited in said fifth article of my said will.

12th I give and bequeath unto the Bishop's School in Honolulu, called "Iolani College", the sum of Two thousand Dollars ($2000.); and to the English Sisters School called "St. Albans Priory" the sum of Two thousand Dollars ($2000.); and to "St. Andrews Church" the sum of Two thousand Dollars ($2000.).

13th I give, devise and bequeath unto Kaiulani Cleghorn, daughter of A. S. Cleghorn, of Honolulu, all of that parcel of land and spring situated at Waikiki-uka, Oahu, known as Kanewai; to have and to hold for and during the term of her natural life; remainder to my trustees upon the trusts named in my said will.

14th I give and bequeath unto the Rev. Henry H. Parker, of Honolulu, the sum of Five hundred Dollars ($500.)



EXHIBIT A

15th I give and bequeath unto Mary R. Collins, if she be with me at the time of my death, the sum of Two hundred Dollars ($200.); and unto Maggie Wynn, if she be then with me, the sum of One hundred Dollars ($100.)

16th I hereby give the power to all of the beneficiaries named in my said will, and in this codicil, to whom I have given a life interest in any lands, to make good and valid leases of such lands for the term of ten years; which said leases shall hold good for the remainder of the several terms thereof after the decease of said devisees; the rent however, after such decease to be paid to my executors or trustees; provided however that no rent be collected for a longer period in advance at any one time than for six months, and no bonus be taken by said devisees, or any of them, on account of such leases or lease; in either of which cases such lease or leases shall cease and determine, at the option of my executors or trustees, upon the death of such devisee or devisees, who shall have collected rent for a longer period in advance than for six months, or who shall have taken such bonus.

17th I give unto the trustees named in my will the most ample power to sell and dispose of any lands or other portion of my estate, and to exchange lands and otherwise dispose of the same; and to purchase land, and to take leases of land whenever they think it expedient, and generally to make such investments as they consider best; but I direct that my said trustees shall not purchase land for said schools if any lands come into their possession under my will which in their opinion may be suitable for such purpose; and I further direct that my said trustees shall not sell any real estate, cattle ranches, or other property, but to continue and manage the same, unless in their opinion a sale may be necessary for the establishment or maintenance of said schools, or for the best interest of my estate. I further direct that neither my executors, nor trustees shall have any control or disposition of any of my

personal property, it being my will that my husband, Charles R. Bishop, shall have absolutely all of my personal property of every description. And I give unto my executors named in my said will full power to sell any portion of my real estate for the purpose of paying debts or legacies without obtaining leave of Court; and to give good and valid deeds for the same, the purchasers under which are not to be responsible for the application of the purchase money.

In witness whereof I, said Bernice P. Bishop, have hereunto set my hand and seal this fourth day of October A. D. Eighteen hundred and eighty-four. The words "to hold for his life, remainder to my trustees" interlined on 2d page before signing.

BERNICE P. BISHOP (SEAL)

Signed, sealed, published and declared by the said Bernice P. Bishop as and for a codicil to her last will and testament, in our presence, who at her request, in her presence and in the presence of each other, have subscribed our names as witnesses thereto.

Oct. 4, 1884

WILLIAM W. HALL
FRANCIS M. HATCH

# CODICIL NO. 2.

This is a second Codicil to the last Will and Testament of me, Bernice P. Bishop, dated thirty-first October A. D. Eighteen hundred and eighty three:

1st In addition to the lands devised in the fourth article of my said will to H. R. H. Liliuokalani, the wife of John O. Dominis, I also give, devise and bequeath unto her, said Liliuokalani, all of that tract of land situated in the District of Honolulu, Island of Oahu, adjoining Waiaalae nui, known as "Kahala", together with the buildings thereon, and the fishing rights appurtenant thereto; to have and to hold for and during the term of her natural life, remainder to my trustees upon the trusts named in my said will.

2d In addition to the house lot devised to Kapaa (k) in the seventh article of my said will, which house lot was formerly the property of his wife Akahi, I also give, devise and bequeath unto him, said Kapaa (k) all of that parcel of land adjoining said houselot, fronting on Queen Street and extending to Richards Street, and now under lease to Henry R. Macfarlane; he, said Kapaa, to pay the taxes upon the same and upon the parcel devised by me to Auhea; to have and to hold for and during the term of the natural life of him said Kapaa, remainder to my trustees, upon the trusts named in my said will.

3d I revoke the devise to Auhea (w) wife of Lokana, set forth in the eighth article of my said will. And I give, devise and bequeath unto said Auhea, that house lot situated on said Richards Street (not on the corner of Queen Street) formerly occupied by said Auhea, and which was formerly the dwelling of Akahi; the same adjoining the premises under lease to Henry R. Macfarlane but not included in said lease; to have and to hold for and during



EXHIBIT A

the term of the natural life and her, said Auhea, free from the control of her husband; remainder to my trustees upon the trusts named in my said will.

4th Of the two schools mentioned in the thirteenth article of my said will, I direct the school for boys shall be well established and in efficient operation before any money is expended or anything is undertaken on account of the new school for girls. It is my desire that my trustees should do thorough work in regard to said schools as far as they go; and I authorize them to defer action in regard to the establishment of said school for girls, if in their opinion from the condition of my estate it may be expedient, until the life estates created by my said will have expired, and the lands so given shall have fallen into the general fund. I also direct that my said trustees shall have power to determine to what extent said school shall be industrial, mechanical, or agricultural; and also to determine if tuition shall be charged in any case.

In witness whereof I, said Bernice P. Bishop have hereunto set my hand and seal this ninth day of October A. D. 1884.

BERNICE P. BISHOP

Signed, sealed, published and declared by the said Bernice P. Bishop as and for a codicil to her last will and testament in the presence of us, who at her request, in her presence and in the presence of each other have hereunto subscribed our names as witnesses thereto.

October 9th 1884.

G. TROUSSEAU
J. BRODIE